1  Evan S. Goldstein (pro hac vice pending)
   UPDIKE, KELLY & SPELLACY, P.C.
2  225 Asylum Street, 20th Floor
   Hartford, CT 06013
3  Telephone:    860-548-2609
   Facsimile:    860-548-2680
4  Email: egoldstein@uks.com

5  W. Scott Cameron, State Bar No. 229828
   **weintraub tobin** chediak coleman grodin
6  LAW CORPORATION
   400 Capitol Mall, 11th Floor
7  Sacramento, California 95814
   Telephone:    916.558.6000
8  Facsimile:    916.446.1611
9  Email: scameron@weintraub.com

10  *Attorneys for Plaintiff M&T Capital and Leasing Corporation*
    *f/k/a People's Capital and Leasing Corp.*
11

12              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
13

14

15  M&T Capital and Leasing Corporation,      Case No.

16         Plaintiff,                         **COMPLAINT FOR:**

17  vs.                                       **1. WRIT OF POSSESSION;**
                                              **2. BREACH OF CONTRACT**
18  Freon Logistics,

19         Defendants.

20

21

22                      **<u>COMPLAINT</u>**

23      Plaintiff, M&T Capital and Leasing Corporation, formerly known as People's Capital and

24  Leasing Corp., by and through its undersigned counsel, for its Complaint against defendant Freon

25  Logistics, states and alleges as follows:

26  ///

27  ///

28  ///

{3900534.DOCX:}                    1 COMPLAINT

**PARTIES AND JURISDICTION**

1.      Plaintiff M&T Capital and Leasing Corporation[1] ("M&T") is a Connecticut corporation with its principal place of business located at 850 Main Street, Bridgeport, Connecticut 06604.

2.      Defendant Freon Logistics ("Freon") is a California corporation with its principal place of business located at 8200 N Laurelglen Boulevard, Suite 1906, Bakersfield, California 93311 and may be served through its agent of service, Hardeep Singh, at 3603 Gracie Court, Bakersfield, California 93311.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is situated in this district and because Defendant Freon resides in this district.

**GENERAL ALLEGATIONS**

**I.      Master Loan Agreement**

5.      On or about February 15, 2018, People's Capital and Leasing Corp. ("People's Capital") and Freon entered into Master Loan and Security Agreement No. 5113 ("Master Loan Agreement"). A true and correct copy of the Master Loan Agreement is attached hereto as **Exhibit A.**

6.      On or about February 15, 2018, People's Capital and Freon entered into Schedule No. 001 to the Master Loan Agreement ("Schedule No. 1"), pursuant to which People's Capital financed and obtained a security interest in the equipment identified therein, specifically five (5) 2018 Utility VS2RA 53x102 3000R Reefer Trailers, VINs 3UTVS2539J8031437, 3UTVS2530J8031441, 3UTVS2534J8031443, 3UTVS2536J8031444, and 3UTVS2538J8031445, together with all related software (embedded therein or otherwise), all parts, repairs, additions,

---

[1] M&T is successor by merger of the Loan Documents, as that term is defined herein. See ¶¶ 20–22.

attachments, replacements, replacement parts, accessions and accessories incorporated therein or affixed thereto, modification and substitutions thereto and all proceeds thereof including insurance proceeds (the "Loan Equipment"). A true and correct copy of the original Schedule No. 1 is attached hereto as **Exhibit B**.

7.    On or about February 15, 2018, Freon acknowledged that the Loan Equipment had been delivered to and was approved by Freon. A true and correct copy of the original Delivery Certificate related to Schedule No. 1 is attached hereto as **Exhibit C**.

8.    To evidence its interest in the Loan Equipment, People's Capital is listed as sole lienholder on the Certificates of Title for a Vehicle for the Loan Equipment. A true and correct copy of the original titles to the Loan Equipment is attached hereto as **Exhibit D**.

9.    Pursuant to the terms of the Master Loan Agreement and Schedule No. 1, Freon agreed to pay People's Capital sixty (60) consecutive monthly payments of $6,732.08. The total principal value of Schedule No. 1 was $334,075.00.

10.    On or about February 15, 2018, guarantor Mr. Gorwara entered into an Individual Guaranty ("Gorwara Guaranty") in favor of People's Capital. A true and correct copy of the Gorwara Guaranty is attached hereto as **Exhibit E**.

11.    On or about February 15, 2018, guarantor Mr. Singh entered into an Individual Guaranty ("Singh Guaranty") in favor of People's Capital. A true and correct copy of the Singh Guaranty is attached hereto as **Exhibit F**.

12.    The Gorwara Guaranty and the Singh Guaranty (collectively, the "Loan Guaranties") were made to induce People's Capital to enter into the Master Loan Agreement with Freon.

**II.    Equipment Finance Agreements**

13.    Between April 23, 2021 and August 2, 2022, Freon and Top Mark Funding, LLC ("Top Mark") entered into fifteen (15) Equipment Finance Agreements with contract numbers TN-000062572, TN-000066471, TN-000067785, TN-000068191, TN-000068935, TN-000070052, TN-000070680, TN-000071548, TN-000072000, TN-000076104, TN-000076756, TN-

1  000081385, TN-000080705, TN-000088137, and TN-000083308 (collectively, the "Equipment

2  Finance Agreements").

3      14.    Between April 23, 2021 and August 2, 2022, Freon and Top Mark entered into

4  fifteen (15) Schedule A's corresponding to each of the Equipment Finance Agreements ("EFA

5  Schedules"), pursuant to which Top Mark financed and obtained a security interest in the equipment

6  identified therein, specifically:

7    • four (4) 2022 Peterbilt MODEL 579, Serial Nos. 1XPBD49X0ND782853;

8      1XPBD49X8ND782857; 1XPBD49X1ND782859; 1XPBD49X1ND782893;

9    • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49XXND782861;

10     1XPBD49X3ND782863;

11   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X5ND782864;

12     1XPBD49X0ND782819;

13   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X1ND782862;

14     1XPBD49X0ND782822;

15   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X7ND782820;

16     1XPBD49X2ND782823;

17   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X5ND782833;

18     1XPBD49X7ND782834;

19   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X9ND782835;

20     1XPBD49X7ND782896;

21   • one (1) 2022 Peterbilt Model 579, Serial No. 1XPBD49X1ND782831

22   • two (2) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X3ND782829;

23     1XPBD49XXND782830;

24   • seven (7) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos. 1GRAA0624JW103081;

25     1GRAA0623JW116114; 1GRAA0620JW116104; 1GRAA0627JW116102;

26     1GRAA0624JW116123; 1GRAA062XJW120287; 1GRAA0628JW120286;

27   • one (1) 2022 Peterbilt Model 579, Serial No. 1XPBD49X7ND782879;

28

- two (2) 2023 Peterbilt Model 579, Serial Nos. 1XPBDP9X1PD850629; 1XPBDP9X8PD850630;

- three (3) 2016 Kenworth T680, Serial Nos. 1NKYL49X9GJ117001; 1NKYL49X0GJ117002; 1NKYL49X2GJ117003;

- one (1) 2023 Peterbilt Model 579, Serial No. 1XPBDP9X7PD864258; and

- three (3) 2023 Peterbilt Model 389, Serial Nos. 1XPBDP9XXPD850631; 1XPBDO9X1PD850632; 1XPBDP9X3PD850633

Together with all additions, attachments, accessories and accessions, all general intangibles and security deposits related to the equipment and all proceeds thereof (collectively, the "EFA Equipment"). A true and correct copy of the Equipment Finance Agreements and EFA Schedules is attached hereto as **Exhibit G**.

15.     On or about August 27, 2020, pursuant to a Master Sale of Chattel Paper and Security Agreement ("Master Sale Agreement") between Top Mark and People's Capital, Top Mark sold to People's Capital all its rights, interest in and title to the Equipment Finance Agreements, EFA Schedules, and EFA Guaranties (as that term is defined below) (collectively, the "EFA Documents"), together with all monies due, monies to become due, and all other agreements, instruments and documents related thereto, and the right to exercise all rights and remedies conferred by the EFA Documents. A true and correct copy of the Master Sale Agreement is attached hereto as **Exhibit H**.

16.     To evidence its interest in the EFA Equipment, People's Capital is listed as sole lienholder on the Certificates of Title for a Vehicle for the EFA Equipment. A true and correct copy of the original titles to the EFA Equipment is attached hereto as **Exhibit I**.

17.     Pursuant to the Equipment Finance Agreements and EFA Schedules, Freon agreed to pay People's Capital certain monthly payments as indicated therein.

18.     Between April 23, 2021 and August 2, 2022, guarantors Mr. Gorwara and Mr. Singh entered into fifteen (15) Guaranties guaranteeing each of the Equipment Finance Agreements ("EFA Guaranties"). *See* Exhibit G.

19.     The EFA Guaranties were made to induce People's Capital, as successor in interest, to enter into the Equipment Finance Agreements with Freon.

**III.     Merger and Default**

20.     As of April 2, 2022, People's United Bank, N.A., a national banking association located in Bridgeport, Connecticut, merged with and into M&T Bank, a New York state-chartered bank with a principal place of business located at One M&T Plaza, Buffalo, New York, with M&T Bank as the surviving bank. People's Capital became a subsidiary of M&T Bank as of April 2, 2022.

21.     On or about August 29, 2022, People's Capital amended its name with the Connecticut Secretary of State to M&T Capital and Leasing Corp. A true and correct copy of the Certificate of Amendment filed with the Connecticut Secretary of State is attached hereto as **Exhibit J**.

22.     Accordingly, M&T is successor by merger of the Loan Agreement and EFA Documents (collectively, the "Loan Documents").

23.     On December 22, 2022, M&T sent to Freon a Notice of Default, Acceleration, and Demand for Payment ("Default Letter"), which default was the result of Freon's failure to make all payments due under the terms of the Loan Documents. A true and correct copy of the original Default Letter is attached hereto as **Exhibit K**.

24.     Pursuant to the Loan Documents, Freon remains obligated and responsible to M&T for the outstanding balance remaining in the amount of $4,557,301.86 as of November 8, 2022, plus default interest, costs, expenses, and attorneys' fees, subject only to setoff of funds received by M&T from the disposition of certain units of Equipment.

25.     M&T has performed all its obligations in accordance with the Loan Documents.

26.     M&T is the legal and rightful owner of the Loan Documents and has not assigned or transferred its rights in same.

///

///

///

### IV.   Freon Logistic Bankruptcy

27.    On or about November 8, 2022, Freon filed a petition for relief under Chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California (Fresno), Case No. 22-11907, before the Honorable Rene Lastreto II.

28.    On December 14, 2022, the case was converted to one under Chapter 7 of the Bankruptcy Code. Jeffrey Vetter was appointed as the Chapter 7 Trustee.

29.    On or about December 14, 2022, the Bankruptcy Court entered an order granting M&T partial relief from the automatic stay for the purpose of repossessing the Loan Equipment and EFA Equipment (collectively, the "Equipment"). Pursuant to the Order, Freon was required to provide the location of the Equipment and immediately deliver and surrender the Equipment to M&T.

30.    On or about February 9, 2023, the Bankruptcy Court entered an order granting M&T complete relief from the automatic stay to continue to repossess the Equipment and to dispose of the Equipment in accordance with Article 9 of the Uniform Commercial Code.

31.    To date, M&T has repossessed or knows of the location of twenty-four (24) units of Equipment.

32.    To date, M&T has been unable to repossess or locate the sixteen (16) remaining units of Equipment (the "Missing Equipment"), specifically:

- Eight (8) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X0ND782853, 1XPBD49X1ND782893, 1XPBD49XXND782861, 1XPBD49X5ND782864, 1XPBD49X0ND782819, 1XPBD49X0ND782822, 1XPBD49X7ND782820, 1XPBD49X1ND782862;

- Two (2) 2016 Kenworth T680, Serial Nos. 1NKYL49X0GJ117002, 1NKYL49X2GJ117003; and

- Six (6) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos. 1GRAA0624JW103081, 1GRAA0620JW116104, 1GRAA0623JW116114, 1GRAA0627JW116102, 1GRAA0624JW116123, 1GRAA062XJW120287.

33.    Freon has failed or refused to provide accurate information regarding the location or general whereabouts of the Missing Equipment.

**Count One – Writ of Possession**

34.    M&T repeats and realleges paragraphs 1 through 33 as if fully set forth herein.

35.    The Loan Documents entered into by and between M&T, as successor by merger, and Freon comport with the standard conduct of business within the industry.

36.    Pursuant to the Loan Documents, if one or more events of default shall occur and be continuing with regard to the obligations, M&T shall have such rights and remedies with respect to the Equipment as provided under the Loan Documents and any and all of the rights and remedies at law and equity, including, but not limited to, entry of any location where the Equipment is located to take possession of it without process of law.

37.    Freon has defaulted under the terms of the Loan Documents by failing to make all payments when due which constitutes an event of default pursuant to Section 14(i) of the Master Loan Agreement and pursuant to Section 11(a) of the Equipment Finance Agreements.

38.    M&T is entitled to possession of the Missing Equipment under the Loan Documents.

39.    Despite being ordered by the Bankruptcy Court to provide the location of the Equipment and immediately deliver and surrender the Equipment, Freon has failed to do so. Freon wrongfully retains possession and control of the Missing Equipment.

40.    As each day passes and the Missing Equipment is not repossessed, the Missing Equipment continues to depreciate in value.

41.    Upon information and belief, the Missing Equipment is located throughout the country in various states including, but not limited to, California, New York, Pennsylvania, Ohio, North Dakota, and Indiana.

42.    The description of the personal property is the Missing Equipment as described in detail in Paragraph 32 herein.

43.    The repossession of the Missing Equipment is not sought to hinder, delay or defraud any other creditor of Freon.

///

{3900534.DOCX:}                                8 COMPLAINT

44.     Based upon the facts alleged herein, there is substantial likelihood that M&T will prevail on the merits of its claim.

45.     Upon information and belief, Freon appears to be exercising a degree of control over the Missing Equipment.

46.     Upon information and belief, the Missing Equipment has not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of M&T, nor seized under any lawful process against the goods and chattels of M&T subject to such lawful process, nor held by virtue of any order for replevin against M&T.

47.     M&T has a right to recover and repossess the Missing Equipment in which it has a security interest with a right to immediate possession and damages for such wrongful detention.

48.     M&T has a right to pursue any legal remedy available to it to collect the obligations outstanding, to enforce its remedies available to it both under the Loan Documents and otherwise, including, without limitation, the right to take possession of the Equipment and dispose of the same.

49.     Upon information and belief, the fair market value of the Missing Equipment tis approximately $1,537,000.00 depending on its condition.

50.     By reason of such wrongful detention of the Missing Equipment, M&T has sustained damages in the amount of $4,557,301.86 as of November 8, 2022, plus costs, expenses, attorneys' fees, and default interest which continue to accrue, subject only to setoff of funds received by M&T from the disposition of certain units of Equipment.

51.     M&T may suffer irreparable harm if its request for a writ of possession is denied and the Missing Equipment continues to depreciate in value.

52.     M&T has demanded return of the Missing Equipment, however, Freon has failed and refused to return the same.

53.     M&T has a perfected security interest in the Missing Equipment as evidenced by the Certificates of Title attached hereto.

54.     M&T has retained the law firms of Updike, Kelly & Spellacy, P.C. and Weintraub Tobin and has agreed to pay said firms a reasonable fee for their services. Pursuant to the Loan

Documents, M&T is entitled to recover from Freon its attorneys' fees and costs incurred in enforcing the Loan Documents.

## **Count Two – Breach of Contract**

55.     M&T repeats and realleges paragraphs 1 through 33 as if fully set forth herein.

56.     M&T is the owner of the Loan Documents, pursuant to which Freon promised to make certain monthly payments for its use and possession of the Equipment.

57.     Freon has breached the Loan Documents due to its failure to make all monthly payments when due.

58.     On December 22, 2022, M&T sent to Freon a Notice of Default, Acceleration, and Demand for Payment ("Default Letter"), which default was the result of Freon's failure to make all payments due under the terms of the Loan Documents.

59.     Pursuant to the Loan Documents, Freon remains obligated and responsible to M&T for the outstanding balance of $4,557,301.86 as of November 8, 2022, plus costs, expenses, attorneys' fees, and default interest which continue to accrue, subject only to setoff of funds received by M&T from the disposition of certain units of Equipment.

60.     M&T has retained the law firms of Updike, Kelly & Spellacy, P.C. and Weintraub Tobin and has agreed to pay said firms a reasonable fee for their services. Pursuant to the Loan Documents, M&T is entitled to recover from Northpoint its attorneys' fees and costs incurred in enforcing the Loan Documents.

## **REQUEST FOR RELIEF**

WHEREFORE, plaintiff M&T Capital and Leasing Corporation claims the following relief from the Court:

1.     Seizure and possession of the Missing Equipment;

2.     Monetary damages;

3.     Costs of seizure;

4.     Attorneys' fees, costs, and expenses;

5.     Interest; and

///

{3900534.DOCX:}

1        6.     Such other and further relief as the Court deems just in law and equity.

2

3        Respectfully submitted,

4

5   Dated:  June 20, 2023                    **weintraub tobin** chediak coleman grodin

6                         law corporation

7

8                         By:   /s/ W. Scott Cameron

9                             W. Scott Cameron

10                        Attorneys for Plaintiff M&T Capital and Leasing

11                        Corporation f/k/a People's Capital and Leasing Corp.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## MASTER LOAN AND SECURITY AGREEMENT NO. 5113

This Master Loan and Security Agreement is entered into as of 15th day of February, 2018, by and between **People's Capital and Leasing Corp.**, a Connecticut corporation, having its principal place of business at 850 Main St., BC-03 Bridgeport, CT 06604 (the "Lender") and **Freon Logistics** a Corporation organized under the laws of the State of California with its chief executive office and place of business at 7309 Glitter Way, Bakersfield, CA 93313, (the "Borrower"). The Lender and Borrower agree as follows:

**1. THE LOANS.** Subject to the terms and conditions of this Agreement, the Lender will make one or more loans to the Borrower upon the terms and conditions set forth in this Agreement and each schedule which may be executed from time to time by the parties hereto and identified as a schedule to this Agreement (individually, a "Schedule" and collectively, the "Schedules") and all amendments, riders and supplements hereto and thereto. Each Schedule shall be deemed to incorporate the terms of this Agreement and this Agreement and each Schedule which may be executed pursuant hereto shall constitute a separate and distinct loan (each a "Loan" and collectively, the "Loans") repayable as provided in this Agreement and the applicable Schedule.

**2. REPAYMENT OF LOANS.** Borrower agrees to repay each Loan in the number and the amount of successive monthly or quarterly installments (which shall be inclusive of interest, unless otherwise indicated) reflected in the applicable Schedule. The advance payment with respect to a Schedule, if any, shall be due and payable upon execution of the Schedule. The first periodic installment (exclusive of the advance payment, if any) with respect to a Schedule shall be due on the first (1st) day of the month following the advance of the Loan proceeds by Lender (the "Commencement Date"). The remaining periodic installment payments shall be due and payable on the same day of each successive month (or quarter, if quarterly payments are provided for in the Schedule). However, the parties may select another Commencement Date by noting the same in the Special Provisions section of the Schedule or by a separate writing signed by Lender and Borrower in which case the first periodic installment payment shall be due on such date. The Borrower authorizes the Lender to insert the Commencement Date in each Schedule, determined in accordance with the foregoing provisions. Unless otherwise specifically provided for in writing, no Loan may be prepaid.

**3. SECURITY INTEREST.** To secure payment when due (at maturity by acceleration or otherwise) of the Loan described in the applicable Schedule, any interim funding against such Loan, the performance of all other obligations of the Borrower under this Agreement and the applicable Schedule and the payment and performance of any and all other Schedules, debts, obligations and liabilities of Borrower to Lender whether direct, contingent or joint and several, now existing or hereafter arising (including obligations assigned to Lender), and any renewals, extensions and modifications of such debts, obligations and liabilities, Borrower hereby conveys, assigns and grants to Lender a continuing security interest in and to (i) the equipment described in the applicable Schedule and all amendments, riders and supplements thereto including all related software (embedded therein or otherwise), all parts, repairs, additions, attachments, replacements, replacement parts, accessions and accessories incorporated therein or affixed thereto, modifications and substitutions

1

thereto (the "Equipment") and (ii) all proceeds thereof including insurance proceeds (all of the above, including the Equipment, collectively, the "Collateral").

**4. FINANCING AGREEMENT.** THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. BORROWER ACKNOWLEDGES THAT THE EQUIPMENT HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER HAS NOT AND DOES NOT MAKE ANY WARRANTY WITH RESPECT TO ITS CONDITION, MERCHANTABILITY, SUITABILITY, CAPACITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

**5. UNCONDITIONAL OBLIGATION TO PAY, LATE PAYMENTS, ETC.** All payments due under a Schedule or hereunder shall be paid to Lender or its assigns without notice or demand and without abatement, offset, defense or counterclaim, at Lender's principal office shown above, or such other place as Lender or its assignee may designate in writing to Borrower. Borrower's obligation to pay the installments and other payments due under a Schedule or hereunder shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use of, damage to, loss of possession or use of or destruction of, all or any of the Equipment described in such Schedule; (ii) the prohibition or other restriction against Borrower's use of said Equipment; or (iii) for any other cause, it being the agreement of the parties that the Loan and any other amount payable by Borrower under a Schedule or hereunder shall continue to be payable in all events in the manner and at the times provided in the Schedule and this Agreement.

Time is of the essence in the performance of the Borrower's obligations under this Agreement and each Schedule. If any periodic installment payment or other payment is more than five (5) days late, Lender may, at its election, and subject to prior exercise of its right of acceleration, accept the payment in arrears and Borrower shall pay, as liquidated damages: (i) a late charge on, and in addition to such periodic installment or other payment, equal to five (5%) percent of such defaulted payment plus, (ii) interest on such defaulted payment from one (1) month after the due date until paid at the lower of one and one-half percent (1.5%) per month or the maximum rate permitted by law. Any amount received by Lender determined to be in excess of the highest rate of interest permitted by applicable law shall be refunded to Borrower. A returned check fee or a non-sufficient funds charge of $25.00 will be charged to Borrower for each check that is returned for any reason including non-sufficient funds or uncollected funds.

**6. REPRESENTATIONS AND WARRANTIES.** Borrower warrants, represents and agrees as follows as of the date hereof and as of the date of execution of each Schedule: (i) unless it is an individual or sole proprietorship, Borrower is duly organized, validly existing and in good standing in the state in which it was organized (as indicated in the introductory paragraph of this agreement) and is duly qualified to do business wherever necessary to carry on its business and operations; (ii) Borrower has the authority to carry on its business as presently conducted; (iii) the Agreement is and each Schedule will be a legal, valid and binding obligation of the Borrower in accordance with its terms; (iv) Borrower has full power and authority to execute, deliver and perform its obligations under this Agreement and the Schedules; (v) the execution and delivery of this Agreement and the Schedules has been authorized by all requisite corporate (or partnership or limited liability company) action; (vi) the execution, delivery and performance of this Agreement and the Schedules does not and will not constitute a breach, default or violation of or under Borrower's articles of incorporation or organization, by laws,

2

partnership or limited liability company agreement or any other agreement, law, order, judgment or injunction to which it is a party or may be bound; (vii) the Equipment is (or, on the Commencement Date, will be) lawfully owned by Borrower, free and clear of all liens, encumbrances and security interests and Borrower will warrant and defend title thereto against all claims; (viii) Borrower has not granted and will not grant to any one other than Lender a security interest in the Equipment and no Financing Statement or other instrument affecting the Equipment nor rights therein, bearing the signature of, or otherwise authorized by, Borrower is on file in any public office; (ix) the Equipment shall at all times remain personal property and be retained in Borrower's possession at its principal address set forth above (or, if so indicated in a Schedule, at the Equipment location set forth in such Schedule); (x) the Equipment shall be used solely for business purposes and not for any consumer purposes; (xi) if the Equipment is attached to real estate or if it is or may become subject to a prior interest in favor of a party having any interest in the real estate, Borrower will, on Lender's demand, furnish Lender with a writing by which any and all parties having such prior interest waive or subordinate their rights and priorities to, or in favor of, Lender's security interest provided herein; (xii) all financial statements and other credit information delivered by Borrower to Lender are true and correct in all respects and there has been no material adverse change in the financial condition of the Borrower since their date; (xiii) there are no pending or threatened actions or proceedings before any court or administrative agency that are likely to have a material adverse effect on Borrower, nor is Borrower in default under any loan, lease or purchase obligation; (xiv) Borrower has filed all tax returns required to be filed prior to the date of this Agreement and each Schedule taking into account any extension of time granted or permitted by the taxing authority and has paid or adequately provided for all taxes payable by the Borrower and  (xv) Borrower's exact legal name and State of incorporation (or if not a corporation, State of organization) and chief executive office are accurately set forth in the first paragraph of this Agreement and that the organizational number (if applicable) assigned to Borrower in the State in which it was organized is as specified below Borrower's signature.

7.    **INSURANCE.** Borrower shall, at its sole cost and expense, procure and maintain, so long as Borrower is indebted to Lender on any Loan or on any other liability:

    (i)    property insurance insuring the Equipment against all risks of physical loss, theft, damage and destruction (including specific coverage for loss by flood and earthquake, if requested by Lender) in an amount equal to the greater of (a) the amount of the Loan under the applicable Schedule or (b) the full replacement value of the Equipment and Lender and its assigns shall be named by endorsement with "lender's loss payable provisions" under such policy, and;

    (ii)    primary commercial general liability insurance and/or commercial auto liability with respect to the use and maintenance of the Equipment in such amounts as may be reasonably acceptable to Lender.

All insurers and coverages must be reasonably satisfactory to Lender.  Borrower shall deliver to Lender Evidence of Commercial Property Insurance on ACORD form 28 ("Evidence") (or equivalent) with ISO special form (or its equivalent), including flood and earthquake coverage (if requested by Lender) and Certificate of Liability Insurance on ACORD form 25 (or equivalent) or other proof of insurance indicating that Borrower has obtained appropriate liability coverage for its operations. Evidence shall provide that the policy may not be canceled or altered without at least thirty (30) days prior written notice to Lender and that the coverage shall not

3

be invalidated against Lender because of any violation of any condition or warranty contained in any policy or application therefor by Borrower or by reason of any action or inaction of Borrower. If requested by Lender, Borrower shall provide Lender with a copy of its commercial property insurance policy and an endorsement to the policy indicating Lender's interest in the policy. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact to file, settle or adjust and receive payment of claims under any insurance policy on the Equipment and to endorse Borrower's name on any checks, drafts or other instruments of payment on such claims.

**8. USE, REPAIRS, LOSS AND DAMAGE.** Borrower agrees to maintain the Equipment in good condition and repair and in accordance with the manufacturer's instructions, manuals and warranties (if any), and the requirements of any applicable insurance and any governmental authority having jurisdiction, provided, however, that Borrower shall not make any changes or alterations in or to the Equipment except as necessary for compliance with this section. Borrower shall pay for all fuel, service, inspection, overhaul, replacements, substitutions, materials and labor necessary or desirable for the proper use, repair, operation and maintenance of the Equipment. All risks of loss, theft, damage or destruction of the Equipment shall be borne by Borrower and Borrower shall promptly notify Lender in writing of any such loss, theft, damage or destruction. In the event of any damage to the Equipment (unless the same is damaged beyond repair) Borrower shall, at its expense, place the same in good repair, condition and working order. If the Equipment set forth in a Schedule or Schedules is determined by Lender to be lost, stolen or damaged beyond repair, or should said Equipment be confiscated, seized or the use and title thereof requisitioned to someone other than Borrower, Borrower shall immediately pay to Lender, in addition to unpaid past due periodic installment payments on the Loan, other unpaid sums then due hereunder and late charges then past due, an amount equal to the then remaining periodic installment payments due on the Loan discounted to present value at the rate of two percent (2%) per annum, less the net amount of the recovery, if any, actually received by Lender from insurance on the Equipment.

**9. TAXES AND OTHER CHARGES.** Borrower agrees to pay promptly when due all registration, title, license and other fees, assessments and sales, use, gross receipts, ad valorum, property and any and all other taxes imposed by any State, Federal, local or foreign government upon this Agreement and the Schedules or upon the ownership, shipment, delivery, use or operation of the Equipment or any Collateral or upon or measured by any payments due hereunder (other than taxes on or measured solely by the net income of Lender) and any fines, penalties and interest thereon.

**10. BORROWER'S ADDITIONAL COVENANTS.** Borrower hereby agrees and covenants as follows: (i) except for the security interest granted hereby, Borrower shall keep the Equipment free and clear of any security interest, lien or encumbrance and shall not sell, lease, assign (by operation of law or otherwise), exchange or otherwise dispose of any of the Equipment, (ii) Borrower authorizes Lender to file a financing statement and amendments thereto describing the Collateral, which may be filed either before or after Borrower's execution of any related Schedule, and Borrower agrees to pay any filing fees and/or costs with respect thereto and for lien searches and articles of incorporation; (iii) if any part of the Collateral is subject to certificate of title law, Borrower will cause Lender's security interest to be noted on such certificate of title and promptly deliver such

4

certificate to Lender; (iv) Borrower agrees that it will not change the State where it was incorporated or otherwise, nor change its name or address, without providing Lender with thirty (30) days prior written notice; (v) Borrower will allow Lender and its representatives free access to the Collateral at all times during normal business hours, for purposes of inspection and repair and, following an Event of Default, Lender shall have the right to demonstrate and show the Collateral to others and (vi) Borrower will furnish or cause to be furnished to Lender (a) its interim Financial Statements to include both a balance sheet and income statement within sixty (60) days after the end of its first three quarters in each fiscal year, (b) its audited annual Financial Statements prepared by an independent certified public accountant within one hundred twenty (120) days after the close of its fiscal year which shall be prepared in accordance with generally accepted accounting principles, (c) the financial statements or other financial information which any guarantor of Borrower's obligations hereunder ("Guarantor") is required to provide to Lender as set forth in the applicable guaranty, and (d) all other financial information and reports that Lender may from time to time reasonably request, including income tax returns of Borrower and any Guarantor; (vii) Borrower and any Guarantor agrees that any financial statements or other nonpublic information which Borrower or any Guarantor provides to Lender may be disclosed by Lender for legitimate business purposes to Lender's affiliates, attorneys, advisors, recourse providers, prospective Equipment remarketers, assignees or participants, auditors or other parties pursuant to law, and (viii) Borrower will comply with all applicable federal, state and local laws, rules, ordinances, regulations and orders applicable to it and Borrower will execute and deliver to Lender such further documents and take such further action as Lender may require in order to more effectively carry out the intent and purpose of this Agreement.

**11. BORROWER'S FAILURE TO PAY TAXES, INSURANCE, ETC.**  Should Borrower fail to make any payment or do any act as herein provided (including, but not limited to, payment of taxes or for insurance), Lender shall have the right, but not the obligation, and without releasing Borrower from any obligation hereunder, to make or do the same, and to pay any sum due in connection therewith or to contest or compromise any encumbrance, charge or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor.  If any of the foregoing shall be paid by Lender, Borrower shall promptly reimburse Lender therefor on demand together with interest thereon at the lower of one and one-half percent (1.5%) per month or the maximum rate permitted by law.

**12. CROSS COLLATERALIZATION.**  Without in any way limiting the provisions of Section 3, as additional security for the Borrower's obligations under any Schedule, Borrower grants to Lender a security interest in all equipment and other personal property (collectively the "additional collateral") set forth in every other Schedule, lease, security agreement, loan and security agreement or other agreement (collectively, the "other agreements") between the Borrower and the Lender whether now or hereafter in existence (including agreements assigned to Lender), and Borrower assigns to the Lender as security for its obligations under each Schedule all of its right, title and interest in and to any surplus money to which Borrower may be entitled upon the sale or other disposition of the additional collateral.  Such additional collateral shall continue to secure the Borrower's obligations under each Schedule even after the obligations under the applicable other agreement have been satisfied in full.  Anything above to the contrary notwithstanding, the benefit of the foregoing additional security provisions shall apply to the benefit of the Lender and any assignee holding a Schedule only to the extent that the Lender or such assignee is also the holder of one or more other agreements.

5

**13. INDEMNITY.** Borrower assumes liability for and agrees to indemnify, defend, protect, save and keep harmless Lender from and against costs, expenses and disbursements, including court costs and legal expenses, of whatever kind and nature, imposed on, incurred by or asserted against Lender (whether or not also indemnified against by any other person) in any way relating to or arising out of this Agreement or the Schedules or the manufacture, financing, ownership, delivery, possession, use, operation, condition or disposition of the Equipment by Borrower, including, without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower, and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement, and any claim for patent, trademark or copyright infringement. Each party agrees to give the other notice of any claim or liability hereby indemnified against promptly following learning thereof. The fact that a claim for which Lender is entitled to indemnity under this Section is asserted after the termination of this Agreement shall not release Borrower from its indemnity obligations and this covenant of indemnity shall survive the termination of this Agreement.

**14. DEFAULT.** The occurrence of any one of the following shall constitute an "Event of Default" hereunder and under each Schedule:  (i) Borrower fails to pay any periodic installment payment, or other amount due hereunder or under any Schedule on or before the fifth (5th) day following the date when the same becomes due and payable; (ii) Borrower removes, sells, transfers, encumbers, or parts with possession of the Equipment or any items of Equipment or attempts to do any of the foregoing; (iii) Borrower fails to maintain in force the required insurance on any Equipment in compliance herewith or fails to provide loss payable protection to Lender in form satisfactory to Lender; (iv) any representation or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue; (v) Borrower shall fail to observe or perform any of the other obligations required to be observed or performed by Borrower hereunder or under any Schedule or Borrower or any Guarantor shall fail to observe any other obligation or indebtedness of Borrower or such Guarantor to Lender otherwise owing or due by Borrower or such Guarantor to Lender in any other agreement now or hereafter executed between the parties hereto, and such failure shall continue uncured for twenty (20) days after written notice thereof to Borrower or such Guarantor; (vi) Borrower or any Guarantor shall (a) fail to pay any indebtedness for borrowed money (other than the Loan) of the Borrower or such Guarantor, or any interest or premium thereon, when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise) or (b) fail to perform or observe any term, covenant, or condition on its part to be performed or observed under any agreement or instrument relating to such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof; (vii) if Borrower leases the premises where the Equipment is located, a breach of such lease by Borrower and the commencement of an action by the landlord to evict Borrower or to repossess the premises; (viii) if Borrower or any Guarantor sells, leases or disposes of any of its assets except in the ordinary course of its business and except for the disposition of any obsolete property not useful to Borrower or such Guarantor; (ix) Borrower or any Guarantor ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement,

6

composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, custodian, receiver or liquidator of it or of all or any substantial part of its assets or properties, or if Borrower or any Guarantor takes any action looking to its dissolution or liquidation, or an order for relief is entered under the Bankruptcy Code against Borrower or any Guarantor; (x) if within sixty (60) days after the commencement of any proceedings against Borrower or any Guarantor seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings, shall not have been dismissed or if within sixty (60) days after the appointment, without Borrower's or Guarantor's acquiescence, of any trustee, custodian, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated; (xi) Borrower or any Guarantor terminates its existence, sells all or substantially all of its assets or consolidates with or merges into any other entity or its stockholders, partners or members sell all or substantially all of their stock or partnership or membership interests; or (xii) the entry of any judgment, order, award or decree against Borrower or a Guarantor which has not been discharged or execution thereof not stayed within sixty (60) days after entry and which is not fully covered by applicable insurance, and a determination by Lender, in good faith but in its sole discretion, that the same could have a material adverse effect on the Borrower or the Guarantor or the Lender's rights with respect to the Collateral or the prospect for full and punctual payment of the payments due hereunder; (xiii) the death of an individual Guarantor; or (xiv) Lender shall determine that there has been a material adverse change in the financial condition or business operations of the Borrower or any Guarantor since the date of the execution of this agreement or that the Borrower's ability to perform its obligations hereunder has been materially impaired.

**15. REMEDIES.** Upon the occurrence of an Event of Default, Lender shall have the right to recover from Borrower, as liquidated damages for loss of a bargain and not as a penalty, a sum equal to the aggregate of the following with respect to any and all Schedules: (a) all unpaid periodic installment payments and other sums due under the Schedule to the date of default plus late charges, if any, (b) the present value (using a two percent per annum (2%) discount rate) of all unmatured installments to become due under the Schedule and (c) interest on the total of (a) plus (b) from the date of default at the rate of one and one-half percent (1.5%) per month, if not prohibited by law, otherwise at the highest lawful rate. In addition, Lender shall have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights under each Schedule and the repossession, transporting, holding, insuring, repairing, refurbishing, preparing for sale and subsequent sale, lease or other disposition of the Collateral including reasonable attorney fees and legal expenses (collectively, "Repossession Expenses"). **BORROWER WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON THIS AGREEMENT, ANY SCHEDULE OR ANY COLLATERAL.**

If the Equipment is mobile equipment and/or normally or actually used in more than one location, whether self-propelled or transported by other equipment, including but not limited to trucks, tractors, trailers, other motor vehicles, cranes, lifts, digging equipment, cement mixers, rolling stock and all other construction, transportation, and mining equipment and all attachments and accessions to any of the foregoing, then Lender shall have the right on five (5) days notice to require Borrower at Borrower's expense to deliver the Equipment fully assembled to a single location for possession by Lender.

7

The Lender shall have all of the rights and remedies of a Secured Party under the Uniform Commercial Code and all other rights and remedies available to creditors at law or in equity. Without limiting the generality of the foregoing, Lender is hereby authorized and empowered, with the aid and assistance of any person or persons, to enter any premises where the Collateral or any part thereof is, or may be, placed, and to assemble and/or remove same and/or to render it unusable and sell, lease or otherwise dispose of such Collateral and any such sale may be at one or more public or private sales upon at least ten (10) days written notice to Borrower for such sale. The proceeds of each such sale, lease, or other disposition of the Collateral shall be applied first, to the Repossession Expenses, second to the liquidated damages specified above and any other indebtedness secured hereby, third, to the holder of any subordinate interest or other lien on the Collateral if such holder is legally entitled to such proceeds and fourth, any surplus to Borrower. Borrower shall remain liable for any deficiency on demand.    IF LENDER EMPLOYS COUNSEL FOR THE PURPOSE OF EFFECTING COLLECTION OF ANY MONIES DUE HEREUNDER (WHETHER OR NOT LENDER HAS RETAKEN THE COLLATERAL OR ANY PART HEREOF) OR FOR THE PURPOSE OF RECOVERING THE COLLATERAL, BORROWER AGREES TO PAY REASONABLE ATTORNEY'S FEES, COSTS AND EXPENSES INCLUSIVE OF THOSE INCURRED IN BANKRUPTCY PROCEEDINGS, INCLUDING RELIEF FROM STAY MOTIONS, CASH COLLATERAL MOTIONS AND DISPUTES CONCERNING ANY DISCLOSURE STATEMENT AND/OR BANKRUPTCY PLAN. The Lender may require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender which is reasonably convenient to both parties. Borrower acknowledges and agrees that (i) Lender shall have no obligation to clean-up or otherwise prepare the Equipment or other collateral for sale; (ii) Lender may comply with any state or federal law requirements in connection with the disposition of the Equipment or other collateral and such compliance shall not be considered adversely to affect the commercial reasonableness of the sale; (iii) Lender may sell the Equipment or other Collateral without giving any warranties with respect thereto and may specifically disclaim any warranties and such procedure shall not be considered adversely to affect the commercial reasonableness of the sale; and (iv) if Lender sells any of the Equipment or other Collateral on credit, Borrower shall be credited only with the payments actually made by the purchaser, received by the Lender and applied to the indebtedness of the purchaser and if the purchaser fails to pay for the Equipment or other collateral, Lender may resell the Equipment or other collateral and Borrower will be credited with the proceeds of the sale. All rights and remedies hereunder are cumulative and not exclusive and a waiver by Lender of any breach by Borrower of the terms, covenants, and conditions hereof shall not constitute a waiver of future breaches or defaults, and no failure or delay on the part of Lender in exercising any of its options, powers, rights or remedies, or partial or single exercise thereof, shall constitute a waiver thereof.

If any court of competent jurisdiction determines that any provision of this Section 15 is invalid or unenforceable in such jurisdiction, in whole or in part, such determination shall not prohibit Lender from enforcing all other provisions in such jurisdiction.

**16. ASSIGNMENT.**    Lender may grant security interests in or otherwise assign or transfer (or grant participations in) all or any part of this Agreement or any Loan or Schedule or any installments or other sums due or to become due, without Borrower's consent. Borrower waives and agrees not to assert against any assignee any claim, defense or set-off that Borrower could assert against Lender except defenses that cannot be legally waived. In the event Lender assigns any Schedule, (i) a copy of this Agreement together with the

8

manually executed (ink-signed) original Schedule shall constitute the original chattel paper under the Uniform Commercial Code and (ii) the assignee holding the assigned Schedule shall be the Lender of the Loan set forth in such assigned Schedule secured by the Collateral described therein and may exercise its rights and remedies with respect thereto separately and independently of the holder of any other Schedule. Upon Lender's giving written notice to Borrower of any such assignment, Borrower shall promptly acknowledge its obligations under the Schedule assigned and shall comply with the written directions of such assignee, shall make all installment payments and other payments due with respect to the assigned Schedule as such assignee may direct in writing and shall send all notices provided for or permitted under this Agreement with respect to such Schedule to such assignee. Following any such assignment the term "Lender" shall, as to the assigned Schedule, be deemed to refer to Lender's assignee, but no such assignee shall be deemed to assume any obligation or duty imposed upon Lender hereunder arising prior to such assignment and Borrower shall look only to Lender for performance thereof. As used in this Section 16, "assign" shall be deemed to include a pledge, sale of, or grant of a security interest in, any of the Collateral or a Schedule by Lender and the term "assignee" shall be deemed to refer to the recipient of such pledge, hypothecation, sale, mortgage, or security interest. This Agreement and any Schedule shall not be transferable or assignable by Borrower without the Lender's express prior written consent and any such purported assignment by Borrower other than in compliance with the provisions of this Section 16 shall be null and void ab initio.

**17. SECURITY DEPOSIT.** If a Security Deposit is indicated in a Schedule then such Security Deposit shall secure all of Borrower's obligations to Lender now or hereafter in existence. Lender may, at its option, apply the Security Deposit to cure any default of Borrower, whereupon Borrower shall promptly restore such Security Deposit to its original amount. Lender shall return to Borrower any unapplied Security Deposit without interest upon full payment and performance of all of Borrower's obligations to Lender.

**18. PREJUDGMENT REMEDY WAIVER.** THE BORROWER ACKNOWLEDGES AND AGREES THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION AND NOT A CONSUMER TRANSACTION AND WAIVES ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT STATUTES, AS AMENDED, OR ANY OTHER STATUTE OR STATUTES IN CONNECTICUT OR OTHER JURISDICTIONS AFFECTING PREJUDGMENT REMEDIES. THE BORROWER AUTHORIZES THE LENDER'S COUNSEL TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER AND WAIVES ANY CLAIM IN TORT, CONTRACT OR OTHERWISE AGAINST LENDER'S COUNSEL WHICH MAY ARISE OUT OF SUCH ISSUANCE OF THE WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER. THE BORROWER ACKNOWLEDGES AND STIPULATES THAT THE WAIVERS AND AUTHORIZATIONS GRANTED HEREIN ARE MADE KNOWINGLY AND FREELY AFTER FULL CONSULTATION WITH COUNSEL. SPECIFICALLY, THE BORROWER RECOGNIZES AND UNDERSTANDS THAT THE EXCERCISE OF LENDER'S RIGHTS DESCRIBED ABOVE MAY RESULT IN THE ATTACHMENT OF OR LEVY AGAINST BORROWER'S PROPERTY, AND SUCH WRIT FOR A PREJUDGMENT REMEDY WILL NOT HAVE THE PRIOR WRITTEN APPROVAL OR SCRUTINY OF A COURT OF LAW OR OTHER OFFICIAL OFFICER NOR WILL BORROWER HAVE THE RIGHT TO ANY NOTICE OR PRIOR HEARING WHERE BORROWER MIGHT CONTEST SUCH A PROCEDURE. THE INTENT OF BORROWER IS TO

GRANT LENDER FOR GOOD AND VALUABLE CONSIDERATION THE RIGHT TO OBTAIN SUCH PREJUDGMENT REMEDY AND TO ASSURE THAT ANY SUCH PREJUDGMENT REMEDY IS VALID AND CONSTITUTIONAL.

**19. GENERAL PROVISIONS. THIS AGREEMENT AND ALL RELATED DOCUMENTS AND AGREEMENTS, INCLUDING BUT NOT LIMITED TO ALL SCHEDULES, RIDERS, AMENDMENTS AND SUPPLEMENTAL DOCUMENTS (COLLECTIVELY, "THE LOAN DOCUMENTS") AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT.** BORROWER HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE STATE OF CONNECTICUT AND THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY. BORROWER WAIVES ANY OBJECTIONS BASED UPON VENUE OR "FORUM NON CONVENIENS" IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING. BORROWER CONSENTS THAT PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE SERVED UPON IT BY REGISTERED MAIL DIRECTED TO BORROWER AT ITS ADDRESS SET FORTH AT THE HEAD OF THIS AGREEMENT OR IN ANY MANNER PERMITTED BY APPLICABLE LAW OR RULES OF COURT. BORROWER HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF CONNECTICUT AS ITS AGENT TO RECEIVE SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING. The Loan Documents may not be changed, modified or discharged on behalf of Lender, in whole or part, and no right of Lender may be waived except by a writing signed by a duly authorized officer of Lender. The Lender is authorized and empowered to date the Loan Documents and to fill in blank spaces in accordance with the terms of the transaction, including, but not limited to inserting serial numbers and Equipment descriptions in any Schedule, the insertion of the Commencement Date in the Schedule and the assignment of an account number. Notices hereunder shall be in writing and shall be deemed given when personally delivered or when sent by facsimile to a party's facsimile number or three days after having been mailed to the other party at the address specified above or such new address as to which a party may advise the other. Forbearance or indulgence by Lender in any regard shall not constitute a waiver of the covenant or condition to be performed by Borrower to which the same may apply. Borrower hereby waives demand, presentment, dishonor, protest, and notice of protest, notice of dishonor, notice of nonpayment and any and all notices of like nature. The section captions are for convenience and are not a part of this Agreement. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Lender and shall bind all persons who become bound as debtor to this Master Loan and Security Agreement. If executed by more than one Borrower, then the obligations of each Borrower shall be joint and several. Any provision of the Loan Documents which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof. THE LOAN DOCUMENTS EXCLUSIVELY REPRESENT THE AGREEMENTS BETWEEN THE PARTIES AND THE INTENT OF THE PARTIES THERETO AND SUPERSEDE ANY PRIOR PROPOSAL LETTERS, COMMITMENT LETTERS, ORAL COVENANTS, ORAL AGREEMENTS OR NEGOTIATIONS. The Loan Documents shall not be binding on Lender until accepted and executed on behalf of Lender at its Bridgeport, Connecticut office. Unless otherwise expressly provided, only one original of each of the Loan Documents shall be executed, which

execution may be by separate counterparts which together shall constitute a single document. The parties agree that any copy of an executed Loan Document, including any photocopy, telecopy or facsimile thereof, shall have the same force and effect as though it were an original for all purposes, including but not limited to the enforcement of any of the terms and conditions thereof and the admissibility of such Loan Document in any legal or equitable proceeding, but except as provided below and in Section 16, such copy shall not be used to determine the original chattel paper. In the event that Borrower or any Guarantor provides Lender with a copy of any Loan Document, then Borrower and Guarantor agree to immediately thereafter provide Lender with the original. Borrower agrees that if Borrower delivers a copy but not the manually executed original of a Schedule to Lender, then Lender may execute, designate and mark such copy as the "Original" Schedule for purposes of determining the original chattel paper pursuant to Section 16 of this Agreement. Lender shall have no obligation to disburse the proceeds of any Loan if a material adverse change occurs in the financial condition or business operations of Borrower or Guarantor, if an Event of Default exists or would exist with the giving of notice and/or passage of time, or if any credit or documentation requirement remains outstanding.

| Accepted at Lender's Office at 850 Main Street, BC-03, Bridgeport, CT 06604 | The undersigned signatory affirms that he/she has read the terms and conditions printed above, that he/she is a duly authorized officer, partner, member, manager or proprietor of the Borrower, and has authority to execute this Master Loan and Security Agreement on its behalf. |
|---|---|
| LENDER:<br>**PEOPLE'S CAPITAL AND LEASING CORP.** | BORROWER:<br>**FREON LOGISTICS** |
| AUTHORIZED OFFICER:<br><br>BY: _Raquel Harduby_<br>TITLE: _AVP-Documentation_<br><br>Master Loan 2009 | AUTHORIZED OFFICER, PARTNER, MEMBER, MANAGER, OR PROPRIETOR:<br>BY: _____<br>TITLE: _PRESIDENT_<br><br>FEDERAL IDENTIFICATION NO.: ▮▮▮▮▮▮▮▮ |

11

## CERTIFICATE OF SECRETARY

The undersigned does hereby certify that he/she is Secretary of **Freon Logistics** (hereafter called the "Corporation") and the following is a true, complete and correct copy of resolutions duly adopted by the Board of Directors of the Corporation and that such resolutions are in full force and effect:

"RESOLVED, that the Corporation enter into a Master Loan and Security Agreement No. 5113 dated February 15, 2018 and various Schedules thereto from time to time (the "Schedules") with People's Capital and Leasing Corp. (hereafter called "PCLC"), substantially in the form presented to this meeting providing for Loans by the Corporation from PCLC of the amounts reflected in the Schedules to be secured by the property described in the Schedules (the "Collateral"); and it is further;

RESOLVED, that the officers of the Corporation, and each of them singly hereby are authorized (a) to execute and deliver said Agreement and the Schedules thereto in the name and on behalf of the Corporation, either in the form presented or with such changes therein as the officer executing the same may approve, his approval and authority to be conclusively evidenced by his execution thereof, such execution to be valid and binding on the Corporation with or without the corporate seal of the Corporation, (b) to carry out the obligations and enforce the rights of the Corporation under said Agreement and Schedules, (c) to execute and deliver in the name and on behalf of the Corporation such amendments and other documents as may be requested or required by PCLC in connection with said Agreement and Schedules including (without limiting the generality of the foregoing) promissory notes, security agreements and additional agreements with respect to any interim financing in connection with the acquisition of any Collateral, agreements with assignees of PCLC, and an Acceptance or Delivery Certificate in respect of any Collateral, and (d) to take all other action deemed by them necessary or advisable in connection with the foregoing; and it is further;

RESOLVED, that the officers of the Corporation, and each of them singly, hereby are authorized from time to time on behalf of the Corporation to enter into additional loan, lease or other financing transaction with PCLC upon such terms and conditions as the officers, or any one of them, shall determine, and in that connection to execute and deliver in the name and on behalf of the Corporation such documents as PCLC requires; and it is further

RESOLVED, that all acts authorized in the foregoing resolutions, but performed prior to the adoption of these resolutions, are hereby amended and ratified and affirmed."

The undersigned further certifies that the persons whose names, titles and signatures appear below are duly elected (or appointed), qualified and acting officers of the Corporation and hold on the date of this Certificate the offices set forth opposite their respective names, and the signatures appearing opposite their respective names are the genuine signatures of such persons:

| NAME OF OFFICER | TITLE OF OFFICER | SIGNATURE OF OFFICER |
|---|---|---|
| HARDEEP SINGH | PRESIDENT | |
| AMARINDER S. GORWARA | SECRETARY | |

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said corporation this February 15, 2018.

_____
Secretary

(Corporate Seal)

I

(In the case where the Secretary will execute transactional documents by this resolution, a second officer of the Corporation must sign the below Additional Certificate.)

### ADDITIONAL CERTIFICATE

The undersigned does hereby certify that he is _____ (Title) of the above Corporation and certifies that the foregoing is a true, complete and correct copy of resolutions duly adopted by the Board of Directors and that the above are the names, titles and genuine signatures of presently elected and acting officers of the Corporation.

_____

(In the case where the Secretary is the sole officer of the Corporation, the below Sole Officer Certificate must also be signed and notarized)

### SOLE OFFICER CERTIFICATE

I, _____ am the sole officer of the corporation and my signature on the Master Loan and Security Agreement, Schedules and all related documents is my true and genuine signature.

Very Truly Yours,

_____

Subscribed and sworn to before me this _____ day of _____, 20__.

_____
Notary Public

residing at: _____

my commission expires: _____

2

14

EXHIBIT B

## SCHEDULE TO MASTER LOAN AND SECURITY AGREEMENT

**SCHEDULE NO. 001 DATED FEBRUARY 15, 2018 TO MASTER LOAN AND SECURITY AGREEMENT NO. 5113 DATED FEBRUARY 15, 2018**

**Lender:**
PEOPLE'S CAPITAL AND LEASING CORP.
850 MAIN STREET, BC-03
BRIDGEPORT, CT 06604

**Borrower:**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 93313

Lender and Borrower have entered into a Master Loan and Security Agreement No. 5113 dated February 15, 2018 (the "Master Loan Agreement") which is incorporated herein and this is a Schedule to the Master Loan Agreement. All terms used herein which are defined in the Master Loan Agreement and not otherwise specifically defined herein shall have the same meanings as set forth in the Master Loan Agreement.

**1. THE LOAN AND LOAN REPAYMENT.** Pursuant to the Master Loan Agreement, Lender agrees to lend to Borrower the sum of Three Hundred Thirty Four Thousand Seventy Five and 00/100 ($334,075.00) Dollars. Borrower agrees to repay the Loan in successive installments (which installment payments are inclusive of interest) as set forth in the following payment schedule:

**PAYMENT SCHEDULE**

| ADVANCE PAYMENT | NUMBER OF PERIODIC INSTALLMENT(exclusive of Advance Payment) PAYMENTS AND PAYMENT PERIOD | INSTALLMENT AMOUNT PER PERIODIC PAYMENT PERIOD |
|---|---|---|
| N/A | Sixty (60) Monthly | $ 6,732.08 |

Commencement Date: _March 16, 2018_  Security Deposit (if any): _____
Equipment Location: _7309 Glitter Way, Bakersfield, CA 93313_
Special Provisions: (if any):_____

**2. EQUIPMENT AND SECURITY INTEREST.** As provided in the Master Loan Agreement, Borrower gives and grants to the Lender a security interest in the Equipment described in the attached Schedule A as security for its obligations under this Schedule and the Master Loan Agreement.

**3. DISBURSEMENT OF PROCEEDS.** Borrower hereby authorizes Lender to disburse the Loan proceeds as follows:

$334,075.00      To: Utility Trailer Sales of Southern California, LLC
$334,075.00      **TOTAL PROCEEDS**

**4. SEE PAYMENT ADJUSTMENT RIDER ATTACHED AND INCORPORATED BY REFERENCE.**

The Loan consisting of this Schedule (including the provisions of the Master Loan Agreement incorporated herein) and all riders and supplements to this Schedule constitutes a separate and distinct Loan from any other Schedule to the Master Loan Agreement. Unless otherwise expressly provided, only one original of this Schedule shall be executed and such original together with a copy of the Master Loan Agreement shall constitute the original loan chattel paper. By its execution and delivery of this Schedule, Borrower hereby reaffirms all of the warranties and representations contained in the Master Loan Agreement as of the date hereof and further warrants and represents to the Lender that no Event of Default has occurred and is continuing as of the date hereof. This Schedule shall not be in effect until accepted by Lender at its Bridgeport, CT office.

**ACCEPTED AT LENDER'S BRIDGEPORT, CT OFFICE**

**PEOPLE'S CAPITAL AND LEASING CORP.**

BY: _Raquel Harduby_

TITLE: _AVP - Documentation_

**FREON LOGISTICS**

BY: _____

TITLE: _PRESIDENT_

15

**MASTER LOAN AND SECURITY AGREEMENT NO. 5113**
**SCHEDULE NO. 001**
**SCHEDULE A**

The following description of property supplements, and is part of Schedule No. 001 dated February 15, 2018 to the Master Loan and Security Agreement No. 5113 dated February 15, 2018 between Freon Logistics as Borrower and People's Capital and Leasing Corp. as Lender and may be attached to said Schedule and any related UCC Financing Statements, Acceptance or Delivery Certificate or other document describing the property:

**Equipment Location:   7309 Glitter Way, Bakersfield, CA 93313**

**Vendor:        Utility Trailer Sales of Southern California, LLC**

| QUANTITY | DESCRIPTION | SERIAL NUMBER |
|---|---|---|

Five (5) 2018 Utility VS2RA  53x102 3000R Reefer Trailers, VIN's:   3UTVS2539J8031437
3UTVS2530J8031441
3UTVS2534J8031443
3UTVS2536J8031444
3UTVS2538J8031445

All property listed above together with all related software (embedded therein or otherwise), all parts, repairs, additions, attachments, replacements, replacement parts, accessions and accessories incorporated therein or affixed thereto, modifications and substitutions thereto and all proceeds thereof including insurance proceeds.

**PEOPLE'S CAPITAL AND LEASING CORP.**          **FREON LOGISTICS**

BY: _Raquel Handuty_          BY: _____

TITLE: _AVP- Documentation_      TITLE: _PRESIDENT_

1

16

**PAYMENT ADJUSTMENT RIDER**

**RIDER TO SCHEDULE NO. 001 DATED FEBRUARY 15, 2018 TO MASTER LOAN AND SECURITY AGREEMENT NO. 5113 DATED FEBRUARY 15, 2018 (COLLECTIVELY, THE "CONTRACT") BETWEEN FREON LOGISTICS AS BORROWER (THE "OBLIGOR") AND PEOPLE'S CAPITAL AND LEASING CORP. AS LENDER ("PCLC")**

1. Purpose. This Rider sets forth the terms of adjustment to the payments set forth in the Contract. Terms defined in the Contract and not otherwise defined herein shall have the meanings defined in the Contract.

2. Definitions. The following terms shall have the following meanings herein:

(a) "Adjustment Date" shall mean the date PCLC first disburses any portion of the proceeds of the Contract, provided however, if PCLC makes vendor progress payments or other interim advances pursuant to a demand note or other interim financing document, then the Adjustment Date shall mean the date on which such interim financing "converts" to the term transaction evidenced by the Contract, which date shall be the date Obligor accepts the Equipment following delivery or other earlier date which the parties select in writing. The parties may by a separate writing select a different manner of determining the Adjustment Date.

(b) "Final Base Rate" shall mean the rate for the 5 year U.S. dollar interest rate swaps (non-amortizing, semi-annual basis), as quoted by Bloomberg L.P. or other Bloomberg affiliate on the Adjustment Day and provided internally by PCLC's parent and posted by PCLC in the ordinary course of business, or any successor or similar source selected by PCLC or its parent.

(c) "Preliminary Payments" shall mean the payments set forth in the Contract, consisting of Sixty (60) consecutive monthly payments in the amount of $6,732.08 commencing one (1) month following the Adjustment Date.

(d) "Preliminary Base Rate" shall mean 2.53%.

3. Adjustment of Payments. The Preliminary Payments were calculated based on a spread over the Preliminary Base Rate. If the Adjustment Date occurs after February 15, 2018, and the Final Base Rate is greater than the Preliminary Base Rate, then the Preliminary payments shall be revised. For each increase of one (1) basis point (i.e., 1/100 of 1%) in the Final Base Rate above the Preliminary Base Rate, the Preliminary Payments shall be revised as follows:

- Each of the Sixty (60) payments in the amount of $6,732.08 shall increase by $1.60.

Immediately after the determination of the revised payments due under the Contract, Obligor shall, at the request of PCLC, execute an acknowledgment reflecting the revised payment schedule, but the failure of PCLC to make such a request or the failure of Obligor to execute the acknowledgment shall in no way diminish Obligor's obligations hereunder.

4. PCLC's Requirements. The commencement of the Contract is subject to satisfaction of all documentation and credit requirements of PCLC. If such requirements are not satisfied by the Adjustment Date, then at PCLC's option, the Adjustment Date shall be the date when such requirements are satisfied. The calculation of the Contract payments under this Rider will supersede any prior proposal or quotation.

IN WITNESS WHEREOF, the parties have executed this Rider simultaneously with the Contract.

PEOPLE'S CAPITAL AND LEASING CORP.

BY: _Raguel Harduby_

TITLE: _AVP. Documentation_

FREON LOGISTICS

BY: _____

TITLE: _PRESIDENT_

17

EXHIBIT C

**DELIVERY CERTIFICATE**

**MASTER LOAN AND SECURITY AGREEMENT NO.: 5113**       **DATED: FEBRUARY 15, 2018**
**SCHEDULE NO. 001**                                            **DATED: FEBRUARY 15, 2018**

**TO: PEOPLE'S CAPITAL AND LEASING CORP.**

The undersigned Borrower hereby acknowledges that all of the Equipment described below and in the Schedule to the Master Loan and Security Agreement referred to above (collectively, including any prior amendments and related documents, the "Loan Agreement") has been delivered to Borrower, is of the manufacture, design and specifications selected by Borrower, is suitable for Borrower's purposes, fully complies with said Loan Agreement and has been unconditionally accepted by Borrower thereunder.

Borrower hereby represents to People's Capital and Leasing Corp. ("PCLC") and any assignee that the Loan Agreement at the date hereof is free from any defense, off-set or counterclaim and hereby waives, as to any assignee, all such defenses, off-sets and counterclaims.

Equipment Description:

| QUANTITY | DESCRIPTION | SERIAL NUMBER |
|---|---|---|
| Five (5) 2018 Utility VS2RA  53x102 3000R Reefer Trailers, VIN's: | | 3UTVS2539J8031437 |
| | | 3UTVS2530J8031441 |
| | | 3UTVS2534J8031443 |
| | | 3UTVS2536J8031444 |
| | | 3UTVS2538J8031445 |

Borrower hereby authorizes and requests PCLC to disburse the proceeds of the Loan (or the balance of the proceeds if a portion was previously advanced by PCLC) when all of PCLC's funding conditions are met. Borrower agrees that unless a loan commencement date is specified in the Loan, the Loan will commence automatically upon PCLC's first disbursement of funds after Borrower's execution of this Delivery Certificate and that no further authorization from Borrower will be required prior to such disbursement. Borrower further agrees that unless a loan payment commencement date is specified in the Loan, the due date of the first payment under the Loan (excluding any advance payment) will be one month after the commencement of the Loan and that PCLC may insert such payment commencement date in the Loan. The amount of the monthly payments due under the Loan shall be adjusted as provided in the Payment Adjustment Rider if applicable.

FREON LOGISTICS

BY: _____

TITLE: _PRESIDENT_____

ACCEPTANCE DATE: _02/15/18_____

1

18

# EXHIBIT D



## CERTIFICATE OF ORIGIN FOR A VEHICLE

DATE

INVOICE NO.
**0314**

VEHICLE IDENTIFICATION NO.
**3UT VS2539 J80314 37**

YEAR
**2018**

MAKE
**UTILITY**

BODY TYPE
**TRAILER**

SHIPPING WEIGHT

H.P. (S.A.E.)

G.V.W.R.
**65,000#**

NO. CYLS.

SERIES OR MODEL
**VS2RA**

**2018-N-0314-037**          **EAGLE PASS**

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

**UTILITY TRAILER SLS OF SO CALIF, LLC          NO. 505**
**15567 E. VALLEY BLVD**
**FONTANA, CALIFORNIA 92335**

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

UTILITY TRAILER MANUFACTURING CO.

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)          (AGENT)

**0749717**

CITY OF INDUSTRY, CA 91748
CITY-STATE

MSO (5)

## CERTIFICATE OF ORIGIN FOR A VEHICLE



DATE

INVOICE NO.
**0314**

VEHICLE IDENTIFICATION NO.
**3UT VS2530 J80314 41**

YEAR
**2018**

MAKE
**UTILITY**

BODY TYPE
**TRAILER**

SHIPPING WEIGHT

H.P. (S.A.E.)

G.V.W.R.
**65,000#**

NO. CYLS.

SERIES OR MODEL
**VS2RA**

**2018-N-0314-041**        **EAGLE PASS**

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

**UTILITY TRAILER SLS OF SO CALIF, LLC        NO. 505
15567 E. VALLEY BLVD
FONTANA, CALIFORNIA 92335**

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

UTILITY TRAILER MANUFACTURING CO.

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)        (AGENT)

**0749721**

CITY OF INDUSTRY, CA 91748
CITY-STATE

## CERTIFICATE OF ORIGIN FOR A VEHICLE



DATE

INVOICE NO.
**0314**

VEHICLE IDENTIFICATION NO.
**3UT VS2534 J80314 43**

YEAR
**2018**

MAKE
**UTILITY**

BODY TYPE
**TRAILER**

SHIPPING WEIGHT

H.P. (S.A.E.)

G.V.W.R.
**65,000#**

NO. CYLS.

SERIES OR MODEL
**VS2RA**

**2018-N-0314-043**        **EAGLE PASS**

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

**UTILITY TRAILER SLS OF SO CALIF, LLC      NO. 505**
**15567 E. VALLEY BLVD**
**FONTANA, CALIFORNIA 92335**

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

UTILITY TRAILER MANUFACTURING CO.

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)          (AGENT)

0749723

## CITY OF INDUSTRY, CA 91748
CITY-STATE



## CERTIFICATE OF ORIGIN FOR A VEHICLE

**DATE**

**INVOICE NO.**
0314

**VEHICLE IDENTIFICATION NO.**
3UT VS2536 J80314 44

**YEAR**
2018

**MAKE**
UTILITY

**BODY TYPE**
TRAILER

**SHIPPING WEIGHT**

**H.P. (S.A.E.)**

**G.V.W.R.**
65,000#

**NO. CYLS.**

**SERIES OR MODEL**
VS2RA

2018-N-0314-044        EAGLE PASS

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

UTILITY TRAILER SLS OF SO CALIF, LLC      NO.  505
15567 E. VALLEY BLVD
FONTANA, CALIFORNIA 92335

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

UTILITY TRAILER MANUFACTURING CO.



BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)        (AGENT)

0749724

CITY OF INDUSTRY, CA 91748
CITY-STATE

## CERTIFICATE OF ORIGIN FOR A VEHICLE



| DATE | | INVOICE NO. **0314** |
|---|---|---|

| VEHICLE IDENTIFICATION NO. **3UT VS2538 J80314 45** | YEAR **2018** | MAKE **UTILITY** |
|---|---|---|

| BODY TYPE **TRAILER** | | SHIPPING WEIGHT |
|---|---|---|

| H.P. (S.A.E.) | G.V.W.R. **65,000#** | NO. CYLS. | SERIES OR MODEL **VS2RA** |
|---|---|---|---|

**2018-N-0314-045**           **EAGLE PASS**

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer. NAME OF DISTRIBUTOR, DEALER, ETC.

**UTILITY TRAILER SLS OF SO CALIF, LLC        NO. 505**
**15567 E. VALLEY BLVD**
**FONTANA, CALIFORNIA 92335**

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

UTILITY TRAILER MANUFACTURING CO.

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)        (AGENT)

**0749725**

CITY OF INDUSTRY, CA 91748
CITY-STATE

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is now and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.
FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) **FREON LOGISTICS**

ADDRESS **7309 GLITTER WAY, BAKERSFIELD, CA    93313**

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER **UTILITY TRAILER SALES OF SO. CA, LLC**    BY: _____

NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____    before this _____ day of _____ Year____

County of _____    _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____    BY: _____

NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____    before this _____ day of _____ Year____

County of _____    _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____    BY: _____

NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____    before this _____ day of _____ Year____

County of _____    _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____    BY: _____

NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____    before this _____ day of _____ Year____

County of _____    _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer
Reading _____ No Tenths. ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.
**WARNING ODOMETER DISCREPANCY**

Signature(s) of Sellers(s) _____

Printed Name(s) of Sellers(s) _____ Dealer's No. _____    Date of Statement _____ Date of Sale _____

Signature(s) of Purchaser(s) _____    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

Printed Name(s) of Purchasers(s) _____    before this _____ day of _____ Year____

Company Name (if Applicable) _____    _____ Notary Public

Address of Purchaser(s) _____    State of _____

County of _____

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**LIENHOLDER**

1st lien in favor of **PEOPLES CAPITAL & LEASING CORP**

whose address is **850 MAIN STREET BC-03, BRIDGEPORT, CT 06604**

2nd lien in favor of _____

whose address is _____

# EXHIBIT E

## INDIVIDUAL GUARANTY

1.  To induce People's Capital and Leasing Corp. (hereinafter: "PCLC") to accept and enter into a Master Loan and Security Agreement No. 5113 dated February 15, 2018, all Schedules thereunder whether now existing or hereafter delivered  and other related documents (herein collectively called the "Agreements", which term shall include any modifications, amendments, renewals or extensions thereof) with Freon Logistics(hereinafter: "Obligor"), the undersigned, **Amarinder S Gorwara** (hereinafter: "Guarantor") unconditionally and irrevocably:

> (a)  Guarantees to PCLC the prompt payment in full of all indebtedness and obligations of every kind and nature now and hereafter owing by the Obligor to PCLC under the Agreements as well as any other obligations and indebtedness which the Obligor now owes or may hereafter incur to PCLC under any other agreements or by reason of any financial accommodation including, without limitation, leases of personal property, notes and security agreements and loan and security agreements between PCLC and the Obligor now existing or made after the date hereof, whether or not presently contemplated;
> (b)  Guarantees to PCLC the prompt, full and faithful performance and discharge by the Obligor of each and every term, condition and warranty to be performed by the Obligor under the Agreements or under any other documents or instruments evidencing any other financial accommodation between PCLC and the Obligor; and
> (c)  Agrees to reimburse PCLC for all expenses, costs and reasonable attorney's fees incurred by it in enforcing any of its rights and remedies against the Obligor and/or Guarantor or any other person or concern liable thereon.

2.  Guarantor agrees to pay all of the foregoing amounts and perform all of the foregoing obligations notwithstanding that any part or all of the Agreements or any other agreements or financial accommodation shall be void or voidable or unenforceable as against the Obligor or any of the Obligor's creditors, including a trustee in bankruptcy or receiver of Obligor, by reason of any fact or circumstance, including, without limitation, failure of any person to file any document or to take any other action to make any of the Agreements or any financial accommodation enforceable in accordance with their respective terms.  The liability of Guarantor shall be an absolute and primary obligation of payment and PCLC shall not be required to first (i) proceed against the Obligor; (ii) proceed against or exhaust any security held from the Obligor or any guarantor; or (iii) pursue any other remedies it may have, including remedies against other guarantors.

3.  Guarantor waives notice of acceptance hereof, and of all notices and demands of any kind to which Guarantor may be entitled, including, without limitation, demands of payment and notices of nonpayment, default, protest and dishonor to Guarantor or the Obligor or to the makers or endorsers of any notes or other instruments for which Guarantor may be liable hereunder.  Guarantor further waives notice of and hereby consents to any agreement or arrangement for payment, extension, subordination, moratoria, composition, discharge or release of the whole or any part of the Obligor's obligations under the Agreements or any other agreement or financial accommodation, the modification or amendment of any of the terms of the Agreements, the forbearance by PCLC in the exercise of any of its rights against the Obligor, the release of other guarantors or the compromise of their obligations and the change in location or release of any equipment or collateral or the taking of a security interest in any additional or substituted equipment or collateral; and none of the same shall in any way impair Guarantor's liability hereunder.  PCLC shall be under no obligation to insure, protect or otherwise preserve the equipment or any other collateral, which may secure any indebtedness, guaranteed hereunder.

4.  All sums at any time to Guarantor's credit and any of Guarantor's property at any time in PCLC's possession may be held by PCLC as security for all of undersigned's obligations hereunder.

5.  This Guaranty will continue to be effective or will be reinstated, as the case may be, if at any time any payment made to PCLC is rescinded or must be returned upon the insolvency, bankruptcy, or reorganization of the Obligor, or otherwise, as if such payment had not been made.  Guarantor expressly waives any and all rights of subrogation, reimbursement, indemnity, exoneration or any other claim which Guarantor may now or hereafter have against the Obligor for the obligations guaranteed hereunder or against or with respect to the property of the Obligor arising from the existence or performance of this Guaranty.

6.  This Guaranty shall not be discharged or otherwise affected by the death, incompetence or insolvency of Guarantor and shall be binding on Guarantor's heirs, executors and administrators.

7.  This Guaranty is a continuing guaranty and shall continue in full force and effect until terminated by the actual receipt by PCLC or its assignee of written notice of termination from Guarantor.  Such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to receipt of such termination shall not be affected.

**8.  GUARANTOR WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED HEREON**. This Guaranty is assignable by PCLC, in whole or part, and may be subsequently further assigned by such assignees, all without notice to Guarantor.  Any assignee of PCLC and all subsequent assignees shall have all of the rights of PCLC hereunder and may enforce this Guaranty with the same force and effect as if such Guaranty were given to such assignee in the first instance.  The invalidity, illegality or unenforceability of any provision of this Guaranty shall not affect the validity, legality or enforceability of any of its other provisions. **LEGAL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT**. This Guaranty shall be binding upon Guarantor and Guarantor's heirs, administrators, successors and assigns.

9.  GUARANTOR ACKNOWLEDGES AND AGREES THAT THE TRANSACTION OF WHICH THIS GUARANTY IS A PART IS A COMMERCIAL TRANSACTION AND NOT A CONSUMER TRANSACTION AND UNDERSIGNED WAIVES ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF THE CONNECTICUT STATUTES, AS AMENDED, OR ANY OTHER STATUTE OR STATUTES IN CONNECTICUT OR OTHER JURISDICTIONS AFFECTING THE PREJUDGMENT REMEDIES.  GUARANTOR AUTHORIZES PCLC's COUNSEL TO ISSUE A WRIT FOR PREJUDGMENT REMEDY WITHOUT COURT ORDER, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER AND WAIVES ANY CLAIM IN TORT, CONTRACT OR OTHERWISE AGAINST PCLC's COUNSEL WHICH MAY ARISE OUT OF SUCH ISSUANCE OF THE WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER.  GUARANTOR ACKNOWLEDGES AND STIPULATES THAT THE WAIVERS AND AUTHORIZATIONS GRANTED HEREIN ARE MADE KNOWINGLY AND FREELY AFTER FULL CONSULTATION WITH COUNSEL.  SPECIFICALLY, GUARANTOR RECOGNIZES AND UNDERSTANDS THAT THE EXERCISE OF PCLC's RIGHTS DESCRIBED ABOVE MAY RESULT IN THE ATTACHMENT OF OR LEVY AGAINST GUARANTOR'S PROPERTY, AND SUCH WRIT FOR A PREJUDGMENT REMEDY WILL NOT HAVE THE PRIOR WRITTEN APPROVAL OR SCRUTINY OF A COURT OF LAW OR OTHER OFFICIAL OFFICER NOR WILL GUARANTOR HAVE THE RIGHT TO ANY NOTICE OR PRIOR HEARING WHERE GUARANTOR MIGHT CONTEST SUCH A PROCEDURE.  THE INTENT OF UNDERSIGNED IS TO GRANT PCLC FOR GOOD AND VALUABLE CONSIDERATION THE RIGHT TO OBTAIN SUCH PREJUDGMENT REMEDY AND TO ASSURE THAT ANY SUCH PREJUDGMENT REMEDY IS VALID AND CONSTITUTIONAL.

10. GUARANTOR HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE STATE OF CONNECTICUT AND THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY, UNDERSIGNED WAIVES ANY OBJECTIONS BASED UPON VENUE OR "FORUM NON CONVENIENS" IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING. UNDERSIGNED CONSENTS THAT PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE SERVED UPON HIM/HER BY REGISTERED MAIL DIRECTED TO UNDERSIGNED AT HIS/HER ADDRESS SET FORTH BELOW OR IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW OR RULES OF COURT.  UNDERSIGNED HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF CONNECTICUT AS HIS/HER AGENT TO RECEIVE SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING.

11. Guarantor shall provide PCLC with an updated annual personal financial statement within sixty (60) days after each calendar year end. PCLC may disclose such financial and other information as provided in the Agreements.

A copy of this Guaranty shall be effective as an original, as provided in the Agreements.

Dated February 15, 2018

_____

WITNESS SIGNATURE

KARAMJEET SINGH
WITNESS NAME

_____

Amarinder S. Gorwara

HOME ADDRESS: 2716 SILVER SHORELN
BAKERSFIELD, CA 93319

SSN: ▓▓▓▓▓▓▓

(FOR IDENTIFICATION PURPOSES, I HAVE ATTACHED A COPY OF MY DRIVER'S LICENSE TO THIS GUARANTY)

EXHIBIT F

## INDIVIDUAL GUARANTY

1.    To induce People's Capital and Leasing Corp. (hereinafter: "PCLC") to accept and enter into a Master Loan and Security Agreement No. 5113 dated February 15, 2018, all Schedules thereunder whether now existing or hereafter delivered  and other related documents (herein collectively called the "Agreements", which term shall include any modifications, amendments, renewals or extensions thereof) with Freon Logistics(hereinafter: "Obligor"), the undersigned, **Hardeep Singh** (hereinafter: "Guarantor") unconditionally and irrevocably:

(a) Guarantees to PCLC the prompt payment in full of all indebtedness and obligations of every kind and nature now and hereafter owing by the Obligor to PCLC under the Agreements as well as any other obligations and indebtedness which the Obligor now owes or may hereafter incur to PCLC under any other agreements or by reason of any financial accommodation including, without limitation, leases of personal property, notes and security agreements and loan and security agreements between PCLC and the Obligor now existing or made after the date hereof, whether or not presently contemplated;
(b) Guarantees to PCLC the prompt, full and faithful performance and discharge by the Obligor of each and every term, condition and warranty to be performed by the Obligor under the Agreements or under any other documents or instruments evidencing any other financial accommodation between PCLC and the Obligor; and
(c) Agrees to reimburse PCLC for all expenses, costs and reasonable attorney's fees incurred by it in enforcing any of its rights and remedies against the Obligor and/or Guarantor or any other person or concern liable thereon.

2.   Guarantor agrees to pay all of the foregoing amounts and perform all of the foregoing obligations notwithstanding that any part or all of the Agreements or any other agreements or financial accommodation shall be void or voidable or unenforceable as against the Obligor or any of the Obligor's creditors, including a trustee in bankruptcy or receiver of Obligor, by reason of any fact or circumstance, including, without limitation, failure of any person to file any document or to take any other action to make any of the Agreements or any financial accommodation enforceable in accordance with their respective terms.  The liability of Guarantor shall be an absolute and primary obligation of payment and PCLC shall not be required to first (i) proceed against the Obligor; (ii) proceed against or exhaust any security held from the Obligor or any guarantor; or (iii) pursue any other remedies it may have, including remedies against other guarantors.

3.   Guarantor waives notice of acceptance hereof, and of all notices and demands of any kind to which Guarantor may be entitled, including, without limitation, demands of payment and notices of nonpayment, default, protest and dishonor to Guarantor or the Obligor or to the makers or endorsers of any notes or other instruments for which Guarantor may be liable hereunder.  Guarantor further waives notice of and hereby consents to any agreement or arrangement for payment, extension, subordination, moratoria, composition, discharge or release of the whole or any part of the Obligor's obligations under the Agreements or any other agreement or financial accommodation, the modification or amendment of any of the terms of the Agreements, the forbearance by PCLC in the exercise of any of its rights against the Obligor, the release of other guarantors or the compromise of their obligations and the change in location or release of any equipment or collateral or the taking of a security interest in any additional or substituted equipment or collateral; and none of the same shall in any way impair Guarantor's liability hereunder.  PCLC shall be under no obligation to insure, protect or otherwise preserve the equipment or any other collateral, which may secure any indebtedness, guaranteed hereunder.

4.   All sums at any time to Guarantor's credit and any of Guarantor's property at any time in PCLC's possession may be held by PCLC as security for all of undersigned's obligations hereunder.

5.   This Guaranty will continue to be effective or will be reinstated, as the case may be, if at any time any payment made to PCLC is rescinded or must be returned upon the insolvency, bankruptcy, or reorganization of the Obligor, or otherwise, as if such payment had not been made.  Guarantor expressly waives any and all rights of subrogation, reimbursement, indemnity, exoneration or any other claim which Guarantor may now or hereafter have against the Obligor for the obligations guaranteed hereunder or against or with respect to the property of the Obligor arising from the existence or performance of this Guaranty.

6.   This Guaranty shall not be discharged or otherwise affected by the death, incompetence or insolvency of Guarantor and shall be binding on Guarantor's heirs, executors and administrators.

7.   This Guaranty is a continuing guaranty and shall continue in full force and effect until terminated by the actual receipt by PCLC or its assignee of written notice of termination from Guarantor.  Such termination shall be applicable only to transactions having their inception thereafter, and rights and obligations arising out of transactions having their inception prior to receipt of such termination shall not be affected.

8.  **GUARANTOR WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED HEREON.** This Guaranty is assignable by PCLC, in whole or part, and may be subsequently further assigned by such assignees, all without notice to Guarantor.  Any assignee of PCLC and all subsequent assignees shall have all of the rights of PCLC hereunder and may enforce this Guaranty with the same force and effect as if such Guaranty were given to such assignee in the first instance.  The invalidity, illegality or unenforceability of any provision of this Guaranty shall not affect the validity, legality or enforceability of any of its other provisions. **LEGAL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CONNECTICUT.**  This Guaranty shall be binding upon Guarantor and Guarantor's heirs, administrators, successors and assigns.

9. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE TRANSACTION OF WHICH THIS GUARANTY IS A PART IS A COMMERCIAL TRANSACTION AND NOT A CONSUMER TRANSACTION AND UNDERSIGNED WAIVES ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF THE CONNECTICUT STATUTES, AS AMENDED, OR ANY OTHER STATUTE OR STATUTES IN CONNECTICUT OR OTHER JURISDICTIONS AFFECTING THE PREJUDGMENT REMEDIES.  GUARANTOR AUTHORIZES PCLC's COUNSEL TO ISSUE A WRIT FOR PREJUDGMENT REMEDY WITHOUT COURT ORDER, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER AND WAIVES ANY CLAIM IN TORT, CONTRACT OR OTHERWISE AGAINST PCLC's COUNSEL WHICH MAY ARISE OUT OF SUCH ISSUANCE OF THE WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER.  GUARANTOR ACKNOWLEDGES AND STIPULATES THAT THE WAIVERS AND AUTHORIZATIONS GRANTED HEREIN ARE MADE KNOWINGLY AND FREELY AFTER FULL CONSULTATION WITH COUNSEL.  SPECIFICALLY, GUARANTOR RECOGNIZES AND UNDERSTANDS THAT THE EXERCISE OF PCLC's RIGHTS DESCRIBED ABOVE MAY RESULT IN THE ATTACHMENT OF OR LEVY AGAINST GUARANTOR'S PROPERTY, AND SUCH WRIT FOR A PREJUDGMENT REMEDY WILL NOT HAVE THE PRIOR WRITTEN APPROVAL OR SCRUTINY OF A COURT OF LAW OR OTHER OFFICIAL OFFICER NOR WILL GUARANTOR HAVE THE RIGHT TO ANY NOTICE OR PRIOR HEARING WHERE GUARANTOR MIGHT CONTEST SUCH A PROCEDURE.  THE INTENT OF UNDERSIGNED IS TO GRANT PCLC FOR GOOD AND VALUABLE CONSIDERATION THE RIGHT TO OBTAIN SUCH PREJUDGMENT REMEDY AND TO ASSURE THAT ANY SUCH PREJUDGMENT REMEDY IS VALID AND CONSTITUTIONAL.

10. GUARANTOR HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE STATE OF CONNECTICUT AND THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY, UNDERSIGNED WAIVES ANY OBJECTIONS BASED UPON VENUE OR "FORUM NON CONVENIENS" IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING.  UNDERSIGNED CONSENTS THAT PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE SERVED UPON HIM/HER BY REGISTERED MAIL DIRECTED TO UNDERSIGNED AT HIS/HER ADDRESS SET FORTH BELOW OR IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW OR RULES OF COURT.  UNDERSIGNED HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF CONNECTICUT AS HIS/HER AGENT TO RECEIVE SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING.

11. Guarantor shall provide PCLC with an updated annual personal financial statement within sixty (60) days after each calendar year end. PCLC may disclose such financial and other information as provided in the Agreements.

A copy of this Guaranty shall be effective as an original, as provided in the Agreements.

Dated February 15, 2018

_____
WITNESS SIGNATURE

KARAMJEET SINGH
WITNESS NAME

_____
**Hardeep Singh**

HOME ADDRESS: _7309 GLISTER WAY_
_BAKERSFIELD, CA 93309_

SSN: ███████████

(FOR IDENTIFICATION PURPOSES, I HAVE ATTACHED A COPY OF MY DRIVER'S LICENSE TO THIS GUARANTY)

2

EXHIBIT G

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #:  TN-000062572
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $613,298.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $10,220.58          Term of Agreement (in months): 72

Total Number of Payments: 72          Advance Payments: 2

Administration Fee:  $0.00          Total Initial Payment (Advance Payments + Adm. Fee): $20,441.16

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS          Accepted by Lender: TopMark Funding, LLC

| Signature: *Amarinder Singh Gorwara* | Date: 4/23/2021 | Signature: *Samantha Sluit* | Title: Manager | Date: 4/28/2021 |

Amarinder Singh Gorwara, CEO

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara          Guarantor: Hardeep Singh

| Signature: *Amarinder Singh Gorwara* | Date: 4/23/2021 | Signature: *Hardeep Singh* | Date: 4/28/2021 |

Social Security Number:          Social Security Number:

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the DocuSign System

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:**  If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1.  You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                                                2

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the DocuSign system

Contract #: TN-000062572

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:**  Amarinder Singh Gorwara

| | |
|---|---|
| *Amarinder Singh Gorwara* | ▇▇▇▇▇ |
| Signature (Individually; No Titles) | Social Security Number |
| 12101 Clegg Dr | |
| Home Address | |
| Bakersfield, CA 93311 | |
| City      State   Zip | Home Phone |

**Guarantor:**  Hardeep Singh

| | |
|---|---|
| *Hardeep Singh* | ▇▇▇▇▇ |
| Signature (Individually; No Titles) | Social Security Number |
| 7309 Glitter Way | |
| Home Address | |
| Bakersfield ,CA 93313 | |
| City      State   Zip | Home Phone |

**Guarantor:**

| | |
|---|---|
| | |
| Signature (Individually; No Titles) | Social Security Number |
| | |
| Home Address | |
| | |
| City      State   Zip | Home Phone |

**Guarantor:**

| | |
|---|---|
| | |
| Signature (Individually; No Titles) | Social Security Number |
| | |
| Home Address | |
| | |
| City      State   Zip | Home Phone |

3

DocuSign Envelope ID: F22C83DC-4FFE-4ACE-978B-3C04EB4DBA42

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign system

COPY VIEW

## EFA Schedule "A"
## Contract #: TN-000062572

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt MODEL 579 | 1XPBD49X0ND782853 | E.M. Tharp Inc., d.b.a. Golden State Peterbilt |
| 1 | 2022 Peterbilt MODEL 579 | 1XPBD49X8ND782857 | E.M. Tharp Inc., d.b.a. Golden State Peterbilt |
| 1 | 2022 Peterbilt MODEL 579 | 1XPBD49X1ND782859 | E.M. Tharp Inc., d.b.a. Golden State Peterbilt |
| 1 | 2022 Peterbilt MODEL 579 | 1XPBD49X1ND782893 | E.M. Tharp Inc., d.b.a. Golden State Peterbilt |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: Freon Logistics

Bank Name: Wells Fargo Bank                                                 Ph: 6618379544

Commercial Checking Account Number: 

Transit / ABA Number (lower left corner of check, 9 digits): 

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

Authorized Signature: *Amarinder Singh Gorwara*

Print Name: Amarinder Singh Gorwara

Title: CEO                    Date: 4/23/2021

LENDER: TopMark Funding, LLC

Authorized Signor: *Samantha Shiel*

Print Name: Samantha Shiel

Title: Manager               Date: 4/28/2021

4

NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000066471
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307                    Equipment Cost: $306,649.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,110.29                    Term of Agreement (in months): 72

Total Number of Payments: 72                    Advance Payments: 2

Administration Fee: $295.00                    Total Initial Payment (Advance Payments + Adm. Fee): $10,515.58

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS                    Accepted by Lender: TopMark Funding, LLC

*Amarinder Singh Gorwara*  5/20/2021          *Samantha Sheil*  Manager  5/21/2021
Signature                   Date          Signature          Title    Date
Amarinder Singh Gorwara, CEO

**GUARANTY**

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara                    Guarantor: Hardeep Singh

*Amarinder Singh Gorwara*  5/20/2021          *Hardeep Singh*  5/21/2021
Signature                   Date          Signature          Date

Social Security Number:                    Social Security Number:

**TERMS AND CONDITIONS**

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth above along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

5

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH based or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

Contract #: TN-000066471

<div style="background:black;color:white;text-align:center;font-weight:bold">EQUIPMENT FINANCE AGREEMENT GUARANTY</div>

**Borrower:** FREON LOGISTICS

**Lender:** TopMark Funding, LLC

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document. Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

<div style="background:black;color:white;text-align:center;font-weight:bold">AUTHORIZATION</div>

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

| **Guarantor:** Amarinder Singh Gorwara | **Guarantor:** Hardeep Singh |
|---|---|
| *Amarinder Singh Gorwara* | *Hardeep Singh* |
| Signature (Individually; No Titles)   Social Security Number | Signature (Individually; No Titles)   Social Security Number |
| 12101 Clegg Dr | 7309 Glitter Way |
| Home Address | Home Address |
| Bakersfield   Ca   93311 | Bakersfield   CA   93313 |
| City   State   Zip   Home Phone | City   State   Zip   Home Phone |
| **Guarantor:** | **Guarantor:** |
| | |
| Signature (Individually; No Titles)   Social Security Number | Signature (Individually; No Titles)   Social Security Number |
| Home Address | Home Address |
| City   State   Zip   Home Phone | City   State   Zip   Home Phone |

7

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Document Custodian

## EFA Schedule "A"
## Contract #: TN-000066471

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|----------|----------------------|----------|---------------------------|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49XXND782861 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X3ND782863 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: Freon Logistics

Bank Name: Chase Bank                                                      Ph:

Commercial Checking Account Number:

Transit / ABA Number (lower left corner of check, 9 digits):

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|------|-------------|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                                    5/20/2021
Title                                  Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
Authorized Signor

Samantha Shiel
Print Name

Manager                                5/21/2021
Title                                  Date

8

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign system

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000067785
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $305,301.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,087.83                    Term of Agreement (in months): 72

Total Number of Payments: 72                           Advance Payments: 2

Administration Fee: $295.00                            Total Initial Payment (Advance Payments + Adm. Fee): $10,470.66

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Signature: _Amarinder Singh Gorwara_   Date: 6/22/2021

Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Signature: _Samantha Shiel_   Title: Manager   Date: 6/22/2021

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Signature: _Amarinder Singh Gorwara_   Date: 6/22/2021

Social Security Number:

Guarantor: Hardeep Singh

Signature: _Hardeep Singh_   Date: 6/22/2021

Social Security Number:

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest**: As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You will assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:**  If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                    10

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

Contract #: TN-000067785

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:** Amarinder Singh Gorwara

*Amarinder Singh Gorwara*
G179C6D7D2A5FAB...

Signature (Individually; No Titles)                 Social Security Number

12101 Clegg Dr.

Home Address

Bakersfield, CA 93311

City                 State      Zip       Home Phone

**Guarantor:** Hardeep Singh

Signature (Individually; No Titles)                 Social Security Number

Home Address

City                 State      Zip       Home Phone

**Guarantor:**

Signature (Individually; No Titles)                 Social Security Number

Home Address

City            State     Zip       Home Phone

**Guarantor:**

Signature (Individually; No Titles)                 Social Security Number

Home Address

City            State     Zip       Home Phone

11

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

## EFA Schedule "A"
### Contract #: TN-000067785

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X5ND782864 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X0ND782819 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: Freon Logistics

Bank Name: Chase Bank                                                            Ph:

Commercial Checking Account Number: ███████

Transit / ABA Number (lower left corner of check, 9 digits): ███████

**INCLUDE VOIDED CHECK**

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
B179C6D7D2AB4AB...
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                        6/22/2021
Title                       Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
D493EF8D39BE4C00...
Authorized Signer

Samantha Shiel
Print Name

Manager                    6/22/2021
Title                       Date

12

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign eVault

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000068191
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307        Equipment Cost: $308,299.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,137.79                     Term of Agreement (in months): 72

Total Number of Payments: 72                            Advance Payments: 2

Administration Fee: $295.00          Total Initial Payment (Advance Payments + Adm. Fee): $10,570.58

(Borrower hereby authorizes Lender to adjust the payments no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS                              Accepted by Lender: TopMark Funding, LLC

*Amarinder Singh Gorwara*  7/8/2021                    *Samantha Shiel*  Manager  7/8/2021
Signature                  Date                        Signature            Title        Date
Amarinder Singh Gorwara, CEO

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara                     Guarantor: Hardeep Singh

*Amarinder Singh Gorwara*  7/8/2021                    *Hardeep Singh*  7/8/2021
Signature                  Date                        Signature         Date

Social Security Number:                                Social Security Number:

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest**: As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You will not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:**  If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment.  Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**            14

DocuSign Envelope ID: 8D271A63-C0E4-4B32-A5B0-81A5CEE5AEAD

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

Contract #: TN-000068191

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:** **FREON LOGISTICS**

**Lender:** **TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document. Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:** Amarinder Singh Gorwara

*Amarinder Singh Gorwara*
B17 BC8CDA45A49F...
Signature (Individually; No Titles)          Social Security Number

12101 Clegg Dr
Home Address

Bakersfield, CA 93311
City                State   Zip      Home Phone

**Guarantor:**

_____
Signature (Individually; No Titles)          Social Security Number

_____
Home Address

_____
City            State   Zip      Home Phone

**Guarantor:** Hardeep Singh

*Hardeep Singh*
E1BD3D61742EB...
Signature (Individually; No Titles)          Social Security Number

7309 Glitter Way
Home Address

Bakersfield, CA 93313
City                State   Zip      Home Phone

**Guarantor:**

_____
Signature (Individually; No Titles)          Social Security Number

_____
Home Address

_____
City            State   Zip      Home Phone

15

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the Designated Custodian

## EFA Schedule "A"
## Contract #:  TN-000068191

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X1ND782862 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X0ND782822 | E.M Tharp Inc., dba Golden State Peterbilt |
|  |  |  |  |
|  |  |  |  |

AUTO DEBIT INFO.

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:    FREON LOGISTICS

Bank Name:    Chase Bank      Ph:

Commercial Checking Account Number:

Transit / ABA Number (lower left corner of check, 9 digits):

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it.  Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon.  **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO      7/8/2021
Title    Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
Authorized Signor

Samantha Shiel
Print Name

Manager      7/8/2021
Title    Date

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000068935
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #: ▮

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307

Equipment Cost: $307,810.00

**SCHEDULE OF PAYMENTS**

| | |
|---|---|
| Payment (plus any taxes): $5,089.29 | Term of Agreement (in months): 72 |
| Total Number of Payments: 72 | Advance Payments: 2 |
| Administration Fee: $295.00 | Total Initial Payment (Advance Payments + Adm. Fee): $10,473.58 |

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

*Amarinder Singh Gorwara*    7/20/2021
Signature    Date
Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

*Nick McClaskey*    COO    7/20/2021
Signature    Title    Date

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

*Amarinder Singh Gorwara*    7/20/2021
Signature    Date

Social Security Number: ▮

Guarantor: Hardeep Singh

*Hardeep Singh*    7/20/2021
Signature    Date

Social Security Number: ▮

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You will assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                    18

DocuSign Envelope ID: 62B1B7A3-F62D-4065-A77D-7DCAE76C6794

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Contract #:  TN-000068935

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:** **FREON LOGISTICS**

**Lender:** **TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:** Amarinder Singh Gorwara

*Amarinder Singh Gorwara*
G179C6D7D2A6FA9

Signature (Individually; No Titles)         Social Security Number

12101 Clegg Dr

Home Address

Bakersfield, CA 93311

City              State      Zip      Home Phone

**Guarantor:** Hardeep Singh

*Hardeep Singh*
C18F631DA285469

Signature (Individually; No Titles)         Social Security Number

7309 glitter Way

Home Address

Bakersfield CA 93313

City              State      Zip      Home Phone

**Guarantor:**

Signature (Individually; No Titles)         Social Security Number

Home Address

City              State      Zip      Home Phone

**Guarantor:**

Signature (Individually; No Titles)         Social Security Number

Home Address

City              State      Zip      Home Phone

19

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

**EFA Schedule "A"**
**Contract #:  TN-000068935**

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X7ND782820 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X2ND782823 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:   Freon Logistics

Bank Name:   Chase Bank                                                                          Ph:

Commercial Checking Account Number: █████████

Transit / ABA Number (lower left corner of check, 9 digits): ████████████

**INCLUDE VOIDED CHECK**

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it.  Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon.  **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
9179C6D7D2A84AB...
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                              7/20/2021
Title                            Date

LENDER: TopMark Funding, LLC

*Nick McClaskey*
73B6A2318E0C45D...
Authorized Signor

Nick McClaskey
Print Name

COO                              7/20/2021
Title                            Date

20

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #:  TN-000070052
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: _____

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307      Equipment Cost: $310,489.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,174.28

Total Number of Payments: 72

Administration Fee: $295.00

Term of Agreement (in months): 72

Advance Payments: 2

Total Initial Payment (Advance Payments + Adm. Fee): $10,643.56

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Signature: *Amarinder Singh Gorwara*     Date: 8/12/2021

Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Signature: *Samantha Shiel*     Title: Manager     Date: 8/16/2021

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Signature: *Amarinder Singh Gorwara*     Date: 8/12/2021

Social Security Number: ████

Guarantor: Hardeep Singh

Signature: *Hardeep Singh*     Date: 8/16/2021

Social Security Number: ████

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:**  WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                                        22

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

Contract #: TN-000070052

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:** __FREON LOGISTICS__

**Lender:** __TopMark Funding, LLC__

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors and/or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

| | |
|---|---|
| **Guarantor:** Amarinder Singh Gorwara | **Guarantor:** Hardeep Singh |
| *Amarinder Singh Gorwara* | *Hardeep Singh* |
| Signature (Individually; No Titles)   Social Security Number | Signature (Individually; No Titles)   Social Security Number |
| 12101 Clegg Dr | 7309 Glitter Way |
| Home Address | Home Address |
| Bakersfield   CA 93311 | Bakersfield.   CA.   93313 |
| City   State   Zip   Home Phone | City   State   Zip   Home Phone |
| | |
| **Guarantor:** | **Guarantor:** |
| | |
| Signature (Individually; No Titles)   Social Security Number | Signature (Individually; No Titles)   Social Security Number |
| Home Address | Home Address |
| City   State   Zip   Home Phone | City   State   Zip   Home Phone |

23

DocuSign Envelope ID: 1DAFCE49-0210-41DF-A147-CE6B11472818

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the Designated Custodian

**EFA Schedule "A"**
**Contract #: TN-000070052**

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X5ND782833 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X7ND782834 | E.M Tharp Inc., dba Golden State Peterbilt |
|  |  |  |  |
|  |  |  |  |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: Freon Logistics

Bank Name: JPMorgan Chase                                                      Ph:

Commercial Checking Account Number:

Transit / ABA Number (lower left corner of check, 9 digits):

**INCLUDE VOIDED CHECK**

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                                    8/12/2021
Title                                   Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
Authorized Signor

Samantha Shiel
Print Name

Manager                                 8/16/2021
Title                                   Date

DocuSign Envelope ID: 50B146D1-DC68-425F-82ED-E6B70B2C96F8

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000070680
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307        Equipment Cost: $310,282.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,170.84        Term of Agreement (in months): 72

Total Number of Payments: 72        Advance Payments: 2

Administration Fee: $295.00        Total Initial Payment (Advance Payments + Adm. Fee): $10,636.68

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Amarinder Singh Gorwara        8/26/2021
—B179C6D72DA64AB...
Signature        Date

Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Samantha Shiel        Manager        8/30/2021
—D455EF3D366CAC0...
Signature        Title        Date

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Amarinder Singh Gorwara        8/26/2021
—B179C6D72DA64AB...
Signature        Date

Social Security Number:

Guarantor: Hardeep Singh

Hardeep Singh        8/30/2021
—C16F6D12A266469...
Signature        Date

Social Security Number:

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lease or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                    26

DocuSign Envelope ID: 50B146D1-DC68-425F-82ED-E6B70B2C96F8

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Contract #:  TN-000070680

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:  Amarinder Singh Gorwara**

*Amarinder Singh Gorwara*
G179C6D7D2A6FAB
Signature (Individually; No Titles)          Social Security Number

12101 Clegg Dr

Home Address

Bakersfield, CA 93311

City                              State    Zip      Home Phone

**Guarantor:  Hardeep Singh**

*Hardeep Singh*
C18F631DA285469
Signature (Individually; No Titles)          Social Security Number

7309 Glitter Way

Home Address

Bakersfield, Ca 93313

City                              State    Zip      Home Phone

**Guarantor:**

Signature (Individually; No Titles)          Social Security Number

Home Address

City                    State    Zip      Home Phone

**Guarantor:**

Signature (Individually; No Titles)          Social Security Number

Home Address

City                    State    Zip      Home Phone

27

DocuSign Envelope ID: 50B146D1-DC68-425F-82ED-E6B70B2C96F8

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the Document Custodian

## EFA Schedule "A"
### Contract #: TN-000070680

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 PETERBILT MODEL 579 | 1XPBD49X9ND782835 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 PETERBILT MODEL 579 | 1XPBD49X7ND782896 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: FREON LOGISTICS

Bank Name: JPMORGAN CHASE                                                    Ph:

Commercial Checking Account Number:

Transit / ABA Number (lower left corner of check, 9 digits):

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
B179C6D7D2A84AB...
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                              8/26/2021
Title                            Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
D493EF8D39BE4C0...
Authorized Signer

Samantha Shiel
Print Name

Manager                          8/30/2021
Title                            Date

28

DocuSign Envelope ID: D883DE55-7D93-4106-8478-6FE8C8E3D392

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #:  TN-000071548
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $157,506.50

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $2,624.84                     Term of Agreement (in months): 72

Total Number of Payments: 72                           Advance Payments: 2

Administration Fee: $295.00                            Total Initial Payment (Advance Payments + Adm. Fee): $5,544.68

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS                              Accepted by Lender: TopMark Funding, LLC

*Amarinder Singh Gorwara*   9/14/2021                  *Samantha Shiel*  Manager  9/14/2021
Signature                   Date                       Signature          Title    Date

Amarinder Singh Gorwara, CEO

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara                    Guarantor: Hardeep Singh

*Amarinder Singh Gorwara*   9/14/2021                  *Hardeep Singh*   9/14/2021
Signature                   Date                       Signature          Date

Social Security Number: ▮▮▮                            Social Security Number: ▮▮▮

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:**  WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month.  The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month.  If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum.  Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof.  If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages.  Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies**: WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Document Custodian

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You will not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105.  To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                    30

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated Custodian

Contract #:  TN-000071548

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors and/or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:** Amarinder Singh Gorwara

Signature (Individually; No Titles)    Social Security Number

12101 Clegg Dr

Home Address

Bakersfield, CA 93311

City          State     Zip     Home Phone

**Guarantor:**

Signature (Individually; No Titles)    Social Security Number

Home Address

City          State     Zip     Home Phone

**Guarantor:** Hardeep Singh

Signature (Individually; No Titles)    Social Security Number

7309 Glitter Way

Home Address

Bakersfield CA 93313

City          State     Zip     Home Phone

**Guarantor:**

Signature (Individually; No Titles)    Social Security Number

Home Address

City          State     Zip     Home Phone

31

DocuSign Envelope ID: D883DE55-7D93-4106-8478-6FE8C8E3D392

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**EFA Schedule "A"**
**Contract #:  TN-000071548**

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 PETERBILT MODEL 579 | 1XPBD49X1ND782831 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |
| | | | |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:  FREON LOGISTICS

Bank Name:  JPMORGAN CHASE                                    Ph:

Commercial Checking Account Number:  ██████████

Transit / ABA Number (lower left corner of check, 9 digits):  ██████████

**INCLUDE VOIDED CHECK**

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it.  Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon.  **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS                        LENDER: TopMark Funding, LLC

*Amarinder Singh Gorwara*                         *Samantha Shiel*
Authorized Signature                              Authorized Signor

Amarinder Singh Gorwara                           Samantha Shiel
Print Name                                        Print Name

CEO                         9/14/2021             Manager                     9/14/2021
Title                       Date                  Title                       Date

32

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the DocuSign system

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #:  TN-000072000
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $314,743.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $5,245.18

Total Number of Payments: 72

Administration Fee:  $295.00

Term of Agreement (in months): 72

Advance Payments: 2

Total Initial Payment (Advance Payments + Adm. Fee): $10,785.36

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

*Amarinder Singh Gorwara*          9/24/2021
Signature                          Date
Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

*Samantha Shiel*    Manager    9/24/2021
Signature            Title        Date

## GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives.  YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY.  YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

*Amarinder Singh Gorwara*          9/24/2021
Signature                          Date

Social Security Number:

Guarantor: Hardeep Singh

*Hardeep Singh*          9/24/2021
Signature                Date

Social Security Number:

## TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:**  WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the DocuSign system

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**                    34

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

Contract #:  TN-000072000

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:** Amarinder Singh Gorwara

*Amarinder Singh Gorwara*

Signature (Individually; No Titles)          Social Security Number

12101 Clegg Dr

Home Address

Bakersfield  CA  93311

City            State    Zip        Home Phone

**Guarantor:**

Signature (Individually; No Titles)          Social Security Number

Home Address

City            State    Zip        Home Phone

**Guarantor:** Hardeep Singh

*Hardeep Singh*

Signature (Individually; No Titles)          Social Security Number

7309 Glitter Way

Home Address

Bakersfield, CA 93313

City            State    Zip        Home Phone

**Guarantor:**

Signature (Individually; No Titles)          Social Security Number

Home Address

City            State    Zip        Home Phone

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Document Custodian

## EFA Schedule "A"
### Contract #: TN-000072000

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X3ND782829 | E.M. Tharp Inc., dba Golden State Peterbilt |
| 1 | 2022 Peterbilt Model 579 | 1XPBD49XXND782830 | E.M. Tharp Inc., dba Golden State Peterbilt |
|  |  |  |  |
|  |  |  |  |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: FREON LOGISTICS

Bank Name: JPMORGAN CHASE    Ph:

Commercial Checking Account Number: ███████

Transit / ABA Number (lower left corner of check, 9 digits): ███████

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account number, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                    9/24/2021
Title                  Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
Authorized Signor

Samantha Shiel
Print Name

Manager                9/24/2021
Title                  Date

NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000076104
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"

Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $553,000.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $10,941.96                    Term of Agreement (in months): 60

Total Number of Payments: 60                            Advance Payments: 2

Administration Fee: $3,750.00          Total Initial Payment (Advance Payments + Adm. Fee): $25,633.92

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS                          Accepted by Lender: TopMark Funding, LLC

Signature: _Amarinder Singh Gorwara_   Date: 12/27/2021      Signature: _Samantha Shiel_   Title: Manager   Date: 12/29/2021

Amarinder Singh Gorwara, CEO

### GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara                    Guarantor: Hardeep Singh

Signature: _Amarinder Singh Gorwara_   Date: 12/27/2021      Signature: _Hardeep Singh_   Date: 12/28/2021

Social Security Number: [redacted]                    Social Security Number: [redacted]

### TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest**: As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

Contract #:  TN-000076104

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:**  Amarinder Singh Gorwara

*Amarinder Singh Gorwara*
G179C6D7D2A84A8...
Signature (Individually; No Titles) _____ Social Security Number

12101 Clegg Dr
Home Address

Bakersfield, CA 93311
City _____ State _ Zip ____ Home Phone

**Guarantor:**

_____
Signature (Individually; No Titles) _____ Social Security Number

_____
Home Address

_____
City _____ State __ Zip ____ Home Phone

**Guarantor:**  Hardeep Singh

*Hardeep Singh*
C18F631DA285469...
Signature (Individually; No Titles) _____ Social Security Number

7309 Glitter Way
Home Address

Bakersfield, CA 93313
City _____ State _ Zip ____ Home Phone

**Guarantor:**

_____
Signature (Individually; No Titles) _____ Social Security Number

_____
Home Address

_____
City _____ State __ Zip ____ Home Phone

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## EFA Schedule "A"
## Contract #: TN-000076104

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2018 GREAT DANE TRAI ESS 1114 11053 | 1GRAA0624JW103081 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS-1114-11053 | 1GRAA0623JW116114 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS1111411053 | 1GRAA0620JW116104 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS-1114-11053 | 1GRAA0627JW116102 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS-1114-11053 | 1GRAA0624JW116123 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS-1114-11053 | 1GRAA062XJW120287 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |
| 1 | 2018 GREAT DANE TRAI ESS-1114-11053 | 1GRAA0628JW120286 | Interstate-Truckway, Inc. dba Interstate Utility Trailer |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "**EFA**"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further **authorizes** Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:  FREON LOGISTICS

Bank Name:  JPMORGAN CHASE                                                            Ph:

Commercial Checking Account Number: ▮▮▮▮▮▮

Transit / ABA Number (lower left corner of check, 9 digits): ▮▮▮▮▮▮

**INCLUDE VOIDED CHECK**

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
D17906D7D2A844A9
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                                    12/27/2021
Title                                   Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
D493EF8D398E4C0...
Authorized Signor

Samantha Shiel
Print Name

Manager                                 12/29/2021
Title                                   Date

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign system

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000076756
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307

Equipment Cost: $160,535.50

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $2,694.19

Total Number of Payments: 72

Administration Fee: $250.00

Term of Agreement (in months): 72

Advance Payments: 2

Total Initial Payment (Advance Payments + Adm. Fee): $5,638.38

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

*Amarinder Singh Gorwara*    12/29/2021
Signature    Date
Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

*Samantha Shiel*    Manager    12/30/2021
Signature    Title    Date

## GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

*Amarinder Singh Gorwara*    12/29/2021
Signature    Date

Social Security Number:

Guarantor: Hardeep Singh

*Hardeep Singh*    12/30/2021
Signature    Date

Social Security Number:

## TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies**: WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the vendor of the system

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:**  If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1.  You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign system

Contract #:  TN-000076756

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document. Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

| Guarantor: Amarinder Singh Gorwara | Guarantor: Hardeep Singh |
|---|---|
| *Amarinder Singh Gorwara* | *Hardeep Singh* |
| G179C6D7D2A5FA8... | C1BF631DA285469... |
| Signature (Individually; No Titles)    Social Security Number | Signature (Individually; No Titles)    Social Security Number |
| 12101 Clegg dr | 7309 Glitter Way |
| Home Address | Home Address |
| Bakersfield, CA 93311 | Bakersfield CA 93313 |
| City    State    Zip    Home Phone | City    State    Zip    Home Phone |

| Guarantor: | Guarantor: |
|---|---|
| | |
| Signature (Individually; No Titles)    Social Security Number | Signature (Individually; No Titles)    Social Security Number |
| | |
| Home Address | Home Address |
| | |
| City    State    Zip    Home Phone | City    State    Zip    Home Phone |

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the DocuSign system

## EFA Schedule "A"
## Contract #: TN-000076756

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2022 Peterbilt Model 579 | 1XPBD49X7ND782879 | E.M Tharp Inc., dba Golden State Peterbilt |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: FREON LOGISTICS

Bank Name: JPMORGAN CHASE                                         Ph:

Commercial Checking Account Number: ████████

Transit / ABA Number (lower left corner of check, 9 digits): ████████

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon.  **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
B170C6D7D2A84AB...
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                    12/29/2021
Title                   Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
D493EF8D39GE4C0...
Authorized Signor

Samantha Shiel
Print Name

Manager               12/30/2021
Title                   Date

THIS IS A COPY
This is a copy view of an Authoritative Copy held by the designated custodian

NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

| | |
|---|---|
| Contract #: TN-000081385 | Billing Address: 7309 Glitter Way |
| Company Name: FREON LOGISTICS | Bakersfield, California 93113 County: |
| State of Formation: California | Land/Mobile Phones: (312) 522-6522 |
| Organizational ID #: | |

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"

Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $330,209.00

**SCHEDULE OF PAYMENTS**

| | |
|---|---|
| Payment (plus any taxes): $6,567.58 | Term of Agreement (in months): 60 |
| Total Number of Payments: 60 | Advance Payments: 2 |
| Administration Fee: $795.00 | Total Initial Payment (Advance Payments + Adm. Fee): $13,930.16 |

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

| Borrower: FREON LOGISTICS | Accepted by Lender: TopMark Funding, LLC |
|---|---|
| *Amarinder Singh Gorwara*   3/10/2022 | *Samantha Sluil*   Manager   3/10/2022 |
| Signature                          Date | Signature                    Title              Date |
| Amarinder Singh Gorwara, CEO | |

**GUARANTY**

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

| Guarantor: Amarinder Singh Gorwara | Guarantor: Hardeep Singh |
|---|---|
| *Amarinder Singh Gorwara*   3/10/2022 | *Hardeep Singh*   3/10/2022 |
| Signature                          Date | Signature                          Date |
| Social Security Number: | Social Security Number: |

**TERMS AND CONDITIONS**

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth above along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

This is a copy view of the Authoritative Copy held by the designated custodian

Contract #: TN-000081385

**EQUIPMENT FINANCE AGREEMENT GUARANTY**

Borrower: **FREON LOGISTICS**

Lender: **TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document. Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

**AUTHORIZATION**

IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.

Guarantor: Amarinder Singh Gorwara

| | |
|---|---|
| *Amarinder Singh Gorwara* | ▓▓▓▓▓ |
| Signature (Individually; No Titles) | Social Security Number |

12101 Clegg Dr
Home Address

| Bakersfield | CA | 93311 | |
|---|---|---|---|
| City | State | Zip | Home Phone |

Guarantor: Hardeep Singh

| | |
|---|---|
| *Hardeep Singh* | ▓▓▓▓▓ |
| Signature (Individually; No Titles) | Social Security Number |

7309 Glitter Way
Home Address

| Bakersfield | CA | 93313 | |
|---|---|---|---|
| City | State | Zip | Home Phone |

Guarantor:

| | |
|---|---|
| | |
| Signature (Individually; No Titles) | Social Security Number |

Home Address

| | | | |
|---|---|---|---|
| City | State | Zip | Home Phone |

Guarantor:

| | |
|---|---|
| | |
| Signature (Individually; No Titles) | Social Security Number |

Home Address

| | | | |
|---|---|---|---|
| City | State | Zip | Home Phone |

This is a copy view of the Authoritative Copy held by the designated custodian

**EFA Schedule "A"**
**Contract #: TN-000081385**

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2023 Peterbilt Model 579 | 1XPBDP9X1PD850629 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2023 Peterbilt Model 579 | 1XPBDP9X8PD850630 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: FREON LOGISTICS

Bank Name: JP MORGAN CHASE                                                     Ph:

Commercial Checking Account Number:

Transit / ABA Number (lower left corner of check, 9 digits):

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS                              LENDER: TopMark Funding, LLC

*Amarinder Singh Gorwara*                              *Samantha Shiel*
Authorized Signature                                   Authorized Signor

Amarinder Singh Gorwara                                Samantha Shiel
Print Name                                             Print Name

CEO                          3/10/2022                 Manager                      3/10/2022
Title                        Date                      Title                        Date

THIS IS A COPY
This is not an authoritative Copy held
by the designated custodian

NOTICE: **This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000080705
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #: ▓▓▓▓▓▓▓

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307          Equipment Cost: $255,000.00

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $6,225.26
Total Number of Payments: 48

Term of Agreement (in months): 48
Advance Payments: 2

Administration Fee: $750.00          Total Initial Payment (Advance Payments + Adm. Fee): $13,200.52

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Signature: *Amarinder Singh Gorwara*     Date: 3/3/2022
Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Signature: *Samantha Shiel*     Title: Manager     Date: 3/9/2022

## GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. **YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.**

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Signature: *Amarinder Singh Gorwara*     Date: 3/3/2022

Guarantor: Hardeep Singh

Signature: *Hardeep Singh*     Date: 3/8/2022

Social Security Number: ▓▓▓▓▓▓▓          Social Security Number: ▓▓▓▓▓▓▓

## TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth above along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT,** except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

DocuSign Envelope ID: 1DED3FAE-AF6F-46B2-AC49-6988C1CA4A24

THIS IS A COPY

Authoritative Copy held
by the designated custodian

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE AND UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

THIS IS A COPY
This is not a certified or authoritative Copy held
by the designated custodian

Contract #:  TN-000080705

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:** <u>FREON LOGISTICS</u>

**Lender:** <u>TopMark Funding, LLC</u>

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

| Guarantor: Amarinder Singh Gorwara | | Guarantor: Hardeep Singh | |
|---|---|---|---|
| *Amarinder Singh Gorwara* | ▬▬▬ | *Hardeep Singh* | ▬▬▬ |
| Signature (Individually; No Titles) | Social Security Number | Signature (Individually; No Titles) | Social Security Number |
| 12101 Clegg Dr | | 7309 Glitter Way | |
| Home Address | | Home Address | |
| Bakersfield   CA   93311 | | Bakersfield     CA     93313 | |
| City          State      Zip | Home Phone | City          State      Zip | Home Phone |
| **Guarantor:** | | **Guarantor:** | |
| | | | |
| Signature (Individually; No Titles) | Social Security Number | Signature (Individually; No Titles) | Social Security Number |
| | | | |
| Home Address | | Home Address | |
| | | | |
| City          State      Zip | Home Phone | City          State      Zip | Home Phone |

THIS IS A COPY
This is a copy of the authoritative Copy held
by the designated custodian

## EFA Schedule "A"
## Contract #: TN-000080705

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2016 Kenworth T680 | 1NKYL49X9GJ117001 | Ozark Kenworth, Inc. dba MHC Kenworth - Kansas City |
| 1 | 2016 Kenworth T680 | 1NKYL49X0GJ117002 | Ozark Kenworth, Inc. dba MHC Kenworth - Kansas City |
| 1 | 2016 Kenworth T680 | 1NKYL49X2GJ117003 | Ozark Kenworth, Inc. dba MHC Kenworth - Kansas City |
| | | | |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:     FREON LOGISTICS

Bank Name:     JP MORGAN CHASE                                              Ph:

Commercial Checking Account Number: ███████████

Transit / ABA Number (lower left corner of check, 9 digits): ████████████

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.
The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon.  DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.

BORROWER: FREON LOGISTICS                                    LENDER: TopMark Funding, LLC

*Amarinder Singh Gorwara*                                     *Samantha Shiel*
Authorized Signature                                          Authorized Signor

Amarinder Singh Gorwara                                       Samantha Shiel
Print Name                                                    Print Name

CEO                          3/3/2022                         Manager                      3/9/2022
Title                        Date                             Title                        Date

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the Designated Custodian

NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000088137
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #:

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: _____

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

**See Attached Schedule "A"**
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307            Equipment Cost: $175,814.92

**SCHEDULE OF PAYMENTS**

Payment (plus any taxes): $3,064.64

Total Number of Payments: 72

Administration Fee: $795.00

Term of Agreement (in months): 72

Advance Payments: 2

Total Initial Payment (Advance Payments + Adm. Fee): $6,924.28

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Signature: *Amarinder Singh Gorwara*     Date: 8/2/2022

Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Signature: *Samantha Shiel*     Title: Manager     Date: 8/4/2022

## GUARANTY

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Signature: *Amarinder Singh Gorwara*     Date: 8/2/2022

Social Security Number:

Guarantor: Hardeep Singh

Signature: *Hardeep Singh*     Date: 8/4/2022

Social Security Number:

## TERMS AND CONDITIONS

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm your acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth below along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the DocuSign system

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law.  Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement.  No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately become subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:**  If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates.  If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:**  If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:**  You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder.  You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:**  You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured".  Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof.  The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance.  Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance.  This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:**  You will own and have title to the Equipment.  You will keep the Equipment free and clear from liens and security interests of all kinds.  You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:**  It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:**  If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers.  Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests.  Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt.  Time is of the essence of this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5).  It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property.  This Agreement shall be governed by the laws of California.  You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time.  You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1.  You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum.  Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum.  Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.  This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105.  To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy.  You will have access to the authoritative copy for purposes of making a duplicate.  Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

DocuSign Envelope ID: 5ED33E73-B8CB-44AA-9328-48C454B29CAB

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Contract #:  TN-000088137

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:  FREON LOGISTICS**

**Lender:  TopMark Funding, LLC**

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and finance the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors and/or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document.  Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT.  BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

**Guarantor:**  Amarinder Singh Gorwara

_Amarinder Singh Gorwara_
Signature (Individually; No Titles)                 Social Security Number

12101 Clegg Dr
Home Address

Bakersfield CA 93311
City                State      Zip        Home Phone

**Guarantor:**

Signature (Individually; No Titles)                 Social Security Number

Home Address

City                State      Zip        Home Phone

**Guarantor:**  Hardeep Singh

_Hardeep Singh_
Signature (Individually; No Titles)                 Social Security Number

7309 Glitter Way
Home Address

Bakersfield, CA 93313
City                State      Zip        Home Phone

**Guarantor:**

Signature (Individually; No Titles)                 Social Security Number

Home Address

City                State      Zip        Home Phone

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the Designated Custodian

## EFA Schedule "A"
## Contract #: TN-000088137

### EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|---|---|---|---|
| 1 | 2023 Peterbilt Model 579 | 1XPBDP9X7PD864258 | E.M. Tharp Inc., dba Golden State Peterbilt |
| | | | |
| | | | |
| | | | |

### AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account: FREON LOGISTICS

Bank Name: JPMORGAN CHASE                                        Ph:

Commercial Checking Account Number: ▮▮▮▮▮▮

Transit / ABA Number (lower left corner of check, 9 digits): ▮▮▮▮▮▮

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

### CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**

The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|---|---|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

### AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS                          LENDER: TopMark Funding, LLC

*Amarinder Singh Gorwara*                            *Samantha Shiel*
Authorized Signature                                  Authorized Signor

Amarinder Singh Gorwara                              Samantha Shiel
Print Name                                           Print Name

CEO                          8/2/2022                Manager                8/4/2022
Title                        Date                     Title                  Date

The Authoritative Copy of this record is held at NAS.docusign.net

**NOTICE: This is a legal commitment representing indebtedness. You will be required to pay taxes, fees and other charges in addition to Payments. Some charges are in amounts greater than our actual costs, risks or exposure.**

## EQUIPMENT FINANCE AGREEMENT

### TOP MARK FUNDING, LLC 516 Gibson Dr Ste 160 Roseville, CA 95678

**Customer (Borrower): Complete Legal Name, if a corporation, use exact registered corporate name**

Contract #: TN-000083308
Company Name: FREON LOGISTICS
State of Formation: California
Organizational ID #

Billing Address: 7309 Glitter Way
Bakersfield, California 93313 County:
Land/Mobile Phones: (312) 522-6522

**EQUIPMENT DESCRIPTION (Include VENDOR Name and Address, Quantity, Make, Model and Serial Numbers)**

See Attached Schedule "A"
Equipment Location: 235 Mt Vernon Avenue, Bakersfield, California 93307
Equipment Cost: $519,852.09

**SCHEDULE OF PAYMENTS**

| | |
|---|---|
| Payment (plus any taxes): $10,431.97 | Term of Agreement (in months): 60 |
| Total Number of Payments: 60 | Advance Payments: 2 |
| Administration Fee: $995.00 | Total Initial Payment (Advance Payments + Adm. Fee): $21,858.94 |

(Borrower hereby authorizes Lender to adjust the payments by no more than 10% to reflect actual final costs, including additional sales taxes, delivery and installation charges and cost increases due to alternations requested by the Borrower)

**DO NOT SIGN THIS AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGE 2).**

Borrower: FREON LOGISTICS

Amarinder Singh Gorwara   3/31/2022
Signature                          Date
Amarinder Singh Gorwara, CEO

Accepted by Lender: TopMark Funding, LLC

Samantha Shiel   Manager   4/5/2022
Signature                  Title         Date

**GUARANTY**

For the purpose of this Guaranty "you" means the undersigned guarantors. You have an interest in the Borrower named above ("Borrower"). You agree that we would not enter into the Agreement without this Guaranty. You jointly and severally unconditionally guaranty the full and prompt payment and performance of all Borrower's obligations under the Agreement even if we change or renew the Agreement, or if any payments made by Borrower are rescinded or voided due to the insolvency, bankruptcy or reorganization, as if the payment had not been made. We do not have to notify you if the Borrower is in default under the Agreement. If Borrower defaults, you will immediately pay in accordance with the default provisions of the Agreement all obligations due thereunder. You agree that you will not be released or discharged if we: (i) fail to perfect a security interest in the Equipment or any other property that secures the obligations of Borrower or any of you ("Collateral"); (ii) fail to protect the Collateral; or (iii) abandon or release any Collateral. You agree that we do not have to proceed first against Borrower, any Collateral or any other guarantor. You waive notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. You will reimburse us for all expenses we incur in enforcing our rights against the Borrower or any of you, including without limitation, attorneys' fees and costs. You authorize us to obtain credit bureau reports for credit and collection purposes and to report your performance to any credit bureau or similar entity including reports of past due or otherwise delinquent payments under this Guaranty. This is an irrevocable, continuing Guaranty and binds your heirs, administrators and representatives. YOU AGREE THAT THE AGREEMENTS REGARDING JURISDICTION, VENUE, SERVICE OF PROCESS AND INTENT TO CONTRACT ELECTRONICALLY CONTAINED IN THE AGREEMENT APPLY TO THIS GUARANTY. YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY.

**DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE AGREEMENT (INCLUDING PAGE 2).**

Guarantor: Amarinder Singh Gorwara

Amarinder Singh Gorwara   3/31/2022
Signature                          Date

Social Security Number:

Guarantor: Hardeep Singh

Hardeep Singh   4/5/2022
Signature           Date

Social Security Number:

**TERMS AND CONDITIONS**

**1. Equipment Finance Agreement; Payments; Term:** WE (lender) will advance to YOU (borrower), directly or by payment to the vendor of the Equipment (the "Vendor"), the Equipment Cost in order for you to purchase the equipment described (together with upgrades, attachments and replacements, the "Equipment") above and on the terms and conditions stated herein and on page 2, Schedule "A", and any and all Addenda if we are satisfied that you have accepted the Equipment and have satisfied all other conditions. One of your officers or other representatives will be asked to confirm our acceptance of the Equipment, meaning that it is satisfactory to you, by telephone or other means. This confirmation will be binding on you and we will rely on it in making the advance. You unconditionally promise to repay the Equipment Cost to us or our successors or assigns, with interest, by paying to us the Payments for the number of months set forth above along with all other amounts required under the terms of this Agreement. Payments constitute principal with interest at a rate (the "Payment Rate") you can calculate using the Equipment Cost, Payment amounts and term. Payments are due in advance, at our option on either the first (1st) or fifteenth (15th) day of each calendar month. The first Payment is due on the date we specify that occurs after we advance a portion of the Equipment Cost and the remaining Payments will be due on the same day of each month. If you are required by this Agreement to remit one or more Advance Payments, the first such payment shall be applied to the first payment due and if there is an additional Advance Payment it shall be applied to the last payment due under this Agreement. You will also pay an amount equal to 1/30th of the monthly Payment, multiplied by the number of days between the date we first advance funds and the date of your first Payment, which you agree includes interest and a fee for early funding and deferral of payment date. **YOU MAY NOT PREPAY ANY PAYMENT OR OTHER AMOUNT**, except that if you are not in default you may terminate this Agreement on any date a Payment is due by paying all amounts then due (including accrued taxes) together with all unpaid Payments for the remaining Term discounted at 4% per annum. Payments shall be made by Automated Clearing House ("ACH") transactions. All amounts due hereunder are payable at our office or such other place as we designate. The term of this Agreement (the "Term") shall commence on the date this Agreement is accepted in writing by us and, provided you have successfully performed all of your duties and obligations hereunder, the Term shall end after you have paid the total number of Payments in accordance with the terms hereof. If this Agreement is not finalized other than due to our wrongful action you agree that we may, at our option, retain the Advance Payment(s) and Administration Fee as liquidated damages. Any calculation involving Payments will be increased by taxes on the Payment(s).

**2. Disclaimers of Warranties; Limitation of Remedies:** WE MAKE NO (AND DISCLAIM ALL) WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY

CHARACTERISTICS OF THE EQUIPMENT. Do not accept the Equipment unless you have inspected the Equipment and it is in good condition and satisfactory to you AS IS WHERE IS and with all faults. You agree that your obligations under this Agreement are ABSOLUTE and UNCONDITIONAL and you agree to pay and perform your obligations hereunder without offset, counterclaim or defense, all of which are hereby waived to the fullest extent permitted by law. Neither the vendor nor any salesman is our agent or authorized to waive or alter any term or condition of this Agreement. No representations as to the Equipment or any other matter by the vendor or salesman effect your obligations to us.

**3. Additional Waivers:** You waive to the fullest extent permitted by law: (a) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof, (b) demand, presentment, protest, notice of dishonor, notice of protest, notice of nonpayment, diligence in collection, notice of acceleration, notice of intent to accelerate, notice of sale or intent to sell or notice of demand, diligence in collecting, grace, and all other notices, rights, requirements or formalities of any kind necessary to charge or hold you or any other person or entity liable on any obligations hereunder; and (c) any further receipt for or acknowledgment of any Collateral now or hereafter deposited as security for the obligations hereunder.

**4. Security Interest:** As security for your obligations hereunder, you grant to us a first priority security interest in the Equipment, all additions, attachments, accessories and accessions to it, all general intangibles and security deposits relating to the Equipment and all proceeds thereof, as well as any other Collateral you provide to us, effective when you obtain any rights in the Equipment and until all your obligations are satisfied and cannot be recaptured or rescinded.

**5. Use/Assignment:** You will: use the Equipment only in the conduct of your business in a careful and proper manner and only for commercial or business purposes and not for personal, family, household, consumer or agricultural purposes; maintain the Equipment in the same condition as when delivered, subject only to reasonable wear and tear; replace any damaged parts; not make any alterations to the Equipment without our prior written consent. All additions, replacements, parts, or accessories immediately before subject to our security interest in the Equipment. The Equipment cannot be removed without our prior written consent. We may inspect the Equipment during normal business hours. You may not assign your rights under this Agreement or lend or lease the Equipment. We may assign our rights without notice and our assignee will not be subject to any defense or claim you have against us.

**6. Late Payment/Other Charges:** If you fail to pay any Payment or other amount on its due date, you will pay a late payment fee equal to 15% of the delinquent Payment or other amount. You will also pay interest calculated from the due date at the rate of 24% percent per annum or the maximum interest rate permitted by California law, whichever is lower. You will pay a $30 fee if a check or ACH payment is returned unpaid. You must notify us 15 business days prior to changing your ACH bank or pay a $110 fee. There are fees of $30 for single or $55 for a permanent change if you request a change in Payment dates. If we engage an attorney or collection agency to collect any amount you will pay collection fees. On expiration or earlier termination of this Agreement you will pay a termination fee of $95.00.

**7. Loss, Damage, and Indemnification:** If any Equipment is lost, stolen, destroyed, damaged beyond repair, or otherwise rendered permanently unfit for use, you will promptly pay the remaining Payments, discounted at four percent (4%) per annum, together with any other amounts then due hereunder. You agree to defend, indemnify and hold us harmless from all liability, claims, damages or other losses, including costs and reasonable attorneys' fees, arising out of or in any manner connected with this Agreement or the Equipment.

**8. Taxes and Fees:** You will promptly reimburse us for and hold us harmless against all state, federal and other fees, assessments, charges and taxes (including penalties and interest but excluding taxes on our taxable income), which now or hereafter may be imposed on or with respect to this Agreement, the Equipment, or amounts payable hereunder. You authorize us to file personal property tax and other tax returns. You will pay a tax-filing fee of $55.00 for each tax return filed with regard to the Equipment. Upon expiration, termination, or a default under this Agreement, you will pay 2% of the Equipment Cost for any assessed but unpaid taxes or other post-closing costs we may incur. At the end of the Term, you will pay a termination fee of $95.00.

**9. Insurance:** You will maintain: physical damage insurance for the amount of Equipment Cost or replacement value, whichever is higher, naming us "Loss Payee" and acceptable public liability insurance naming us "Additional Insured". Each policy must be with an insurer and in a form satisfactory to us and include lender loss payee clauses. If you do not comply and deliver an acceptable insurance certificate, you must pay an additional 1% of the Equipment Cost each month, or fraction thereof. The additional payment is not calculated based on our actual exposure and represents additional profit. Such payment shall not be considered as insurance, a replacement for insurance or payment for insurance and provides no coverage. You can stop this charge by delivering proof of insurance. Satisfactory proof of insurance must be delivered to us before the 20th of the month to avoid a charge for insufficient/no proof of insurance. This is a monthly fee and nonrefundable.

**10. Title/UCC/Power of Attorney:** You will own and have title to the Equipment. You will keep the Equipment free and clear from liens and security interests of all kinds. You appoint us attorney-in-fact to file UCC financing statements; to take any other actions we deem necessary or desirable to protect our interest; and to correct information entries in this Agreement.

**11. Default:** It will be an event of default if: (a) you fail to pay a Payment or any sum on its due date; (b) you fail to perform any other agreement in this Agreement or any other agreement with us; (c) you or any guarantor dies, becomes insolvent, merges, consolidates, or suffers a deterioration of financial health; or (d) you or any guarantor file or have filed against you or it a petition for reorganization, liquidation, or similar relief under the federal bankruptcy laws, or a trustee or receiver is appointed over your or its assets. Upon an event of default you owe us: (a) the amount of all Payments and other amounts payable under this Agreement due but unpaid; plus (b) the amount of all unpaid Payments remaining discounted from the due date at four percent (4%) per annum. In addition, we may disable or foreclose on, sell or lease the Equipment as permitted by law. You will also pay interest on any unpaid damages at the lower of 24% per year or the maximum rate permitted by applicable law. We may proceed by court action to enforce our rights. You will owe all costs and expenses, including legal fees, collection fees or commissions, travel, or any other cost we incur enforcing our remedies. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative. These remedies are in addition to any other permitted at law or in equity.

**12. Miscellaneous:** If you give us other collateral to secure your obligations, our rights will be the same as to the Equipment. This is a security agreement and not a lease under the Uniform Commercial Code (the "UCC") as adopted by the State of California. Any interest collected under this Agreement will not exceed the highest amount permitted by applicable law and any overcharge will be refunded. We may report your performance to any national credit bureau and access business and consumer credit bureau reports for credit and collection purposes. Captions are intended for convenience or reference only and shall not alter the text. This Agreement contains the entire agreement between the parties and may not be amended except in writing by one of our executive officers. Your agreements shall survive expiration or termination of this Agreement. You agree to perform additional acts we request to protect our interests. Any notice to us must be in writing and must be delivered by U.S. Mail, Return Receipt Requested or another means generating a written receipt. Time is of the essence of this Agreement. This Agreement shall be binding upon and shall inure to the benefit of each party's successors and assigns (subject to paragraph 5). It is the intention of the parties that the Equipment shall remain personal property and not be a fixture even if affixed to real property. This Agreement shall be governed by the laws of California. You agree that legal actions may only be brought in the state or federal courts in Placer County, California, except that we may file any action where the equipment is or has been located at any time. You waive objection to venue and agree to accept service of process at your (the Borrower's) Billing Address on Page 1. You hereby waive, insofar as permitted by law, trial by jury. In the event we (lender) assigns its rights under this Agreement, you will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the Assignee's home forum. Further, in the event of assignment of this Agreement, each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in US District Court of the Assignee's Home Forum or the state courts of the Assignee's Home Forum. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. You understand that the assignee will have the same rights and benefits, but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us. This Agreement may be executed, communicated and retained electronically and a facsimile or other electronic version shall be admissible as evidence. The sole electronic original shall be the authoritative copy under U.C.C. 9-105. To the extent this Agreement is chattel paper, no security interest may be created or perfected and no assignment effective except through control of such authoritative copy. You will have access to the authoritative copy for purposes of making a duplicate. Any officer/owner/partner executing this document hereby affirms that all your shareholders/owners/partners have been identified to us in writing.

**If you request in writing, we will send you a copy of this Agreement in larger type.**

DocuSign Envelope ID: E4B3F09F-D144-4CB4-8FB8-A38FC517F872
DocuSign COPY
The Authoritative Copy of this record is held at NA3.docusign.net

Contract #: TN-000083308

## EQUIPMENT FINANCE AGREEMENT GUARANTY

**Borrower:** FREON LOGISTICS

**Lender:** TopMark Funding, LLC

This Guaranty is made and entered into by the undersigned, hereinafter referred to as "Guarantor" in favor of above referenced Lender. Whereas it is contemplated that Lender may enter into an Equipment Finance Agreement and/or other related agreement, hereinafter collectively referred to as "EFA" with the above referenced Borrower, and whereas, the Guarantor(s) has an interest, financial or otherwise in Borrower and wishes to induce the Lender to make the EFA and the Equipment for the use of the Borrower, knowing that the Lender is relying on the Guaranty as a precondition to making the EFA, the Guarantor(s) now hereby INDIVIDUALLY, JOINTLY AND SEVERALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to the Lender (and any person or firm the Lender may transfer its interest to) all payments and other obligations owed by the Borrower to the Lender under the EFA and any Addendums to the EFA, including but not limited to the Lender's reasonable attorney fees and legal costs incurred in enforcing the EFA. Guarantor will also pay all costs and fees incurred by the Lender in enforcing the Guaranty, whether or not Lender commences suit. Accounts settled between the Lender and the Borrower will bind the Guarantor(s). Guarantor(s) waive notice of demand and notice of default AND AGREE THAT THE LENDER MAY PROCEED DIRECTLY AGAINST GUARANTOR(S) WITHOUT FIRST PROCEEDING AGAINST BORROWER OR SEEK REPOSSESSION OF THE EQUIPMENT, IT BEING UNDERSTOOD THAT THE EFFECT OF THIS GUARANTY IS AS IF THE UNDERSIGNED HAD SIGNED THE EFA DIRECTLY. THIS GUARANTY SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. IN THE EVENT ANY GUARANTOR BRINGS ANY JUDICIAL PROCEEDINGS IN RELATION TO ANY MATTER ARISING UNDER THIS GUARANTY, THE PARTIES FURTHER AGREE THAT SUCH MATTERS SHALL BE ADJUDGED OR DETERMINED BY THE DISTRICT COURT FOR THE COUNTY OF PLACER, CALIFORNIA. ANY GUARANTOR HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty will bind my heirs, representatives and successors. Guarantor(s) further agree to, understands, and gives permission for Lender, to report Guarantor(s) to a national credit bureau as past due or otherwise delinquent should Guarantor(s) fail to timely make any payment to Lender due or payable under this agreement. Lender may apply all proceeds received from Borrower or others to such part of Borrower's indebtedness, as Lender may deem appropriate without consulting Guarantor(s) and without prejudice to or in any way limiting or lessening the liability of Guarantor(s) under this Guaranty. If Borrower is a corporation, the undersigned warrant and represent that they are stockholders, directors or officers and/or are financially or otherwise interested in Borrower, and, if married, their marital communities are so interested.

If this document is executed by Guarantor and thereafter sent to Lender by facsimile transmission, then until such time as Lender has received this document with Guarantor's manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by Lender in its offices, the original document and chattel paper and shall be admissible for all purposes as the original document. Guarantor agrees to promptly forward to Lender the document with Guarantor's manual signature thereon and upon receipt by Lender this document with Guarantor's manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

## AUTHORIZATION

**IMPORTANT: THIS AGREEMENT CREATES SPECIFIC LEGAL OBLIGATIONS. DO NOT SIGN IT UNTIL YOU HAVE FULLY READ AND UNDERSTAND ALL TERMS OF THE AGREEMENT. BY SIGNING YOU COMPLETELY AGREE TO ITS TERMS.**

| **Guarantor:** Amarinder Singh Gorwara | **Guarantor:** Hardeep Singh |
|---|---|
| *Amarinder Singh Gorwara* ▉ | *Hardeep Singh* ▉ |
| Signature (Individually; No Titles)     Social Security Number | Signature (Individually; No Titles)     Social Security Number |
| 12101 Clegg Dr | 7309 Glitter Way |
| Home Address | Home Address |
| Bakersfield, CA 93311 | Bakersfield , CA  93313 |
| City     State   Zip     Home Phone | City     State   Zip     Home Phone |
| **Guarantor:** | **Guarantor:** |
| | |
| Signature (Individually; No Titles)     Social Security Number | Signature (Individually; No Titles)     Social Security Number |
| | |
| Home Address | Home Address |
| | |
| City     State   Zip     Home Phone | City     State   Zip     Home Phone |

DocuSign Envelope ID: E4A30FD8-6E74-40C8-897F-96C9BD07F872
COPY
The Authoritative Copy of this record is held at NACdocusign.net

### EFA Schedule "A"
### Contract #: TN-000083308

## EQUIPMENT

| Quantity | Equipment Description | Serial # | Supplier Name and Contact |
|----------|----------------------|----------|---------------------------|
| 1 | 2023 Peterbilt Model 389 | 1XPBDP9XXPD850631 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2023 Peterbilt Model 389 | 1XPBDP9X1PD850632 | E.M Tharp Inc., dba Golden State Peterbilt |
| 1 | 2023 Peterbilt Model 389 | 1XPBDP9X3PD850633 | E.M Tharp Inc., dba Golden State Peterbilt |
| | | | |

## AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL

Borrower hereby authorizes Lender to initiate debit entries and to initiate, if necessary, credit entries and adjustments for any debit entries in error to the account indicated below (the "Account") with the bank named below (the "Bank") for all amounts due under the referenced Equipment Finance Agreement (the "EFA"), including without limitation, all Payments, late fees, taxes, non-sufficient funds charges, reimbursements and other amounts due under the EFA. Borrower further authorizes Lender or any such designee to deliver a copy of this Addendum to the Bank as evidence of Borrower's authorization.

Name on Account:   FREON LOGISTICS

Bank Name:   JP MORGAN CHASE                                                    Ph: _____

Commercial Checking Account Number: ████████████

Transit / ABA Number (lower left corner of check, 9 digits): ████████████

### INCLUDE VOIDED CHECK

This authority is to remain in full force and effect until Lender and the Bank have received written notification from Borrower of its termination in such time and in such manner as to afford Lender and the Bank a reasonable opportunity to act on it. Borrower represents, warrants, covenants and agrees that, until all of its obligations under the EFA are satisfied in full: (a) its authorizations to Lender and its designee hereunder may be revoked only with Lender's prior written consent and any withdrawal of this authority or closing of the Account without the express written consent of Lender shall constitute a default of the EFA; (b) the Account identified by account name, account number and bank name and address that is shown on the face of the voided check that Borrower provides to Lender by attaching to this Addendum is the Account set forth above; (c) Borrower will maintain the Account in good standing with the Bank throughout the Term; and (d) Lender or its designee may, at any time and from time to time, issue a pre-notification to the Bank with respect to such Account.

## CERTIFICATION OF BORROWER OWNERSHIP AND AUTHORIZATION

**IMPORTANT: DO NOT SIGN AGREEMENT UNTIL THIS SECTION IS FILLED OUT. YOU (THE SIGNER, PERSONALLY AS WELL AS THE BORROWER) ARE RESPONSIBLE FOR THE CORRECTNESS OF THIS SECTION.**
The person signing this agreement individually and in his/her capacity as an officer of the Borrower represent and warrant that (1) this agreement is executed and the Equipment financed under this agreement will be used in the ordinary course of the business of the Borrower; (2) he or she has the legal right, power and authority to sign this agreement with all necessary authority from the managing member(s), directors, senior officers or other management of the Borrower and its shareholders, members, partners or other owners; and (3) the following is a complete list of the owners of the Borrower:

| Name | Ownership % |
|------|-------------|
| Amarinder Singh Gorwara | 50% |
| Hardeep Singh | 50% |

## AUTHORIZATION

If this Addendum is executed by Borrower and thereafter sent to Lender by facsimile and/or any electronic transmission, then such facsimile or electronic transmission shall, upon acceptance and execution by Lender in its offices, be admissible for all purposes as an original Addendum. Borrower agrees to promptly forward to Lender this Addendum with Borrower's manual signature thereon. **DO NOT SIGN THIS SCHEDULE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND CONDITIONS.**

BORROWER: FREON LOGISTICS

*Amarinder Singh Gorwara*
Authorized Signature

Amarinder Singh Gorwara
Print Name

CEO                                   3/31/2022
Title                                  Date

LENDER: TopMark Funding, LLC

*Samantha Shiel*
Authorized Signor

Samantha Shiel
Print Name

Manager                               4/5/2022
Title                                  Date

EXHIBIT H

## MASTER SALE OF CHATTEL PAPER AND SECURITY AGREEMENT

**MASTER SALE OF CHATTEL PAPER AND SECURITY AGREEMENT** ("Agreement") dated as of **August 27, 2020**, between **People's Capital and Leasing Corp.**, ("Buyer"), with an address at **850 Main Street BC-03, Bridgeport, CT 06604** and TopMark Funding, LLC ("Seller"), with its principal place of business at 516 Gibson Dive, Suite 160, Roseville, CA 95678.

### W I T N E S S E T H :

FOR GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, Seller and Buyer hereby agree as follows:

### 1. Definitions.

The following terms, and all other capitalized terms, when used in this Agreement shall have the meanings assigned to them herein unless the context otherwise requires:

"Agreement" shall mean this Master Sale Of Chattel Paper and Security Agreement, as the same may be modified, amended or restated from time to time in the manner provided herein.

"Specification" shall mean the instrument entitled "Sale and Assignment of Chattel Paper" evidencing the sale, assignment and transfer of an item of Paper by Seller to Buyer, incorporating the terms of this Agreement, substantially in the form of Exhibit "A" annexed hereto.

"Collections" shall have the meaning assigned to such term in Section 7A(c) hereof.

"Debtor" shall mean the obligor under an item of Paper, and its successors and assigns.

"Debtor Obligations" shall mean (a) the unpaid balance of monies due or to become due under an item of Paper, including all extensions or modifications thereof, and (b) all other obligations of a Debtor pursuant to such Paper. All extensions and modifications must be approved by buyer and seller unless the entire transaction and option is sold to Buyer. No pre-approval of Seller is required in the event the lease is an abandonment type lease.

"Equipment" shall mean all of the machinery, equipment, motor vehicles, furniture and fixtures identified and described in an item of Paper, together with all parts, attachments, accessions, accessories and additions that at the time of the delivery of an Specification or thereafter are affixed or related thereto, and all substitutions and replacements thereof, wherever located.

"Guarantor" shall mean any person or entity guaranteeing any of the Debtor Obligations.

"Paper" shall refer to any equipment lease, installment sale contract or other chattel paper sold, assigned and transferred by Seller to Buyer pursuant to an Specification between Seller or another party, and a Debtor, including any schedules, amendments or addendums thereto, and all guaranties, security agreements, pledge agreements and other agreements, documents and instruments relating thereto.

"Pledgor" shall mean any person or entity pledging any collateral as security for any of the Debtor Obligations.

vs.082020A

"Property" shall have the meaning assigned to such term in Section 3 hereof.

"Repurchase Price" shall have the meaning assigned to such term in Section 8(a) hereof.

"Seller's Obligations" shall mean all obligations of Seller with respect to any item of Paper and all extensions and renewals thereof, of every nature owed at any time to Buyer, whether now existing or hereafter incurred, direct or contingent, pursuant to the terms of this Agreement or any Specification including, but not limited to, the Repurchase Price owed with respect to any item of Paper, and all obligations of Seller with respect to any Equipment.

"UCC" shall mean the Uniform Commercial Code.

## 2. **Sale of Paper.**

(a) Seller intends, but is not obliged, to request Buyer from time to time to purchase, in Buyer's discretion, Seller's rights, interest in and title to certain equipment leases, installment sale contracts and other chattel paper, without recourse (except as otherwise provided in this Agreement), together with all monies due, monies to become due, and all other agreements, instruments and documents related thereto (including obtaining a security interest in the Equipment subject of such Paper. Each transfer of an item of Paper shall be evidenced by and described in an Specification signed by Seller specifying the amount, terms of payment, the Equipment covered by such Paper, and related agreements, guaranties, instruments, etc. Seller shall not in any Specification or otherwise delegate any of its obligations under such Paper, to Buyer. Rates quoted by Buyer to Seller with respect to an item of Paper proposed to be sold hereunder shall be valid for a period of thirty (30) days from the date of such quote, and if such Paper is not sold to Buyer in accordance with the terms hereof within such period, the Buyer reserves the right to withdraw such offer without notice.

(b) Prior to and as a condition precedent to the execution of this Agreement by Buyer, Seller shall deliver to Buyer in form and substance satisfactory to Buyer, the following:

(i) a duly certified copy of the resolutions of Seller's Board of Directors authorizing Seller to enter into and be bound by this Agreement and the transactions contemplated hereby;

(ii) a certificate of the corporate Secretary of Seller relating to the incumbency and signatures of the officers authorized to execute this Agreement; and

(c) Prior to and as a condition precedent to the purchase of each item of Paper hereunder, Seller shall deliver, in form and substance satisfactory to Buyer, the following:

(i) the duly executed, complete and sole original counterpart number 1 of the Paper, marked "Original";

(ii) a Delivery and Acceptance Certificate for the related Equipment substantially with form of Exhibit "B" annexed hereto, executed by the Debtor;

(iii) an Specification, duly executed by Seller;

(iv) fully executed UCC financing statements on form UCC-1 and/or UCC-3 as required by Buyer for filing by Buyer against Seller and the Debtor;

(v) original bills of sale or other proofs of ownership of the Equipment acceptable to Buyer, together with proof of payment in full;

vs.082020A

2

(vi) original vehicle title, where applicable, naming Buyer as primary lienholder;

(vii) evidence of insurance regarding the Equipment satisfactory to Buyer, in accordance with Section 5(g) hereof;

(viii) a copy of the Notice of Assignment substantially in the form annexed hereto as Exhibit "C", as delivered to and acknowledged by the Debtor; and

(ix) such other documents as Buyer may reasonably request, including but not limited to landlord/mortgagee waivers, a certificate of incumbency of the Debtor, resolutions of the Debtor's Board of Directors authorizing the transaction and, with respect of transactions involving Equipment with a purchase price of $750,000.00 or more, an opinion of counsel to the Debtor, if requested by Buyer.

(d) Notwithstanding anything contained herein to the contrary, Buyer shall not be obligated to purchase any Paper in respect of a Debtor previously approved if (i) the provisions contained in the submitted equipment lease, installment sale contract or other chattel paper deviate in any respect from the terms on which Buyer based its credit approval, (ii) there shall have been a material adverse change in the financial condition or operations of the Seller or the proposed Debtor, (iii) there shall be any claim, action, litigation or proceeding pending or threatened against Seller or the proposed Debtor that, if adversely determined, could cause a material adverse change in the financial condition or operations of Seller or the proposed Debtor, or (iv) the date of the original credit approval is more than sixty (60) days prior to the date of delivery of the documents specified in Section 2(c) hereof, and the Debtor's credit is not reapproved.

### 3. Security Interest.

As security for the prompt payment in full to Buyer of Seller's Obligations and all Debtor Obligations with respect to each item of Paper, Seller grants and/or assigns and conveys to Buyer a continuing first priority purchase money security interest in the following (except for the Sellers residual interest unless sold to the Buyer as outlined in the applicable Specification)which shall collectively be referred to as the "Property"): (a) the Equipment covered by such Paper and all proceeds and products thereof in any form whatsoever including (without limitation) accounts, chattel paper, instruments, general intangibles, insurance proceeds and any claims against third parties for loss of or damage to the Equipment, and (b) all books, records, ledger cards and other property and general intangibles at any time evidencing or relating to the Paper and the Equipment.

### 4. Representations and Warranties of Seller.

Seller hereby represents and warrants to Buyer (which representations shall survive the execution, delivery and performance of this Agreement), as of this date of this Agreement and as of the date of the delivery of each Specification with respect to such Specification, the Paper transferred thereby, the Debtor under such Paper and the Equipment, that:

### *(a) As to Seller:*

(i) Seller is a corporation duly organized and in good standing under the laws of the state of its incorporation and is duly qualified or licensed to do business as a foreign corporation, in good standing, in each other state wherein the conduct of its business or the ownership of its property would require such qualification or licensing or where the failure to be so qualified would have an adverse effect on the enforceability of Seller's rights under any item of Paper or its interests in any Equipment.

(ii) Seller maintains its chief executive office and principal place of business at the address set forth above and shall not change such location except upon thirty (30) days prior written notice to Buyer.

(iii) Seller has the corporate power, authority and legal right to enter into, and has taken all action necessary to authorize the execution, delivery and performance of this Agreement, the Paper, the Specification and all other documents and instruments otherwise required or contemplated hereunder and thereunder, any and all of which do not and shall not contravene the provisions of Seller's Certificate or Articles of Incorporation, By-Laws, or any agreement or instrument to which it is a party or by which it or its property is bound, and shall not cause or result in any violation, breach or default of, or accelerate any payment under, any such agreement or instrument.

(iv) This Agreement and each Specification executed by the Seller are and shall be the legal, valid and binding obligations of Seller, each enforceable against Seller in accordance with the terms thereof. Seller is the sole and absolute owner of the Paper and the Equipment (or, with regard to the Equipment, has a first priority purchase money security interest in therein), and has the absolute right to sell and assign the Paper and to grant or assign and convey to Buyer a first priority purchase money security interest in the Property, free of any claim, lien, encumbrance or security interest of any nature, except for the interest of the Debtor, and except that Seller's interest in any software is limited to a non-exclusive license therein. Seller has not prepaid, released, sold, assigned nor encumbered the Paper or any of the Equipment to or in favor of any party nor done any act to impair the validity or enforceability of the Paper or assignability of the Equipment.

(v) There is no consent, approval or authorization of, or filing or recording with, any governmental body or agency or of any company or person required to be obtained or made in connection with the execution, delivery and performance by Seller of this Agreement, the Specification, the Paper or any other document or instrument required or contemplated hereunder, except as contemplated by Section 4(c) hereof.

(vi) There is no claim, action, litigation or proceeding before any court, governmental body or agency pending or threatened against Seller or, to the knowledge of Seller, pending or threatened against the Debtor, any Guarantor, any Pledgor, the Paper or the Equipment, except as disclosed in writing to Buyer prior to the sale and delivery of the Paper to Buyer.

#### (b) As to the Paper:

(i) The Paper and all guaranties, security agreements, pledge agreements and other related agreements, documents and instruments will each have been described in the Specification and delivered to Buyer, and, together with all signatures appearing thereon, are: genuine, in all respects what they purport to be, in full force and effect, and valid, legally binding agreements of and enforceable against the Debtor and the Guarantor and any Pledgor, as the case may be, in accordance with the provisions thereof.

(ii) Seller has no adverse credit information about the Debtor or any Guarantor or any Pledgor which has not been disclosed to and approved by Buyer in writing, and has furnished to Buyer all credit information received by Seller with respect thereto.
(iii) The Debtor has taken all necessary corporate or other action and obtained all necessary permits and authorization and made all filings and recordings with respect to its execution and delivery of the Paper and its performance thereof.

(iv) The Paper is an absolute and unconditional obligation of the Debtor, and the Debtor does not have any right of offset, defense, claim or counterclaim of any kind with respect to the payment of any of the Debtor Obligations under the Paper, is current on all payments and taxes owed thereunder and is not contesting any of the provisions thereof.

(v) All representations in the Paper made by Seller were true and correct when made.

(vi) No default, and no event that, but for the passage of time or the giving of notice or both, would constitute a default, has occurred under the provisions of the Paper by either Seller or the Debtor.

(vii) That the Paper in each transaction  constitutes the entire agreement of the parties thereto with respect to the Equipment and the underlying transaction, that the Paper and the underlying transaction has not been modified, cancelled or waived in any respect, and there are no other agreements or documents relating to the Paper or the Equipment other than the items delivered to Buyer.

(viii) Seller has delivered to Buyer the sole executed original of the Paper, there being  no executed duplicate originals of any item of Paper,  other than  copies of the Paper (including, without limitation, any executed counterpart(s) in the possession of the Debtor)  bearing the legend: "Duplicate Copy", "Second Copy", "Debtor Copy", "Lessee Copy" or language of similar import.

(ix) The equipment described in the credit application submitted with respect to the Paper was the same Equipment described on the Paper;

(x) The application to Buyer shall contained the entire amount of credit applied for by the  Debtor at that time for the Equipment, will not have been previously declined by any other financing sources;

(xi) Buyer shall have furnished and  assigned to Seller all available remarketing agreements with equipment suppliers and has disclosed to Seller  any limitations with regard to the supplier and/or manufacturer of the Equipment including but not limited to any re-licensing limitations with regard software (embedded or otherwise).

### (c As to) Equipment and Other Matters:

(i) Unless otherwise disclosed to and approved by Buyer in writing prior to the delivery of the Specification, the Equipment is new, has been delivered to and has been unconditionally accepted by the Debtor without dispute or claim, and is located at the address(es) specified in the Paper.

(ii) The Equipment is, and shall remain, personal property regardless of its attachment to real property in any manner;  is in good working order; is not a component part of any larger system of equipment requiring additional items to function independently (either as an accession to that system of equipment, or with other system of equipment to be an accession); and constitutes the entire completed system, functioning separately and independently from the balance of the Debtor's equipment, unless otherwise disclosed by Buyer and accepted by Seller.

(iii) Seller has, to the best of its knowledge, properly made or caused to be made all required governmental and administrative filings and recordings, if any, and has obtained unconditionally all permits and approvals (including patent licenses, if any) necessary to protect the interest of Seller as owner of the Equipment, and has or shall, if required by Buyer under Section 2(c)(ix) hereof, promptly, at its sole cost and expense, obtain and deliver to Buyer waivers, executed by the landlord and/or the mortgagee(s) of the real property where

the Equipment is located, of any claim or right to lien, levy or distrain for rent against the Equipment and of any claim of an interest in the Equipment, as fixtures or otherwise, duly executed in form and substance acceptable to Buyer and in recordable form in accordance with the laws of the state where such real property is located.

(iv) Buyer's security interest in the Equipment is, or will constitute, upon the filing or recording of the UCC financing statements delivered by Seller to Buyer together with each Specification, a valid, enforceable and perfected first priority purchase money security interest in the Equipment pursuant to the laws of the jurisdiction(s) where the Equipment is located. The purchase price for each item of Equipment descrived in the Paper has been pain in full to the applicable vendor, and all taxes required to be paid in connection with the acquisition of such Equipment have been paid in full.

(v) If a Certificate of Title is required by law with respect to the Equipment, Seller has obtained such Certificate and shall cause any notation thereon to be made in a timely manner to perfect Buyer's first priority security interest in the Equipment.

(vi) Seller has duly filed UCC financing statements which, if Seller's interest in the Equipment were deemed to be a security interest, would perfect a first priority security interest of Seller in the Equipment in the jurisdiction where the Equipment is located.

(vii) Acknowledgment copies of these UCC financing statements, together with acknowledgment copies of UCC financing statements duly filed to protect Buyer's interest in the Paper, have been delivered to Buyer with the Specification, or will be so delivered promptly upon receipt of such copies from the applicable filing office.

(d) Seller has delivered to Buyer all material written information in its possession with respect to the Paper, the Debtor, any Guarantor or Pledgor and the Equipment. All statements, documents, instruments, information, representations and warranties made or furnished by Seller to Buyer relating to the business and financial affairs of Seller, this Agreement, any Specification, the Paper, the Debtor, any Guarantor or Pledgor and the Equipment are (or will be when delivered to Buyer) in all material respects true and complete, and Seller knows of no fact which, if known to Buyer, would affect Buyer's reliance on any of the foregoing.

(e) At the time an Specification is delivered to Buyer, the Equipment is fully insured against loss, fire, theft, damage or destruction from any cause watever in an amount not less than the total rent under the Paper or the full replacement cost of the Equipment without provision for depreciation, whichever is greater, and the Debtor maintains additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by owners of like property, all with companies satisfactory to Buyer.

(f) Seller represents and warrants that it has complied with all federal, state and local laws, rules and regulations applicable to any Debtors (including, but not limited to, any notice, disclosure, documentation, or other requirement under the Equal Credit Opportunity Act (and Regulation B) and the Uniform Commercial Code).

## 5. Certain Covenants of Seller.

Seller hereby covenants and agrees that so long as Seller's Obligations or any Debtor Obligations with respect to any item of Paper remain unpaid, it shall:

(a) perform and observe all of the warranties, duties and obligations, if any, required of it under each item of Paper and nothing contained herein or in any other document nor any action taken shall be deemed to relieve Seller from, or cause Buyer to assume, or be liable for, the performance or observance of any of such warranties, duties or obligations;

(b) immediately upon obtaining knowledge thereof, notify Buyer in writing of each default, or any circumstances which might lead to a default pursuant to the provisions of any item of Paper, or the damage, destruction, loss or theft of, or any dispute or claim with respect to, the Equipment;

(c) execute and deliver to Buyer, at Seller's sole cost and expense, such security agreements, UCC financing statements, amendments and other documents or instruments, in form and substance satisfactory to Buyer, as Buyer may request, from time to time, to evidence, perfect, maintain and enforce Buyer's rights in each item of Paper and security interest in the related Property; Buyer may, where permitted by law, file such UCC financing statements without the signature of Seller appearing thereon;

(d) keep proper books and records with respect to each item of Paper and the Equipment covered thereby; upon reasonable advance notice from Buyer, Seller shall permit Buyer to inspect and make copies of all such books and records of account at any time during normal business hours, and furnish such information regarding its financial condition as Buyer may reasonably request;

(e) not modify, accept any payment from any Debtor under, or make any payments on behalf of or to any Debtor for the purpose or with the result, whether or not intended, of concealing or preventing an event of default under, any item of Paper, and Seller agrees that if any such payment is received by it, such payment shall be held in trust for the sole benefit of Buyer and shall promptly be remitted by Seller to Buyer;

(f) not discontinue or change, or dispose of all or a substantial part of, its business or assets, nor sell, assign, transfer, dispose of, or grant or suffer to exist any security interest, lien, encumbrance or other interest of any kind with respect to any item of Paper or any Equipment, or move or permit the removal of the Equipment leased or covered thereby from the address (es) specified in the Paper;

(g) deliver, on or before the date of the Specification of each item of Paper: (i) copies of such insurance policies, evidencing the requirements set forth herein, naming Buyer as "loss payee" in the case of casualty insurance, and as "additional insured" in the case of liability insurance, and providing for at least thirty (30) days prior written notice to Buyer of any modification or cancellation thereof, and (ii) a copy of Seller's notification to the Debtor of assignment of the Paper to Buyer with highlights, duly acknowledged by the Debtor;

(h) shall furnish Buyer within 120 days after the close of each fiscal year copies of its financial statements containing balance sheets as of the end of such fiscal year, statements of income and expenses, paid-in-capital and surplus, and changes in financial condition for such fiscal year, in each case prepared in accordance with generally accepted accounting principles consistently applied and certified by a recognized firm of certified public accountants acceptable to Buyer as fairly presenting Seller's financial condition; upon request, Seller shall deliver to Buyer, (i) within 60 days after the close of each fiscal quarter of Seller's business, Seller's quarterly financial report prepared in accordance with generally accepted accounting principles consistently applied and certified by Seller's chief financial officer as fairly presenting Seller's financial condition, and (ii) such other information concerning Seller's financial condition and operations as Buyer may reasonably request from time to time;

(i) shall, if any forms of Paper, delivery and acceptance receipts, resolutions, guaranties and other documents are furnished to Seller by Buyer, use such forms only in conjunction with transactions that Seller sells to Buyer hereunder, and Seller shall not disclose, distribute or otherwise disseminate any such form to any third party (other than the

vs.082020A

Debtor) or claim a proprietary interest in any such form; provided, however, that the use of any such form by Seller, or the failure by Buyer to advise Seller of any deficiency in any such form or in any other document delivered to Buyer by Seller, shall not constitute a defense against or waiver of Seller's breach of any representation, warranty or covenant in this Agreement or in any Specification. Buyer's knowledge of any breach by Seller of any representation, warranty or covenant contained in this Agreement or in any Specification, or Buyer's failure to disclose its knowledge of such breach to Seller, at the time of the purchase of any item of Paper or at any time thereafter, shall neither impair Buyer's ability to fully enforce, nor constitute a defense against or waiver of, any of any of Seller's Obligations, unless Buyer shall have executed an express written waiver of such breach; and

(j) immediately notify Buyer of the assertion of any claim or the threat or institution of any litigation that, if adversely determined, would have a material adverse effect on any item of Paper or the Equipment covered thereby, or on the assets, prospects, business or condition (financial or otherwise) of Seller.

(k) comply with all federal, state and local laws, rules and regulations applicable to any Debtors (including, but not limited to, any notice, disclosure, documentation, or other requirement under the Equal Credit Opportunity Act (and Regulation B) and the Uniform Commercial Code) and shall promptly cooperate with all requests by Buyer for documentation relating to compliance with all such laws, rules and regulations.

## 6. Taxes.

Seller shall be liable for, and shall duly pay and discharge, all taxes, assessments and penalties (including interest) imposed upon all transactions under this Agreement, all Specifications, all Paper and all Equipment, including (without limitation) all taxes, assessments and penalties that Buyer may be required to withhold or pay for any reason with respect to any of the foregoing, other than taxes on or measured by Buyer's net income.    Seller hereby indemnifies and holds Buyer harmless from and against all such taxes, assessments and penalties paid (including interest) by, charged to or asserted against Buyer.  Notwithstanding the foregoing, Seller shall not be liable for and does not indemnify Buyer from any penalties or interest resulting from Buyer's gross negligence or willful misconduct.

## 7. Collection, Power of Attorney.

Seller shall notify all the Debtors to make payments under all Paper directly to Buyer. Buyer shall have the sole and exclusive right to collect and enforce payment of all Debtor Obligations with respect to, and enforce all of the rights and remedies provided for in, each item of Paper. Seller hereby constitutes and appoints Buyer, its officers, employees and any of their designees, as its attorney-in-fact, to exercise in a lawful manner at any time, any or all of the following powers which, being coupled with an interest, shall be irrevocable until all Debtor Obligations with respect to each item of Paper have been paid in full: (a) to demand, collect, receive, receipt, endorse, assign, deliver, accept, give acquittances for and deposit in the name of Buyer or Seller, any and all monies, checks, remittances and other instruments and documents relating to each item of Paper and the Equipment; (b) to notify the Debtor under each item of Paper of the assignment of the respective Paper and Buyer's interests, including its security interest in the Equipment; (c) to notify each Debtor to make payments under its Paper directly to Buyer; (d) to take or bring in the name of Buyer or Seller, all steps, actions, suits or proceedings, or to file any claim or to make any settlement, compromise or discharge, or to extend the times of any payments, upon prior written approval from Seller, release any party or substitute another as Debtor, deemed by Buyer necessary or desirable to enforce its rights in any item of Paper, or to effect collection of the Debtor Obligations or to protect, preserve, maintain or enforce Buyer's security interest in the Property; (e) to maintain, repair, protect or preserve the Equipment; and (f) to execute and file in Seller's name and on its behalf any Paper, UCC financing statements, assignments, continuations or amendments thereto with respect to Buyer's interest in any Paper and security interest in any of the Property. Seller hereby releases Buyer, its officers, directors, shareholders, employees and designees from any liability arising from any act or acts hereunder

vs.082020A

8

or in furtherance hereof, whether of omission or commission and whether based upon any error of judgment or mistake of law or fact.

8. Repurchase of Paper.

(a) If Seller defaults in the performance of any of its obligations under any item of Paper, this Agreement or any agreement or document or instrument related thereto, or if any warranty or representation made by Seller herein or in any Specification in respect of any item of Paper, the Debtor thereunder, any Guarantor or Pledgor or the Equipment shall be incorrect, then Seller agrees to pay to Buyer on demand, at Buyer's option, the sum of: (i) the then unpaid balance of rental payments accruing under each item of Paper to which such default or breach pertains, each discounted using the simple interest method at the rate applicable to the Specification by which such Paper was sold by Seller to Buyer, plus all reasonable costs and expenses incurred by Buyer relating to each such Paper and the Equipment covered thereby, including (without limitation) the costs and expenses for the maintenance, repair, protection and preservation of the Equipment and all reasonable attorneys' fees and expenses in connection with defending or enforcing Buyer's rights and remedies under this Agreement, such Paper and the Equipment leased thereunder or otherwise, plus (ii) all other fees paid to Seller with respect to each such Paper, plus (iii) interest at the rate of eighteen percent (18%) per annum on the amount determined under Section 8(a)(i) and (ii) hereof from the date of demand until the date paid in full, or the highest rate of interest permitted by applicable law, whichever is less (such sum hereinafter being referred to, collectively, as the "Repurchase Price"). Seller shall have the right to prepay each item of paper under the same formula as identified above.

(b) If, with the consent of Buyer and Seller, a Debtor exercises an option to prepay its obligations under an item of Paper or to purchase the Equipment for an amount that is less than the Repurchase Price for such Paper at the time of exercise of such option, then Seller agrees to pay Buyer on demand the difference between such amount paid and the Repurchase Price for such Paper.

(c) Upon payment to Buyer of the Repurchase Price with respect to an item of Paper in accordance with Section 8(a) hereof and provided Seller has not breached and is not otherwise in default under any provision of this Agreement or any Specification, Buyer shall terminate its interests including its security interest in the related Property and shall assign to Seller all of Buyer's right, title and interest in the Paper without recourse, representation or warranty, express or implied.

(d) In the event that, upon the payment of all amounts to be paid to Buyer under an item of Paper, Buyer is unable to locate Seller (for the purpose of re-assigning the Paper to Seller) by sending a notice to Seller at its address for notices set forth in this Agreement, Seller hereby irrevocably authorizes and appoints Buyer (in Seller's name or Buyer's name, or both, as Buyer shall in its sole discretion determine). Seller's true and lawful attorney-in-fact to deliver to the Debtor under such Paper (a) a bill of sale for the Equipment covered by such Paper, whether or not such Debtor has an option to purchase the Equipment and for such consideration (or for no consideration) and on such other terms as Buyer shall in Buyer's discretion determine (any consideration received to be retained by Buyer), and (b) a UCC termination statement terminating the filing of any UCC financing statement filed by Seller with respect to the Equipment. The foregoing powers are coupled with an interest and shall not be affected by Seller's dissolution, reorganization or any merger.

9. **Indemnification.**

In addition to all other rights of indemnification as provide herein, (a) Seller hereby indemnifies and holds Buyer harmless against any claim, suit, action, proceeding (formal or informal), investigation, judgment, loss and legal and other expenses as and when incurred by Buyer arising out of or based upon (i) the breach by Seller of any representation, warranty, covenant or other agreement contained in this Agreement or in any Specification, including (without limitation) any failure to pay any sales, use or similar tax with respect to any item of Paper or the Equipment

vs.082020A

covered thereby, (ii) any loss or damage to property, persons, services or equipment resulting from or in connection with the use of any Equipment, (iii) any default by Seller under any item of Paper or in the performance of any of its obligations thereunder, (iv) relating to or arising from any failure by Seller  to comply with all laws, rules, and regulations by governmental authorities.

(b) If Seller fails to perform hereunder or under any Specification or item of Paper, then in addition to any other right Buyer may have, Buyer may in its discretion, but need not, perform thereunder on Seller's behalf, and in that event, Seller shall pay Buyer, on demand, all costs and expenses incurred by Buyer with interest at the rate of 18% per annum or the highest rate permissible under applicable law, whichever is less.

10. **Defaults and Remedies.**

(a) In the event Seller fails to pay the Repurchase Price within thirty (30) days after Seller's receipt of written request therefor is given to Seller with respect to any item of Paper when and as required by Section 8(a) hereof, Seller shall, immediately upon Buyer's demand, purchase any or all of the Paper sold to Buyer hereunder for the Repurchase Price therefor.  If after such written notice and a chance to cure such default,  Seller fails to purchase such Paper immediately upon Buyer's demand, Buyer shall have the following rights and remedies (to the extent permitted by law), in addition to all of the rights and remedies of a secured party under the UCC of the applicable jurisdiction and other applicable law, and the right to commence an action or proceeding in personam against Seller for the payment of the Repurchase Price of such Paper and all other amounts due under this Agreement, all such rights and remedies being cumulative, not exclusive and enforceable alternatively, successively or concurrently:

(i) to prosecute any action, suit or proceeding to protect and enforce any or all of the rights of Buyer pursuant to the provisions of this Agreement, whether for the specific performance of any covenant or other provision contained herein or in any document or instrument delivered in connection with or pursuant to the provisions of this Agreement, or to enforce the payment of such Repurchase Price;

(ii) with or without judicial process or the aid and assistance of others, to enter upon any premises under the control of Seller in which the Equipment covered by any item of Paper may be located and, without resistance or interference by Seller, take possession of the Equipment; and/or dispose of any of the Equipment on the premises; and/or require Seller to assemble and make available to Buyer, at the expense of Seller, any of the Equipment at any place and time designated by Buyer which is reasonably convenient to both parties; and/or sell, re-sell, lease, assign and deliver, grant options for or otherwise dispose of any of the Equipment in its then condition or following any commercially reasonable preparation or processing, at one or more public or private sales, upon at least fifteen (15) days' notice to Seller (which notice Seller acknowledges is reasonable), upon any commercially reasonable terms, at the place(s) and time(s) and to the person(s) as Buyer deems best.  Buyer may buy any of the Equipment at any public sale and, if any of the Equipment is of a type customarily sold in a recognized market or is of the type which is the subject of widely distributed standard price quotations, Buyer may buy the Equipment at private sale, free of any equity of Seller, which Seller hereby waives; and

(iii) Buyer may apply the cash proceeds actually received from any sale or other disposition of the Equipment leased under any Paper to the expenses of retaking, holding, storing, preparing for sale, selling, leasing and the like, to all attorney's fees and costs which may be incurred by Buyer in attempting to collect such Repurchase Price or enforce this Agreement or in the prosecution or defense of any action or proceeding related to this Agreement and then to such Repurchase Price and Seller shall remain liable for and will pay Buyer on demand any deficiency.

(b) In the event the Debtor under any item of Paper fails to pay any of the Debtor Obligations with respect to the Paper when due and payable pursuant to the provisions of the Paper, or any other event of default shall occur under the Paper, Buyer shall have (in addition to all of its rights and remedies against the Debtor) all of the rights and remedies of a secured party pursuant to the UCC and other applicable law in respect of the Equipment, whether the security interest in such Equipment is created pursuant to the provisions of this Agreement or the Paper, and the provisions of Section 10(a)(ii) hereof shall also apply to the exercise of such rights and remedies, except that the enforcement of such provisions shall be at the expense of the Debtor.

11. **Miscellaneous.**

(a) Except as specifically provided herein, Seller waives presentment for payment, demand, protest, notice of dishonor of any item of Paper and any instrument included in or evidencing such Paper, and any and all other notices or demands whatsoever. Buyer shall not be required to take any particular action to preserve, collect, enforce, defend or protect its rights in such Paper or related Property or to maintain, repair, license, register or insure the Equipment leased thereunder. No provision hereof and no right or remedy of Buyer may be waived by Buyer, and no provision hereof may be amended, except in writing, and any such waiver of a right or remedy on one occasion shall not be construed as a waiver of such right or remedy on future occasions.

(b) All notices provided for in this Agreement and each Specification shall be in writing and shall be deemed given when mailed if sent by registered or certified mail, return receipt requested, to Seller or Buyer at their respective addresses set forth above, or when actually received if given in any other manner. Any changes in such addresses shall be by similar notice as provided for herein.

(c) Seller, at its sole cost and expense, will at all times hereafter: (i) execute such UCC financing statements and other instruments and perform such other acts as Buyer may request to establish and maintain the security interests herein granted and the priority and continued perfection thereof; (ii) obtain and promptly furnish to Buyer evidence of all such government approvals as may be required to enable Seller to comply with its obligations under this Agreement; (iii) not change the location of its principal places of business or chief executive offices unless at least thirty (30) days' prior written notice of such change shall have been given to Buyer; and (iv) execute and deliver all such other instruments and perform all such other acts as Buyer may reasonably request to carry out the transactions contemplated by this Agreement.

(d) This Agreement and any Specification shall be binding upon and shall inure to the benefit of Seller and Buyer and their respective successors and assigns, and shall not be deemed for the benefit of any third party; provided, however, that Seller shall not assert any defense, offset, claim or counterclaim against any Buyer of Buyer that may be asserted against Buyer, and Seller shall not assign any of its rights or obligations hereunder without the prior written consent of Buyer.

(e) **THIS AGREEMENT AND EACH SPECIFICATION SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE COMMOWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW. Seller hereby irrevocably consents to the jurisdiction and venue of the courts of the Commonwealth of Pennsylvania and any Federal Court located in the Commonwealth in connection with any action or proceeding arising out of, or relating to, this Agreement, any Specification, any item of Paper or any agreement related thereto, or any related Property and Seller agrees that service of process in any such action or proceeding may be given by mail to Seller's address shown, above. SELLER HEREBY WAIVES ALL RIGHTS TO A TRIAL BY JURY AND RIGHTS TO INTERPOSE COUNTERCLAIMS IN THE EVENT OF ANY LITIGATION WITH RESPECT TO THIS AGREEMENT, ANY SPECIFICATION, ANY ITEM OF PAPER OR RELATED AGREEMENT, OR ANY PROPERTY.**

vs.082020A

**IN WITNESS WHEREOF,** Buyer and Seller have caused this Agreement to be duly executed and delivered as of the date first shown above.

Buyer:                                                          Seller:

**People's Capital and Leasing Corp.**              **TopMark Funding, LLC**

By: _Raquel Hardwby_                           By: _____

Name: _RAQUEL HARDWBY_                    Name: _NICK MCCLASKEY_

Date: _8/27/20_                                       Date: _8/27/20_

vs.082020A

12

EXHIBIT I



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49XXND782861 | 2022 | PTRB | DS | G | 5QFT682 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17801 | | | 0 | CA | 07-09-2021 |

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CAPITAL/LSNG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0022861

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: I3E39KY7PR

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X3ND782863 | 2022 | PTRB | DS | G | 5QFT683 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17781 | | | 0 | CA | 07-09-2021 |

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CAPITAL/LSNG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0022863

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: I3E39KY7PR

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X0ND782819 | 2022 | PTRB | DS | G | 5QFT861 | 06-30-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17816 | | | 0 | CA | 08-15-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0032819

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 4AOEZR6GYI

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X5ND782864 | 2022 | PTRB | DS | G | 5QFT862 | 06-30-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17781 | | | 0 | CA | 08-15-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0032864

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 4AOEZR6GYI

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X1ND782862 | 2022 | PTRB | DS | G | 5QFT921 | 07-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17841 | | | 0 | CA | 08-28-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0042862

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: N5NN40GAV5

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X0ND782822 | 2022 | PTRB | DS | G | 5QFT995 | 07-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17836 | | | 1906 | CA | 09-25-2021 |

**Vehicle Color**

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

ACTUAL

**Liens(s)**
PEOPLES CPTAL/LSG CORP
850 MAIN STREET BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0042822

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 9VYQUGYO7B

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X7ND782820 | 2022 | PTRB | DS | G | 5QFT922 | 07-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17846 | | | 0 | CA | 08-28-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0052820

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: VR3WXHK2NR

## THIS IS NOT A TITLE

**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X2ND782823 | 2022 | PTRB | DS | G | 5QFT923 | 07-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17845 | | | 0 | CA | 08-28-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0052823

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: VR3WXHK2NR

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X5ND782833 | 2022 | PTRB | DS | G | 5QFU041 | 08-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17786 | | | 0 | CA | 10-14-2021 |

Vehicle Color

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL/LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0062833

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: BMIGAPIWVC

## THIS IS NOT A TITLE

**This is an official Premier eTitleLien® Report generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X7ND782834 | 2022 | PTRB | DS | G | 5QFU042 | 08-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17796 | | | 0 | CA | 10-14-2021 |

Vehicle Color

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL/LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0062834

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: BMIGAPIWVC

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**



# DDI Technology
# Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X9ND782835 | 2022 | PTRB | DS | G | 5QFU043 | 08-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17806 | | | 0 | CA | 10-14-2021 |

Vehicle Color

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL/LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0072835

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: FRUGI4WML6

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X7ND782896 | 2022 | PTRB | DS | G | 5QFU044 | 08-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17766 | | | 0 | CA | 10-14-2021 |

Vehicle Color

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL/LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0072896

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: FRUGI4WML6

## THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X1ND782831 | 2022 | PTRB | DS | G | 5QKE657 | 09-30-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17796 | | | 0 | CA | 05-15-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTL/LSNG CORP
850 MAIN ST BC 03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0082831

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 4MJFWW2LMK

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# DDI Technology
# Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X3ND782829 | 2022 | PTRB | DS | G | 5QKE654 | 09-30-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17806 | | | 0 | CA | 11-13-2021 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0092829

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: NQUY4F3VCS

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49XXND782830 | 2022 | PTRB | DS | G | 5QKE656 | 09-30-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17776 | | | 0 | CA | 11-13-2021 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0092830

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: NQUY4F3VCS

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**



# CERTIFICATE OF TITLE

## STATE OF MAINE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|---|
| 1GRAA0624JW103081 | | 2018 | GDAN | TL | RF | 16759262 |
| NEW / USED | PURCHASE DATE | ISSUE DATE | | PRIOR TITLE | | ODOMETER |
| USED | 01/31/2022 | 03/02/2022 | | OH | | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT  06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA  93313**



**Secretary of State**        **Bureau of Motor Vehicles**

| | | Interest in this vehicle is released by: |
|---|---|---|
| **FIRST LIENHOLDER** | 01/31/2022<br>PEOPLES CAPITAL AND LEASING CORP<br>850 MAIN STREET BC03<br>BRIDGEPORT, CT  06604 | **FIRST RELEASE** Signature<br><br>Title                Date |
| **SECOND LIENHOLDER** | | **SECOND RELEASE** Interest in this vehicle is released by:<br>Signature<br><br>Title                Date |
| **THIRD LIENHOLDER** | | **THIRD RELEASE** Interest in this vehicle is released by:<br>Signature<br><br>Title                Date |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144166

VOID IF ALTERED

# STATE OF MAINE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | | BODY | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 1GRAA0623JW116114 | | 2018 | GDAN | TL | | RF | 16759263 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | | PRIOR TITLE | ODOMETER |
|---|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | | OH | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT   06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA   93313**

**Secretary of State**  **Bureau of Motor Vehicles**

| | | | |
|---|---|---|---|
| FIRST LIENHOLDER | 01/31/2022<br>PEOPLES CAPITAL AND LEASING CORP<br>850 MAIN STREET BC03<br>BRIDGEPORT, CT   06604 | FIRST RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title_____ Date |
| SECOND LIENHOLDER | | SECOND RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title_____ Date |
| THIRD LIENHOLDER | | THIRD RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title_____ Date |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144167

VOID IF ALTERED

# CERTIFICATE OF TITLE

## STATE OF MAINE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|---|
| 1GRAA0620JW116104 | | 2018 | GDAN | TL | RF | 16759264 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | PRIOR TITLE | ODOMETER |
|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | OH | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT   06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA   93313**



**Secretary of State**          **Bureau of Motor Vehicles**

| | | Interest in this vehicle is released by: |
|---|---|---|
| **FIRST LIENHOLDER** | 01/31/2022 PEOPLES CAPITAL AND LEASING CORP 850 MAIN STREET BC03 BRIDGEPORT, CT   06604 | **FIRST RELEASE** Signature _____ |
| | | Title _____ Date _____ |
| **SECOND LIENHOLDER** | | **SECOND RELEASE** Interest in this vehicle is released by: Signature _____ |
| | | Title _____ Date _____ |
| **THIRD LIENHOLDER** | | **THIRD RELEASE** Interest in this vehicle is released by: Signature _____ |
| | | Title _____ Date _____ |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144168

VOID IF ALTERED

# STATE OF MAINE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1GRAA0627JW116102 | 2018 | GDAN | TL | RF | 16759265 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | PRIOR TITLE | ODOMETER |
|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | OH | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT  06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA  93313**

 

**Secretary of State**        **Bureau of Motor Vehicles**

| FIRST LIENHOLDER | 01/31/2022<br>PEOPLES CAPITAL AND LEASING CORP<br>850 MAIN STREET BC03<br>BRIDGEPORT, CT  06604 | FIRST RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                          Date |
|---|---|---|---|
| SECOND LIENHOLDER | | SECOND RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                          Date |
| THIRD LIENHOLDER | | THIRD RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                          Date |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144169

VOID IF ALTERED

# CERTIFICATE OF TITLE

## STATE OF MAINE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | | BODY | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 1GRAA0624JW116123 | | 2018 | GDAN | TL | | RF | 16759266 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | | PRIOR TITLE | | ODOMETER |
|---|---|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | | OH | | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT  06604**

OWNER(S) NAME AND ADDRESS

**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA  93313**



**Secretary of State**        **Bureau of Motor Vehicles**

| FIRST LIENHOLDER | 01/31/2022<br>PEOPLES CAPITAL AND LEASING CORP<br>850 MAIN STREET BC03<br>BRIDGEPORT, CT  06604 | FIRST RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                    Date |
|---|---|---|---|
| SECOND LIENHOLDER | | SECOND RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                    Date |
| THIRD LIENHOLDER | | THIRD RELEASE | Interest in this vehicle is released by:<br><br>Signature<br><br>Title                    Date |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144170

VOID IF ALTERED

# STATE OF MAINE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1GRAA062XJW120287 | 2018 | GDAN | TL | RF | 16759267 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | PRIOR TITLE | ODOMETER |
|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | OH | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT   06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA   93313**

Secretary of State  Bureau of Motor Vehicles

| | FIRST LIENHOLDER | | FIRST RELEASE | Interest in this vehicle is released by: |
|---|---|---|---|---|
| | 01/31/2022 PEOPLES CAPITAL AND LEASING CORP 850 MAIN STREET BC03 BRIDGEPORT, CT   06604 | | | Signature _____ Title _____ Date _____ |
| | SECOND LIENHOLDER | | SECOND RELEASE | Interest in this vehicle is released by: Signature _____ Title _____ Date _____ |
| | THIRD LIENHOLDER | | THIRD RELEASE | Interest in this vehicle is released by: Signature _____ Title _____ Date _____ |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
KEEP IN A SAFE PLACE - NOT IN VEHICLE

L16144171

VOID IF ALTERED

# STATE OF MAINE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 1GRAA0628JW120286 | 2018 | GDAN | TL | RF | 16759268 |

| NEW / USED | PURCHASE DATE | ISSUE DATE | PRIOR TITLE | ODOMETER |
|---|---|---|---|---|
| USED | 01/31/2022 | 03/02/2022 | OH | |

MAIL TO

**PEOPLES CAPITAL AND LEASING CORP**
**850 MAIN STREET BC03**
**BRIDGEPORT, CT   06604**

OWNER(S) NAME AND ADDRESS
**FREON LOGISTICS**
**7309 GLITTER WAY**
**BAKERSFIELD, CA   93313**

 

**Secretary of State**          **Bureau of Motor Vehicles**

| | | Interest in this vehicle is released by: |
|---|---|---|
| **FIRST LIENHOLDER** | 01/31/2022<br>PEOPLES CAPITAL AND LEASING CORP<br>850 MAIN STREET BC03<br>BRIDGEPORT, CT   06604 | **FIRST RELEASE** — Signature<br>Title          Date |
| **SECOND LIENHOLDER** | | **SECOND RELEASE** — Interest in this vehicle is released by:<br>Signature<br>Title          Date |
| **THIRD LIENHOLDER** | | **THIRD RELEASE** — Interest in this vehicle is released by:<br>Signature<br>Title          Date |

**THIS CERTIFICATE IS PRIMA FACIE PROOF OF OWNERSHIP ISSUED IN COMPLIANCE WITH STATE OF MAINE LAW**
**KEEP IN A SAFE PLACE - NOT IN VEHICLE**

L16144172

VOID IF ALTERED



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X7ND782879 | 2022 | PTRB | DS | G | 5QKE881 | 01-31-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17756 | | | 1648 | CA | 01-30-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

ACTUAL

**Liens(s)**
PEOPLES CPTL LSG CORP
850 MAIN ST BX 03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0112879

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: NQOASM6MZW

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBDP9X8PD850630 | 2023 | PTRB | DS | G | 5QKF177 | 03-31-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17156 | | | 1797 | CA | 05-02-2022 |

Vehicle Color

| Full Name of Owner(s) | Liens(s) |
|---|---|
| FREON LOGISTICS | PEOPLES CPTL/LSG CORP |
| 7309 GLITTER WAY | 850 MAIN ST BC 03 |
| BAKERSFIELD, CA 933130000 | BRIDGEPORT, CT 066040000 |

ACTUAL

Lien Date:
ELT Number: EAA
LTN: 6499-0120630

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: A2G4IXDWXN

## THIS IS NOT A TITLE

This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBDP9X1PD850629 | 2023 | PTRB | DS | G | 5QKF176 | 03-31-2022 |

| Weight | New/Used | | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|---|
| 17236 | | | | 1759 | CA | 05-02-2022 |

Vehicle Color

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

ACTUAL

Liens(s)
PEOPLES CPT/LSG CORP
850 MAIN ST BC 03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0120629

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: A2G4IXDWXN

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKYL49X0GJ117002 | 2016 | KW | VN | V | 4QKO445 | 03-31-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 16303 | | | 0 | CA | 05-05-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0137002

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: QWYZCFZQNW

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKYL49X2GJ117003 | 2016 | KW | VN | V | 4QKO446 | 03-31-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 16323 | | | 0 | CA | 05-05-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0137003

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: QWYZCFZQNW

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**





# DDI Technology
# Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKYL49X9GJ117001 | 2016 | KW | VN | V | 4QKO327 | 03-31-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 16252 | | | 0 | CA | 04-10-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0137001

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: FAEETRWNSI

## THIS IS NOT A TITLE
**This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X0ND782853 | 2022 | PTRB | DS | G | 5QFT617 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17796 | | | 1692 | CA | 06-23-2021 |

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0012853

ACTUAL

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: PGU3IF5N95

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X8ND782857 | 2022 | PTRB | DS | G | 5QFT618 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17766 | | | 1624 | CA | 06-23-2021 |

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0012857

ACTUAL

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: PGU3IF5N95

**THIS IS NOT A TITLE**
**This is an official Premier eTitleLien® Report**
**generated by a customer of DDI Technology.**





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X1ND782859 | 2022 | PTRB | DS | G | 5QFT619 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17716 | | | 1587 | CA | 06-23-2021 |

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0012859

ACTUAL

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: PGU3IF5N95

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBD49X1ND782893 | 2022 | PTRB | DS | G | 5QFT620 | 05-31-2021 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17816 | | | 1695 | CA | 06-23-2021 |

Full Name of Owner(s)
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

Liens(s)
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03/RC871
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0012893

ACTUAL

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: PGU3IF5N95

**THIS IS NOT A TITLE**
**This is an official Premier eTitleLien® Report**
**generated by a customer of DDI Technology.**





**CERTIFICATE OF ORIGIN FOR A VEHICLE**

A **PACCAR** COMPANY

## PETERBILT MOTORS COMPANY

DATE
JULY 11, 2022

INVOICE NO.
N/A

VEHICLE IDENTIFICATION NO.
1XPBDP9X7PD864258

YEAR
2023

MAKE
PETERBILT

BODY TYPE
TRACTOR

SHIPPING WEIGHT
17,486 LB

H.P. (S.A.E)
485.0

G.V.W.R
53,200 LB

NO. CYLS.
6

SERIES OR MODEL
MODEL 579

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

G800
GOLDEN STATE PETERBILT
1450 SOUTH UNION AVE.

BAKERSFIELD CA 93307

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

PETERBILT MOTORS COMPANY

BY:

(SIGNATURE OF AUTHORIZED REPRESENTATIVE)    (AGENT)

1700 WOODBROOK STREET
DENTON, TEXAS 76205
CITY-STATE

PE 1155696

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is now and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.

**FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

## DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1

NAME OF PURCHASER(S) **FREON LOGISTICS**

ADDRESS **7309 GLITTER WAY BAKERSFIELD CA 93313**

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____
before this _____ day of _____ Year_____

County of _____
_____ Notary Public

**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

## DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____
before this _____ day of _____ Year_____

County of _____
_____ Notary Public

**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

## DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____
before this _____ day of _____ Year_____

County of _____
_____ Notary Public

**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

## DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

State of _____
before this _____ day of _____ Year_____

County of _____
_____ Notary Public

**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

## ODOMETER DISCLOSURE FOR RETAIL SALE

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading_____ No Tenths. ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.

**WARNING ODOMETER DISCREPANCY**

Signature(s) of Sellers(s) _____

Printed Names(s) of Sellers(s) _____ Dealer's No. _____

Date of Statement_____ Date of Sale_____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me

Signature(s) of Purchaser(s)_____
before this _____ day of _____ Year_____

Printed Names(s) of Purchasers(s)_____
_____ Notary Public

Company Name (If Applicable)_____
State of _____

Address of Purchaser(s)_____
County of _____

**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

## LIENHOLDER

1st lien in favor of **PEOPLES CAPITAL AND LEASING CORP**

whose address is **850 MAIN ST BC-03 BRIDGEPORT CT 06604**

2nd lien in favor of _____

whose address is _____



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBDP9XXPD850631 | 2023 | PTRB | DS | G | 5QKF310 | 04-30-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17396 | | | 1795 | CA | 05-20-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

ACTUAL

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0140631

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: R30RQF8EWZ

THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBDP9X1PD850632 | 2023 | PTRB | DS | G | 5QKF311 | 04-30-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 17226 | | | 1819 | CA | 05-20-2022 |

Vehicle Color

| Full Name of Owner(s) | Liens(s) |
|---|---|
| FREON LOGISTICS | PEOPLES CPTAL LSG CORP |
| 7309 GLITTER WAY | 850 MAIN ST BC03 |
| BAKERSFIELD, CA 933130000 | BRIDGEPORT, CT 066040000 |

ACTUAL

Lien Date:
ELT Number: EAA
LTN: 6499-0140632

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: R30RQF8EWZ

## THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.





# DDI Technology
# Premier eTitleLien®

## Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1XPBDP9X3PD850633 | 2023 | PTRB | DS | G | 5QKF312 | 04-30-2022 |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 14246 | | | 1807 | CA | 05-20-2022 |

Vehicle Color

**Full Name of Owner(s)**
FREON LOGISTICS
7309 GLITTER WAY
BAKERSFIELD, CA 933130000

ACTUAL

**Liens(s)**
PEOPLES CPTAL LSG CORP
850 MAIN ST BC03
BRIDGEPORT, CT 066040000

Lien Date:
ELT Number: EAA
LTN: 6499-0140633

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: R30RQF8EWZ

## THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.



EXHIBIT J

# Secretary of the State of Connecticut

PHONE: 860-509-6003 • EMAIL: crd@ct.gov • WEB: www.concord-sots.ct.gov

**OFFICE USE ONLY**
*(label)*

# CERTIFICATE OF AMENDMENT
## STOCK CORPORATION

• *Use ink.*  • *Print or type.*
• *Attach additional 8 1/2 x 11 sheets if necessary*

---

**FILING PARTY** *(confirmation will be sent to this address)*:

NAME:  CSC

ADDRESS:  251 Little Falls Drive

CITY:  Wilmington

STATE:  DE          ZIP:  19808

**FILING FEE: $100.00**

*Make checks payable to "Secretary of the State"*

---

**1. NAME OF CORPORATION** *(required)* *(must exactly match the name on record with our office, including the business designation, (e.g., Inc., Corp, Corporation, etc):*

People's Capital and Leasing Corp

---

**2. STATEMENT OF AMENDMENT** *(required)* *(check underline one of the following statements, 2A, 2B, or 2C)*

THE CERTIFICATE OF INCORPORATION IS:

[✓]  **2A** **AMENDED ONLY.** *In section 3A below, provide the full text of any amendments to the corporation's certificate of incorporation, including any name changes.*

[ ]  **2B** **AMENDED AND RESTATED.** *In section 3A below, provide the full text of each amendment **and** attach a complete restatement of the corporation's certificate of incorporation, incorporating the amendments.*

[ ]  **2C** **RESTATED.** *Attach one document consolidating all previous amendments into the corporation's Certificate of Incorporation.*

---

**3. CHECK THE BOX 3A, 3B ON THE NEXT PAGE, OR BOTH, AS APPLICABLE**

[✓]  **3A**. **TEXT OF AMENDMENTS / SPECIFIC PUBLIC BENEFITS**
*(if electing Benefit Corporation status in Section 3B on the next page, provide the text of the specific public benefits here, if any.)*

The name of the corporation is M&T Capital and Leasing Corporation.

---

[ ] *check box if additional pages are attached*

OFFICE USE ONLY
*(label)*

---

☐ **3B. STATEMENT ELECTING BENEFIT CORPORATION STATUS**
*(**Must** check box 3B to elect benefit corporation status)*

The corporation elects to be a Benefit Corporation. In addition to the stated purposes for which the corporation is formed, the corporation shall also have the purpose to create a general public benefit as defined in the Connecticut Benefit Corporation Act.

*NOTE:* If the Benefit Corporation adopts one or more specific public benefits <u>in addition to the</u> required <u>general public benefit</u>, check box 3A in addition to 3B, and set forth the specific public benefits in the space provided for in section 3A above.

---

**4. STATEMENT OF APPROVAL** *(required)* *(must check the box for only **one** statement, 4A, 4B, 4C **or** 4D)*

☑ **4A** THE AMENDMENT WAS APPROVED BY SHAREHOLDERS IN THE MANNER REQUIRED BY SECTIONS 33-600 TO 33-998 OF THE CONNECTICUT GENERAL STATUTES, AND BY THE CERTIFICATE OF INCORPORATION.

☐ **4B** THE AMENDMENT WAS APPROVED BY THE INCORPORATORS. NO SHAREHOLDER APPROVAL WAS REQUIRED.

☐ **4C** THE AMENDMENT WAS APPROVED BY THE BOARD OF DIRECTORS. NO SHAREHOLDER APPROVAL WAS REQUIRED.

☐ **4D** THE AMENDMENT WAS APPROVED BY A MINIMUM STATUS VOTE, AS REQUIRED BY THE CONNECTICUT BENEFIT CORPORATION ACT. SELECT D IF A MINIMUM STATUS VOTE RESULTED IN THE ELECTION OF BENEFIT CORPORATION STATUS.

---

**5. EXECUTION/SIGNATURE** *(required)* *(subject to penalty of false statement)*

**DATE** *(mm/dd/yyyy):* _____ / _____ / _____

| NAME OF SIGNATORY *(print or type)* | CAPACITY/TITLE OF SIGNATORY *(print or type)* | SIGNATURE |
|---|---|---|
| Marie King | Corporate Secretary | ▶ *Marie King* |

# EXHIBIT K



**Evan S. Goldstein**
(t) 860.548.2609
(f) 860.548.2680
egoldstein@uks.com

December 22, 2022

*Via Certified Mail – Return Receipt Requested and*
*First Class Mail*

Amarinder Singh Gorwara            Amarinder Singh Gorwara
8000 Kroll Way, Apt. 11            8200 Laurelglen Avenue, Apt. 1906
Bakersfield, CA 93311             Bakerfield, CA 93311

Hardeep Singh                 Hardeep Singh
1135 Enos Lane                8200 Laurelglen Avenue, Apt. 1906
Bakersfield, CA 93314            Bakerfield, CA 93311

> Re:    *Notice of Default, Acceleration, and Demand for Payment against guarantors*
> *Amarinder Singh Gorwara and Hardeep Singh*

Dear Mr. Gorwara and Mr. Singh:

M&T Capital and Leasing Corporation[1] ("M&T") is herein formally notifying guarantors Amarinder Singh Gorwara and Hardeep Singh (collectively, the "Guarantors") that the Master Loan and Security Agreement No. 5113 dated as of February 15, 2018, between Freon Logistics[2] ("Freon") and M&T ("Master Loan Agreement"); Schedule No. 001 to Master Loan and Security Agreement No. 5113 dated as of February 15, 2018, between Freon and M&T; those certain fifteen (15) Equipment Finance Agreements dated between April 23, 2021 and August 2, 2022, with contract numbers TN-000062572, TN-000066471, TN-000067785, TN-000068191, TN-000068935, TN-000070052, TN-000070680, TN-000071548, TN-000072000, TN-000076104, TN-000076756, TN-000080705, TN-000081385, TN-000088137, and TN-000083308, between Freon and M&T (collectively, the "Equipment Finance Agreements"); the Individual Guaranties made by Amarinder Singh Gorwara in favor of M&T

---

[1] As of April 2, 2022, People's United Bank, N.A., a national banking association located in Bridgeport, Connecticut, merged with and into M&T Bank, a New York state-chartered bank with a principal place of business located at One M&T Plaza, Buffalo, New York, with M&T Bank as the surviving bank. Pursuant to the merger, People's Capital and Leasing Corp. became a subsidiary of M&T Bank as of April 2, 2022. People's Capital and Leasing Corp. amended its name with the Connecticut Secretary of State on August 29, 2022 to M&T Capital and Leasing Corp.

[2] On November 8, 2022, Freon Logistics filed a petition under Chapter 11 in the United States Bankruptcy Court for the Eastern District of California (Fresno), Case No. 22-11907, before the Honorable Rene Lastreto II. On December 14, 2022, the case was converted to one under Chapter 7 and Jeffrey Vetter has been appointed as the Chapter 7 Trustee.

Amandeer Singh Cheema
Hardeep Singh
Page 2
December 22, 2022

guaranteeing the Master Loan Agreement and each of the Equipment Finance Agreements; and the Individual Guaranties made by Hardeep Singh in favor of M&T guaranteeing the Master Loan Agreement and each of the Equipment Finance Agreements (collectively, and as amended from time to time, the "Loan Documents"), are in default.

The Guarantors have failed to comply with all the covenants and obligations under the Loan Documents, including but not limited to their failure to timely pay the amounts due under the Loan Documents. As a result, the Guarantors are now in Default and M&T is declaring all obligations under the Loan Documents immediately due and payable, for which demand is hereby made. The Guarantors owe to M&T the accelerated balance of $4,557,301.86. The Guarantors are also responsible for all costs and expenses associated with the Loan Documents, which now include all legal fees or expenses incurred by M&T in the collection of the amounts due and owing under the Loan Documents or the foreclosure of any security interest, lien or collateral interest granted to M&T, as well as default interest, which continues to accrue pursuant to the Loan Documents.

Accordingly, M&T demands from the Guarantors payment in the amount of $4,557,301.86 as of November 8, 2022, plus costs, expenses, and attorneys' fees, all of which continue to accrue, as well as default interest that continues to accrue pursuant to the Loan Documents. M&T will accept payment in the form of bank or certified funds. If payment in full is not received within five (5) business days after the date of this demand letter, M&T has instructed its counsel, Updike, Kelly & Spellacy, P.C. to initiate an action against you without further notice or demand. Failure to resolve the Guarantors' default within the time set forth above will result in M&T enforcing its rights pursuant to the Loan Documents, including but not limited to seeking money damages.

Any forbearance or extensions under the Loan Documents by M&T prior to the date hereof or hereinafter shall not imply any obligation or commitment of M&T to further forbear and does not constitute a course of dealing or a course of conduct. The acceptance of any partial payment of any of your obligations to M&T shall not be deemed a waiver or limitation of any of M&T's rights reserved herein as to the full amount of any unpaid balance. M&T reserves all rights and remedies available to it under the Loan Documents and applicable law, all of which are expressly hereby reserved.

The Loan Documents shall remain in full force and effect in accordance with its terms and conditions. Nothing in this letter, any other correspondence, any oral communication between M&T and the Guarantor should be construed to be a waiver, modification or release of any breach or default, whether now existing or hereafter arising, or of any of M&T's rights and remedies arising under the Loan Documents or common law.

In the event that it becomes necessary to initiate litigation to resolve this debt and enforce M&T's rights and remedies under the Loan Documents, all costs incurred by M&T (including but not limited to legal counsel, interest, costs, expenses, collection agents, and repair costs) will be your responsibility, as stated in the Loan Documents.



3807400

Amarinder Singh Gorwara
Hardeep Singh
Page 3
December 22, 2022

Please give me a call immediately to discuss default, demand, ability to make payments and the resolution of your default without M&T's commencing legal proceedings against the Guarantors Amarinder Singh Gorwara and Hardeep Singh.

Respectfully,
M&T Capital and Leasing Corporation

Evan S. Goldstein, Esq.



3807400