Evan S. Goldstein (pro hac vice pending)
UPDIKE, KELLY & SPELLACY, P.C.
225 Asylum Street, 20th Floor
Hartford, CT 06013
Telephone:    860-548-2609
Facsimile:    860-548-2680
Email: egoldstein@uks.com

W. Scott Cameron, State Bar No. 229828
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    916.558.6000
Facsimile:    916.446.1611
Email: scameron@weintraub.com

*Attorneys for Plaintiff M&T Bank f/k/a M&T Capital and Leasing Corporation f/k/a People's Capital and Leasing Corp.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M&T Capital and Leasing Corporation,<br><br>   Plaintiff,<br><br>vs.<br><br>Freon Logistics,<br><br>   Defendant. | Case No. 2:23-cv-01171-WBS-CSK<br><br>**M&T BANK's REVISED NOTICE AND MOTION FOR DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT FREON LOGISTICS**<br><br>[Fed. R. Civ. P. 55(b)(2)]<br><br>Date: August 28, 2025<br>Time: 10:00 a.m.<br>Courtroom: 25<br>Location: 501 I Street, Sacramento, CA 95814 |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, ALL DEFENDANTS HEREIN AND THEIR RESPECTIVE ATTORNEYS IF ANY:**

**PLEASE TAKE NOTICE** that on August 28, 2025 at 10:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 25 of the above-entitled Court, located at 501 I Street, Sacramento, California 95814, plaintiff M&T Bank f/k/a M&T Capital and Leasing Corporation ("Plaintiff" or "M&T"), will present its Revised Motion for Default Judgment against defendant

Freon Logistics ("Freon" or "Defendant").

This Motion is being made pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Rules") on the grounds that the Defendant has failed to plead or otherwise defend in response to the Plaintiff's complaint. The Clerk entered the default of Defendant on October 27, 2023 [Doc. No. 12]. The Defendant has not filed any responsive pleadings or requested that the entry of default be set aside.

The Defendant is not a minor and is not an incompetent person or in the military service or otherwise exempted under the Solders' and Sailors' Civil Relief Act of 1940. The Defendant has not appeared in this action.

Accordingly, under Rule 55(b)(2), Plaintiff is entitled to a Default Judgment against the Defendant on account of the claims pleaded in the Complaint. In particular, Plaintiff is entitled to a judgment against Defendant on Plaintiff's cause of action for Breach of Contract in the amount of $3,441,172.57 plus interest pursuant to 28 U.S.C. § 1961(a) and a judgment against Defendant on its cause of action for possession of personal property as to the vehicles described as follows:

- Seven (7) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X0ND782853, 1XPBD49X1ND782893, 1XPBD49XXND782861, 1XPBD49X5ND782864, 1XPBD49X0ND782819, 1XPBD49X0ND782822, 1XPBD49X1ND782862;
- Two (2) 2016 Kenworth T680, Serial Nos. 1NKYL49X0GJ117002, 1NKYL49X2GJ117003; and
- Six (6) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos. 1GRAA0624JW103081, 1GRAA0620JW116104, 1GRAA0623JW116114, 1GRAA0627JW116102, 1GRAA0624JW116123, 1GRAA062XJW120287.

This Motion is based on the entered default in this matter, the Complaint, this Notice, the Memorandum of Points and Authorities submitted herewith, the Declarations of Robert Van Tine, Evan S. Goldstein, and W. Scott Cameron, and the pleadings, files and other matters that may be presented at the hearing.

WHEREFORE, Plaintiff seeks the following:

1.      Entry of an Order granting this Motion in the form of the Proposed Order submitted herewith;

2. Entry of a judgment, in the form of the Proposed Default Judgment submitted herewith (i) enjoining the Defendant from using, or restricting access to, the collateral at issue and (ii) ordering Defendant to disclose the precise location of such collateral to Plaintiff and recover such collateral in the hands of third parties for delivery to Plaintiff, and (iii) granting Plaintiff immediate possession of the collateral;

3. Entry of a judgment, in the form of the Proposed Default Judgment submitted herewith, against Defendant in the amount of $3,441,172.57 plus post-judgment interest pursuant to 28 U.S.C. § 1961(a); and

4. Other relief as the Court may deem just and appropriate.

Dated: July 3, 2025

**weintraub tobin** chediak coleman grodin
law corporation

By: /s/ W. Scott Cameron
W. Scott Cameron

Attorneys for Plaintiff M&T Bank f/k/a M&T Capital and Leasing Corporation f/k/a People's Capital and Leasing Corp.

Evan S. Goldstein (pro hac vice pending)
UPDIKE, KELLY & SPELLACY, P.C.
225 Asylum Street, 20th Floor
Hartford, CT 06013
Telephone:    860-548-2609
Facsimile:    860-548-2680
Email: egoldstein@uks.com

W. Scott Cameron, State Bar No. 229828
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:    916.558.6000
Facsimile:    916.446.1611
Email: scameron@weintraub.com

*Attorneys for Plaintiff M&T Bank f/k/a M&T Capital and Leasing Corporation f/k/a People's Capital and Leasing Corp.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M&T Capital and Leasing Corporation,<br><br>　　Plaintiff,<br><br>vs.<br><br>Freon Logistics,<br><br>　　Defendant. | Case No. 2:23-cv-01171-WBS-CSK<br><br>**M&T BANK's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS REVISED MOTION FOR DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT FREON LOGISTICS**<br><br>[Fed. R. Civ. P. 55(b)(2)]<br><br>Date: August 28, 2025<br>Time: 10:00 a.m.<br>Courtroom: 25<br>Location: 501 I Street, Sacramento, CA 95814 |

### I.    Introduction

Plaintiff M&T Bank f/k/a M&T Capital and Leasing Corporation ("M&T" or "Plaintiff") hereby submits its Memorandum of Points and Authorities in Support of its Revised Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendant Freon

4

M&T BANK's REVISED NOTICE AND MOTION FOR DEFAULT JUDGMENT BY COURT

Logistics ("Freon" or "Defendant") for its failure to appear or otherwise defend this action.

As set forth herein, M&T is entitled to a default judgment against Defendant on its claim for possession of the Missing Equipment (as defined herein) and damages as alleged in the Complaint. The allegations in M&T's Complaint, which are accepted as true in light of Defendant's default, establish M&T's claims against the Defendant. Moreover, as set forth more fully below, each of the discretionary factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) weigh in favor of default judgment. In support of its Motion, M&T respectfully submits the Declarations of Robert Van Tine ("Van Tine Decl." attached hereto as **Exhibit 1**), Evan S. Goldstein ("Goldstein Dec." attached hereto as **Exhibit 2**), and W. Scott Cameron, Esq. ("Cameron Decl." attached hereto as **Exhibit 3**) to establish M&T's claim for possession and for a sum certain.

## II.     Procedural History

M&T initiated this action against Defendant pursuant to its Complaint dated June 20, 2023 [Doc. No. 1]. Plaintiff made due and legal service on Defendant in accordance with Fed. R. Civ. P. 4(h), Cal. Corp. Code § 1702(a), and this Court's Order dated September 19, 2023 [ECF No. 8] authorizing Plaintiff to serve Defendant through the California Secretary of State. Plaintiff served the documents required to be served upon Defendant by delivering them to the Deputy for the Secretary of State on September 21, 2023. Pursuant to Cal. Corp. Code § 1702(a), service upon the Secretary of State is deemed complete on the tenth day after delivery. Accordingly, service on Defendant was complete on October 1, 2023. *See* Doc. No. 10.

On or about October 25, 2023, M&T requested entry of default against the Defendant for its failure to appear [Doc. No. 11]. On or about October 27, 2023, the Clerk entered default against the Defendant [Doc. No. 12]. To date, the Defendant has not entered an appearance or submitted a responsive pleading.

///

### III. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure requires the Clerk of the Court to enter default when it is shown by affidavit that a party has failed to plead or otherwise defend an action. Rule 55(b)(1) of the Federal Rules of Civil Procedure governs the process for obtaining a default judgment from the Clerk:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1). Federal Rule of Civil Procedure 55(b)(2) governs "in all other cases" and requires the party seeking default judgment to apply to the Court for such judgment. The Federal Rules thus set forth a two-step process for the entry of default judgment. First, the Clerk must enter a default where the plaintiff demonstrates that the defendant has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). Second, following entry of default, the Clerk or Court, as the case may be, may enter a default judgment upon motion by the plaintiff. Fed. R. Civ. P. 55(b). M&T has satisfied the requirements for entry of a default judgment. Upon request by M&T, the Clerk of this Court entered default against the Defendant on October 27, 2023. M&T now seeks default judgment pursuant to Fed. R. Civ. P. 55(b).

In addition, the Ninth Circuit has set forth the following factors for courts to consider in determining a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages." *Commercial Credit Group Inc. v. SHR Transport, Inc.*, No. 2:21-cv-01020, 2022 WL 8048993, at *3 (E.D. Cal. Oct. 14, 2022).

## IV. Essential Facts

### 1. Master Loan Agreement

On or about February 15, 2018, People's Capital and Leasing Corp. ("People's Capital") and Freon entered into Master Loan and Security Agreement No. 5113 ("Master Loan Agreement"). On or about February 15, 2018, People's Capital and Freon entered into Schedule No. 001 to the Master Loan Agreement ("Schedule No. 1" and together with the Master Loan Agreement, the "Loan Agreement"), pursuant to which People's Capital financed and obtained a security interest in certain equipment identified therein (the "Loan Equipment").

To evidence its interest in the Loan Equipment, People's Capital is listed as sole lienholder on the Certificates of Title for a Vehicle for the Loan Equipment. Pursuant to the terms of the Master Loan Agreement and Schedule No. 1, Freon agreed to pay People's Capital sixty (60) consecutive monthly payments of $6,732.08. The total principal value of Schedule No. 1 was $334,075.00.

### 2. Equipment Finance Agreements

Between April 23, 2021 and August 2, 2022, Freon and Top Mark Funding, LLC ("Top Mark") entered into fifteen (15) Equipment Finance Agreements (collectively, the "Equipment Finance Agreements"). Between April 23, 2021 and August 2, 2022, Freon and Top Mark entered into fifteen (15) Schedule A's corresponding to each of the Equipment Finance Agreements ("EFA Schedules"), pursuant to which Top Mark financed and obtained a security interest in certain equipment identified therein (collectively, the "EFA Equipment" and with the Loan Equipment, the "Equipment").

On or about August 27, 2020, pursuant to a Master Sale of Chattel Paper and Security Agreement ("Master Sale Agreement") between Top Mark and People's Capital, Top Mark sold to People's Capital all its rights, interest in and title to the Equipment Finance Agreements and EFA

Schedules (collectively, the "EFA Documents"), together with all monies due, monies to become due, and all other agreements, instruments and documents related thereto, and the right to exercise all rights and remedies conferred by the EFA Documents.

To evidence its interest in the EFA Equipment, People's Capital is listed as sole lienholder on the Certificates of Title for a Vehicle for the EFA Equipment. Pursuant to the Equipment Finance Agreements and EFA Schedules, Freon agreed to pay People's Capital certain monthly payments as indicated therein.

### 3. Merger and Default

As of April 2, 2022, People's United Bank, N.A., a national banking association located in Bridgeport, Connecticut, merged with and into M&T Bank, a New York state-chartered bank with a principal place of business located at One M&T Plaza, Buffalo, New York, with M&T Bank as the surviving bank. People's Capital became a subsidiary of M&T Bank as of April 2, 2022. On or about August 29, 2022, People's Capital amended its name with the Connecticut Secretary of State to M&T Capital and Leasing Corp. As of March 31, 2025, M&T Capital and Leasing Corporation merged with and into M&T Bank, with M&T Bank as the surviving entity. Accordingly, M&T is successor by merger of the Loan Agreement and the EFA Documents (collectively, the "Loan Documents").

On December 22, 2022, M&T sent to Freon a Notice of Default, Acceleration, and Demand for Payment ("Default Letter"), which default was the result of Freon's failure to make all payments due under the terms of the Loan Documents. Pursuant to the Loan Documents, Freon remains obligated and responsible to M&T for the outstanding balance remaining in the amount of $3,441,172.57 as of June 25, 2025, which sum includes default interest, costs, expenses, and attorneys' fees. M&T has performed all its obligations in accordance with the Loan Documents.

M&T is the legal and rightful owner of the Loan Documents and has not assigned or transferred its rights in same.

**4. Freon Logistic Bankruptcy**

On or about November 8, 2022, Freon filed a petition for relief under Chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California (Fresno), Case No. 22-11907, before the Honorable Rene Lastreto II. On December 14, 2022, the case was converted to one under Chapter 7 of the Bankruptcy Code. Jeffrey Vetter was appointed as the Chapter 7 Trustee.

On or about December 14, 2022, the Bankruptcy Court approved and entered a stipulation for relief from the automatic stay between M&T and Freon, pursuant to which Freon was ordered to immediately provide the location of the Equipment and immediately deliver and surrender the Equipment to M&T. Under this stipulation, M&T was not permitted to dispose of the Equipment. Thereafter, on or about February 9, 2023, the Bankruptcy Court entered an order granting M&T complete relief from the automatic stay to repossess the Equipment and to dispose of the Equipment in accordance with Article 9 of the Uniform Commercial Code. To date, M&T has been unable to repossess or locate fifteen (15) remaining units of Equipment (the "Missing Equipment"), specifically:

- Seven (7) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X0ND782853, 1XPBD49X1ND782893, 1XPBD49XXND782861, 1XPBD49X5ND782864, 1XPBD49X0ND782819, 1XPBD49X0ND782822, 1XPBD49X1ND782862;
- Two (2) 2016 Kenworth T680, Serial Nos. 1NKYL49X0GJ117002, 1NKYL49X2GJ117003; and
- Six (6) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos. 1GRAA0624JW103081, 1GRAA0620JW116104, 1GRAA0623JW116114, 1GRAA0627JW116102, 1GRAA0624JW116123, 1GRAA062XJW120287.

Freon has failed or refused to provide accurate information regarding the location or general whereabouts of the Missing Equipment.

## V. The *Eitel* Factors Weigh in Favor of Entry of Default Judgment Against the Defendant

As analyzed below, each of the *Eitel* factors strongly weighs in favor of the Court exercising its discretion to enter judgment by default in favor of M&T.

### I. Possibility of Prejudice

If default judgment is not entered, M&T will be seriously prejudiced because M&T would "be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *Elektra Entertainment Group, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). *See also BMO Harris Bank N.A. v. Singh*, No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *6 (E.D. Cal. Oct. 4, 2016) (noting that plaintiff would "effectively be denied a remedy for the violations alleged in this action unless Defendant appears").

The Defendant has not only breached the Loan Documents with M&T but has also violated the Bankruptcy Court's Order directing the Defendant to immediately deliver and surrender the Equipment to M&T. Absent entry of default judgment, M&T will have no other recourse to obtain possession of the Missing Equipment or recover its monetary damages. M&T has exhausted its options to locate the Missing Equipment and relies on the Defendant to provide the location of such equipment.

The Defendant owes to M&T an outstanding balance of over $3 million. M&T will be unable to mitigate its damages unless and until it is able to locate and repossess the Missing Equipment. The Defendant will be permitted to continuously ignore its contractual duties to repay the loans made by M&T to Defendant if default judgment is not entered. M&T's lack of other recourse represents sufficient likelihood of prejudice. *See, e.g., Am. Automobile Assoc., Inc. v. Lopez*, No. 2:16-cv-8730-SVW-SK, 2017 WL 2905999, at *4 (C.D. Cal. May 30, 2017) ("Prejudice

can be shown if denying default judgment would leave a plaintiff without a proper remedy."). Therefore, this factor weighs in favor of granting default judgment.

## II. The Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors examine the merits of the plaintiff's substantive claims and the sufficiency of the complaint. Upon default, the well pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, the Complaint contains two counts, one for possession of the Missing Equipment and one for breach of contract. The merits of these claims are analyzed below.

### Claim for Monetary Damages

Count Two of M&T's Complaint alleges breach of contract against Defendant. The Loan Agreement is governed by Connecticut law and the EFA Documents are governed by California law. Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Sullivan v. Thorndike*, 104 Conn. App. 297, 303 (2007). The Connecticut Appellate Court has also held that causation is an additional element but noted that "proof of causation more properly is classified as part and parcel of a party's claim for breach of contract damages. . . . The causation requirement focuses on whether a loss may fairly be considered as arising naturally, i.e., according to the usual course of things, from such breach of contract itself." *Meadowbrook Center, Inc. v. Buchman*, 149 Conn. App. 177, 186, 187 (2014).

Similarly, to prevail on a breach of contract claim under California law, a plaintiff must establish (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance under the contract; (3) breach by the defendant; and (4) causation of damages. *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).

Here, the Complaint alleges that People's Capital, M&T's predecessor in interest, entered

into the Loan Agreement and EFA Documents with Defendant, pursuant to which the Defendant agreed to make certain monthly payments in exchange for the use and possession of the Equipment. To secure the Defendant's payment and performance under the Loan Documents, the Defendant granted People's Capital a first-priority security interest in the Equipment. People's Capital subsequently became a subsidiary of M&T Bank by merger and amended its name to M&T Capital and Leasing Corporation. The Defendant defaulted under the terms of the Loan Documents by, *inter alia*, failing to make all payments when due. M&T notified the Defendant of the default, accelerated balances due under the Loan Documents, and demanded that Defendant comply with its obligations under the Loan Documents.

Thereafter, the Defendant filed for bankruptcy. However, M&T received relief from stay to pursue its rights and remedies against the Defendant. Despite M&T's demand and the fact that M&T has performed all its obligations under the Loan Documents, Defendant has failed to cure its monetary default. The Defendant's default has caused M&T damages in the form of unpaid principal, interest, and fees, which total $3,441,172.57 after application of all sales proceeds of the repossessed equipment. These allegations are sufficient to allege a breach of contract claim under both Connecticut and California law.

### Claim for Possession

Count One of M&T's Complaint seeks recovery of the Missing Equipment. Pursuant to Connecticut General Statute § 52-515, an "action of replevin may be maintained to recover any goods of chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner . . . ."

> In order to prevail on a claim of replevin, a plaintiff must establish that (1) the disputed item qualifies as "goods or chattels" within the meaning of Section 52-515; (2) the plaintiff has a "property interest" in the goods or chattels; (3) the plaintiff has a "right to immediate possession" of the goods or chattels; and (4) the defendant has "wrongfully detained" the goods or chattels from him.

*Richmond v. F-40 Restoration, LLC*, 467 F.Supp.3d 20, 25 (D. Conn. 2020) (citing *Cornelio v. Stamford Hosp.*, 246 Conn. 45 (1998).

Similarly, pursuant to California Civil Code § 3380, "[a]ny person having the possession or control of a particular article of personal property, of which he is not the owner, may be compelled specifically to deliver it to the person entitled to its immediate possession." "To sustain an action for the recovery of specific personal property the plaintiff must have the right to immediate and exclusive possession of such property at the time of the commencement of the action, although it is not essential that he should show that he ever had such actual possession of it." *Commercial Discount Co. v. Cowen*, 18 Cal. 2d 610, 613 (1941).

First, Conn. Gen. Stat. § 52-515 does not define "goods or chattels." Black's Law Dictionary (11th ed. 2019), however, defines "goods and chattels" as "personal property of any kind; tangible personal property only." The Equipment is both personal property and tangible property. M&T submits that the Equipment constitutes "goods" under Conn. Gen. Stat. § 52-515.

Second, M&T has a property interest in the Equipment as the sole lienholder on the Certificates of Title for a Vehicle of the Equipment. Third, Section 15 of the Master Loan Agreement provides that upon an event of default, "[t]he Lender shall have all of the rights and remedies of a Secured party under the Uniform Commercial Code and all other rights and remedies available to creditors at law or in equity. Without limiting the generality of the foregoing, Lender is hereby authorized and empowered, with the aid and assistance of any person or persons, to enter any premises where the Collateral or any part thereof is, or may be, placed and to assemble and/or remove same and/or to render it unusable and sell, lease or otherwise dispose of such Collateral . . . ." Section 11 of the Equipment Finance Agreements also provides that upon an event of default, M&T "may disable or foreclose on, sell or lease the Equipment as permitted by law."

As stated above, the Defendant defaulted under the terms of the Loan Documents when it

failed to make all payments when due. Upon the Defendant's default, M&T had the immediate right to possession of the Equipment, including the Missing Equipment.

Fourth and finally, despite M&T's demand and despite being ordered by the Bankruptcy Court to provide the location of the Equipment and immediately deliver and surrender the Equipment to M&T, the Defendant has failed to provide such locations and to deliver and surrender the Missing Equipment to M&T. The Defendant has wrongfully detained the Missing Equipment. These allegations are sufficient to establish M&T's right to possession of the Missing Equipment under both Connecticut and California law.

M&T has meritorious substantive claims and has pleaded sufficient allegations in its Complaint. Accordingly, *Eitel* factors two and three weigh in favor of default judgment.

### III. The Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the defendant's conduct. This requires that the court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). The Court may consider the plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable. *BR North 223, LLC v. Glieberman*, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012).

The sum of money M&T seeks to recover is $3,441,172.57 as of June 25, 2025, which reflects the amounts due under the Loan Documents after application of the sale proceeds from the sale of the Equipment that has been located and repossessed, plus attorneys' fees and default interest. This amount reflects the parties' agreement that Freon would make certain monthly payments to M&T in exchange for its possession and use of the Equipment for its business.

Pursuant to Section 5 of the Master Loan Agreement, if any installment payment is more than five (5) days late, M&T may charge Defendant a late fee "equal to five (5%) percent of such defaulted payments . . . ." Pursuant to Section 6 of the EFA Documents, if any payment is late, M&T may charge Defendant a late fee "equal to 15% of the delinquent payment . . . ." The late fees requested by M&T in the amount of $88,823.64 were calculated in accordance with such provisions and were agreed to by the Defendant.

Pursuant to Connecticut law, M&T is entitled to charge default interest at the rate of 18% per annum. However, pursuant to California law, M&T is only entitled to charge default interest at the rate of 10% per annum. For the sake of consistency across the loan documents, M&T has charged default interest at the rate of 10% per annum. The interest calculations are described in more detail in the Declaration of Robert Van Tine.

M&T also requests expenses in the amount of $116,565.42 which represents costs expended for appraisal fees, remarketing of Equipment after possession, inspections, repairs to the Equipment, and commissions for Equipment sales. A breakdown of the expenses is attached to the Declaration of Robert Van Tine as Exhibit K.

M&T acknowledges that the amount sought is a substantial sum but submits that it has significantly mitigated its damages by selling the Equipment that has been located and recovered. M&T has used diligent efforts to locate the Missing Equipment but has been unsuccessful. Without the Defendant's cooperation in locating the Missing Equipment, M&T has no further ability to mitigate its damages.

Further, "if the requested amounts have evidentiary support, are specifically tailored to the misconduct of the defendant, and are otherwise proportionate to the defendant's offenses, default should not be refused merely because the amount sought is substantial." *BR North 223, LLC v. Glieberman*, 2012 WL 639500, at *5–6. M&T has set forth the Loan Documents, the Declaration

of Robert Van Tine, the Declaration of Evan S. Goldstein, and the Declaration of W. Scott Camerson in support of this sum. The damages sought are consistent with the terms of the Loan Documents, apply all proceeds from the sale of the recovered Equipment, and are supported by sufficient evidence. *See BR North 223, LLC v. Glieberman*, 2012 WL 639500, at *5–7 (granting motion for default judgment requesting over $81 million in damages where plaintiff submitted a declaration of the plaintiff's chief financial officer, copies of the loan documents, and a spreadsheet detailing the amounts due); *Stellmacher v. Guerrero*, No. 10-cv-1357-JAM-KJM, 2010 WL 2889771 (E.D.Cal July 21, 2010) (granting motion for default judgment requesting over $467 million where the "amount sought is supported by the affidavits . . . and is properly calculated"). Accordingly, this factor weighs in favor of default judgment.

### IV. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor examines the possibility of a dispute concerning material facts. When a defendant defaults, all well-pleaded allegations in the Complaint, except those relating to damages, are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d at 917–918.

Here, the Defendant has not filed a responsive pleading or otherwise appeared or defended this action. Accepting M&T's allegations as true, there is no dispute concerning a material fact relating to the liability of the Defendant. Further, M&T has presented ample evidence of the amounts due and owing under the Loan Documents. Thus, no factual disputes exist that preclude the entry of default judgment, and this factor weighs in favor of default judgment.

### V. Whether the Default was Due to Excusable Neglect

As to the sixth *Eitel* factor, there is no evidence that Defendant's failure to appear is the result of excusable neglect. M&T sent a notice of default to Defendant prior to initiating this action. M&T also participated in good faith in the Defendant's bankruptcy matter. After receiving relief from the automatic stay and continuing to demand the Defendant's surrender of the Missing

Equipment, M&T properly served the Defendant with the Summons and Complaint. Despite being properly served, the Defendant has failed to appear. The failure is not attributable to excusable neglect. *See Shanghai Automatic Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect where defendants were properly served with the complaint). This factor weighs in favor of default judgment.

### VI. Public Policy Favoring Decisions on the Merits

The seventh and final *Eitel* factor considers the policy in favor of deciding cases on their merits. "However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Commercial Credit Group Inc. v. SHR Transport, Inc.*, 2022 WL 8048993, at *4. As stated above, the Defendant was properly served in this action and has failed or refused to appear and defend this action. M&T has detailed the merits of its substantive claims and submits that a default judgment would generate the very same result as a full trial on the merits. Accordingly, judgment by default does not offend the public policy of deciding cases on the merits. This factor weighs in favor of default judgment.

### VII.     No Risk of Double Recovery

In its Order dated March 21, 2025 [ECF No. 32], the Court denied M&T's Revised Motion for Default Judgment [ECF No. 23] citing concerns regarding the potential for a double recovery based on M&T's judgment (the "Connecticut Judgment") against the individual guarantors, Amarinder Gorwara and Hardeep Singh (the "Guarantors") of the Loan Documents in the United States District Court for the District of Connecticut, Case No. 3:23-cv-00205 (JAM).

The rule against double recovery does not prevent entry of the judgment requested herein. "The rule against double recovery does not prevent entry of a second judgment, only double collection of the judgment." *Moss v. Associated Underwriters, Inc.*, 28 Neb. App. 739, 747, 948

N.W.2d 273, 282 (2020). "Plaintiffs are not foreclosed from suing multiple defendants, either jointly or separately, for injuries for which each is liable, nor are they foreclosed from obtaining multiple judgments against joint or successive tortfeasors. . . . Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments." *Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 111–12, 952 A.2d 1, 29 (2008). What is clear from these cases is that the doctrine of double recovery does not prevent entry of judgments but rather prevents collection of the same amount under more than one judgment.

To prevent double recovery after entry of multiple judgments, a court may fashion a judgment in such a way that any payment on one judgment will be credited against the amount due under another. *See, e.g., Lehman Brothers Holdings Inc. v. Cafcalas*, Case No. LA CV16-03167, 2018 WL 6074597, at *9 (C.D. Cal. Feb. 27, 2018) (holding that there was no risk of double recovery where payments received on separate judgments would be credited against the other); *Lei v. Yan*, Case No. A164796, 2023 WL 3808558, at *5 (Cal. Ct. App. June 2, 2023) (same); *W.W.S.M. Invs. v. Greve, Clifford, Diepenbrock & Paras*, 43 Cal. App. 4th 517, 523, 51 Cal. Rptr. 2d 31, 34 (1996) (same). Accordingly, in its revised proposed order, M&T has proposed that any payment M&T receives from the Guarantors on the Connecticut Judgment shall be credited against the amounts owed by the Defendant on the requested judgment herein.

Finally, M&T does not seek to hold Defendant jointly liable for the Connecticut Judgment as the Defendant was not a party to that action. The Defendant will be liable for the judgment requested herein and, as noted above, any amounts paid by the Guarantors on the Connecticut Judgment will be credited against amounts owed by the Defendant.

### VIII.     Conclusion

Based on the foregoing, M&T seeks a default judgment against the Defendant and in favor of M&T granting M&T damages in the amount of $3,441,172.57, post-judgment interest pursuant

to 28 U.S.C. § 1961(a), immediate possession of the Missing Equipment and ordering the Defendant to surrender and deliver same.

Dated: July 3, 2025

**weintraub tobin** chediak coleman grodin
law corporation

By:  /s/ W. Scott Cameron
       W. Scott Cameron

Attorneys for Plaintiff M&T Capital and Leasing Corporation f/k/a People's Capital and Leasing Corp.

**CERTIFICATION OF SERVICE**

I hereby certify that on July 3, 2025, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by cooperation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ W. Scott Cameron
W. Scott Cameron

M&T BANK's REVISED NOTICE AND MOTION FOR DEFAULT JUDGMENT BY COURT