1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   M&T CAPITAL AND LEASING              Case No. 2:23-cv-01171-WBS-CSK
     CORPORATION,
12
                    Plaintiff,
13                                        FINDINGS AND RECOMMENDATIONS
            v.                            GRANTING PLAINTIFF'S FOURTH
14                                        MOTION FOR DEFAULT JUDGMENT
     FREON LOGISTICS,
15                                        (ECF No. 42)
                    Defendant.
16

17          Pending before the Court is Plaintiff M&T Capital and Leasing Corporation's fourth

18   motion for default judgment pursuant to Federal Rules of Civil Procedure 55(b)(2). Pl.

19   Fourth Mot. (ECF No. 42).[1] This motion was set for hearing for August 28, 2025. *Id*.

20   Defendant Freon Logistics did not file a response to the motion, nor has it appeared in

21   this case in any way. *See* Docket. On July 23, 2025, Plaintiff's motion was taken under

22   submission without argument pursuant to Local Rule 230(g). 7/23/2025 Order (ECF No.

23   44). For the reasons stated below, the Court recommends Plaintiff's fourth motion for

24   default judgment be GRANTED, and that judgment be entered in favor of Plaintiff.

25   / / /

26   / / /

27   _____

28   [1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A)
     and Local Rule 302(c)(19).

1    **I.    BACKGROUND**

2        **A.    Factual Background**

3            On or about February 15, 2018, Plaintiff's predecessor by merger, People's

4    Capital and Leasing Corp. ("People's Capital"),[2] entered into a Master Loan and Security

5    Agreement No. 5113 ("Master Loan Agreement") with Defendant. Compl. ¶ 5, Exh. A

6    (ECF No. 1). On or about February 15, 2018, People's Capital also entered into

7    Schedule No. 001 to the Master Loan Agreement ("Schedule No. 1," and collectively with

8    Master Loan Agreement referred to as "Loan Agreement") with Defendant for People's

9    Capital to finance and obtain a security interest in certain identified equipment ("Loan

10   Equipment"). *Id*. ¶ 6, Exh. B. Defendant acknowledged the Loan Equipment had been

11   delivered and approved by Defendant on February 15, 2018. *Id*. ¶ 7, Exh. C. Pursuant to

12   the Loan Agreement, Defendant agreed to pay People's Capital sixty (60) consecutive

13   monthly payments of $6,732.08. *Id*. ¶ 9. The total principal value for Schedule No. 1 was

14   $334,075. *Id*. On or about February 15, 2018, Amarinder S. Gorwara and Hardeep Singh

15   each entered into individual guaranties in favor of People's Capital ("Loan Guaranties").

16   *Id*. ¶¶ 10-12, Exhs. E, F. Plaintiff alleges the Loan Guaranties were made to induce

17   People's Capital to enter into the Master Loan Agreement with Defendant. *Id*. ¶ 12.

18           Between April 23, 2021 and August 2, 2022, People's Capital's successor-in-

19   interest, Top Mark Funding, LLC ("Top Mark"), entered into fifteen (15) Equipment

20   Finance Agreements and fifteen (15) corresponding Schedule A's ("EFA Schedules")

21   with Defendant. Compl. ¶¶13-14, 19. Pursuant to the EFA Schedules, Top Mark

22   financed and obtained a security interest in a variety of equipment ("EFA Equipment").

23   Gorwara and Singh also entered into fifteen (15) guaranties for each of the Equipment

24   Finance Agreements ("EFA Guaranties") between April 23, 2021 and August 2, 2022. *Id*.

25   ¶ 18, Exh. G.[3] Defendant had agreed to pay certain monthly payments as provided in

26

27   ---
     [2]   People's Capital merged with, and became a subsidiary of, Plaintiff as of April 2,
     2022. Compl. ¶ 20, Exh. J. On or about August 29, 2022, People's Capital amended its
     name with the Connecticut Secretary of State to Plaintiff's name. *Id*. ¶ 21.

28   [3]   On or about August 27, 2020, Top Mark entered into a Master Sale of Chattel Paper

1   the Equipment Finance Agreements and EFA Schedules. *Id*. ¶ 17. Plaintiff alleges the

2   EFA Guaranties were made to induce People's Capital to enter into the Equipment

3   Finance Agreements with Defendant. *Id*. ¶ 19.

4          On December 22, 2022, Plaintiff sent to Defendant a Notice of Default,

5   Acceleration, and Demand for Payment based on Defendant's failure to make all

6   payments due pursuant to the Loan Agreement and EFA Documents (collectively "Loan

7   Documents"). Compl. ¶ 23, Exh. K. As of June 25, 2025, Defendant has failed to cure its

8   default and remains obligated pursuant to the Loan Documents for the outstanding

9   balance remaining in the amount of $4,441,172.57, which sum includes default interest,

10  costs, expenses, and attorneys' fees. Pl. Fourth Mot. at 8 (ECF No. 42).

11         On or about November 8, 2022, Defendant filed a Chapter 11 bankruptcy petition

12  in the United States Bankruptcy Court for the Eastern District of California (Case No. 22-

13  11907) which was later converted to a Chapter 7 bankruptcy on December 14, 2022.

14  Compl. ¶¶ 27-28. On or about December 14, 2022, the Bankruptcy Court granted

15  Plaintiff partial relief from the automatic stay for purposes of repossessing the Loan

16  Equipment and EFA Equipment and further required Defendant to provide the location

17  and immediate delivery and surrender of the Loan Equipment and EFA Equipment to

18  Plaintiff. *Id*. ¶¶ 29. On or about February 9, 2023, the Bankruptcy Court granted Plaintiff

19  complete relief from the automatic stay to continue to repossess the Loan Equipment

20  and EFA Equipment and to dispose of the Loan Equipment and EFA Equipment in

21  accordance with Article 9 of the Uniform Commercial Code. *Id*. ¶ 30. To date, Plaintiff

22  has sold five (5) units of the repossessed Loan Equipment and EFA Equipment and has

23  applied the sales proceeds to the debt owed by Defendant but has been unable to

24  repossess or locate the following remaining fifteen (15) units of Equipment ("Missing

25  Equipment"):

26  
_____

27  and Security Agreement with People's Capital and sold to People's Capital "all its rights,
    interest in and title" to the Equipment Finance Agreements, EFA Schedules, and EFA

28  Guaranties (collectively "EFA Documents"). Compl. ¶ 15, Exh. H.

- Seven (7) 2022 Peterbilt Model 579, Serial Nos. 1XPBD49X0ND782853, 1XPBD49X1ND782893, 1XPBD49XXND782861, 1XPBD49X5ND782864, 1XPBD49X0ND782819, 1XPBD49X0ND782822, and 1XPBD49X1ND782862;

- Two (2) 2016 Kenworth T680, Serial Nos. 1NKYL49X0GJ117002 and 1NKYL49X2GJ117003; and

- Six (6) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos. 1GRAA0624JW103081, 1GRAA0620JW116104, 1GRAA0623JW116114, 1GRAA0627JW116102, 1GRAA0624JW116123, and 1GRAA062XJW120287.

Pl. Fourth Mot. at 9; 7/3/2025 Declaration of Robert Van Tine ¶¶ 27-28 (ECF No. 42-3).

On or about February 16, 2023, Plaintiff initiated a federal action against the individual guarantors of the same Loan Documents in the United States District Court for the District of Connecticut alleging breach of guaranty claims. *M&T Capital and Leasing Corporation v. Amarinder Singh Gorwara, Hardeep Singh, et al.*, 3:23-cv-00205-JAM, ECF No. 1 (D. Conn. Feb. 16, 2023) ("*M&T Capital I*"); *see also* 1/2/2024 Pl. Status Report at 3 (ECF No. 13). On June 15, 2023, Plaintiff moved for default judgment against Gorwara and Singh as guarantors on the same Loan Documents, seeking $4,923,090.77 in damages for the outstanding balance on the Loan Documents as of June 12, 2023, which includes default interest, costs, expenses, and attorneys' fees. *M&T Capital I*, ECF No. 15 at 6 (D. Conn. June 15, 2023). On September 5, 2023, the District Court for the District of Connecticut granted Plaintiff's motion for default judgment in the amount of $4,383,596.53 in damages, $485,447.04 in interest, and $54,047.20 in attorney's fees, for a total amount of $4,923,090.77, with post-judgment interest to accrue pursuant to 28 U.S.C. § 1961. *M&T Capital I*, ECF No. 17 (D. Conn. Sept. 5, 2023). As of January 2, 2024, the District of Connecticut judgment remains unsatisfied. *See* 1/2/2024 Pl. Status Report at 3.

**B.    Procedural Background**

On June 20, 2023, Plaintiff initiated this action asserting two state law claims for writ of possession and breach of contract. Compl. ¶¶ 34-60. On August 30, 2023,

4

Plaintiff filed an amended motion for extension of time to effectuate service and for

substituted service. (ECF No. 5.) On September 19, 2023, the district judge granted

Plaintiff's amended motion for extension of time and directed Plaintiff to serve Defendant

through the California Secretary of State within thirty days from the date of the order.

9/19/2023 Order (ECF No. 8). On October 24, 2023, Plaintiff filed a proof of service

indicating Defendant was served by substituted service by delivery to the Deputy for the

Secretary of the State on September 21, 2023. (ECF No. 10.) After Defendant failed to

appear, Plaintiff filed a request for entry of default against Defendant on October 25,

2023. (ECF No. 11.) The Clerk of the Court entered default as to Defendant on October

27, 2023. (ECF No. 12.)

On February 1, 2024, Plaintiff moved for default judgment against Defendant.

(ECF No. 15.) On March 28, 2024, Chief Magistrate Judge Carolyn K. Delaney denied

the motion without prejudice, subject to renewal upon addressing the deficiencies

identified by the court, including adequately demonstrating that it has stated a claim for

writ of possession or breach of contract under Connecticut law; an explanation as to how

late fees were calculated and the nature of expenses owed; and additional briefing for

the requested post-judgment interest rate of 18% per annum based on the current rate

being unsupported and excessive. 3/28/2024 Order at 5-8 (ECF No. 18). On May 7,

2024, Plaintiff filed a revised motion for default judgment. (ECF No. 23.) On March 21,

2025, the undersigned denied the revised motion without prejudice for failing to provide

sufficient information as to the potential issue of double recovery based on Plaintiff

obtaining default judgment in *M&T Capital I* against the individual guarantors for

defaulting on the same Loan Documents that are the subject of this action. 3/21/2025

Order (ECF No. 32). Plaintiff was directed to file a second revised motion for default

judgment addressing the deficiencies identified by the March 21, 2025 Order. *Id*. On

April 17, 2025, Plaintiff filed its second revised motion for default judgment. (ECF No.

33). On June 12, 2025, the Court ordered Plaintiff to file a supplemental brief and

evidentiary support by June 26, 2025 to support its request for damages, including its

1   principal and interest owed, and how prejudgment interest was calculated. 6/12/2025

2   Order (ECF No. 38). On June 25, 2025, Plaintiff filed a motion for an extension of time to

3   file its supplemental brief, which was granted by the Court on June 27, 2025. (ECF Nos.

4   40, 41.)

5       On July 3, 2025, instead of filing a supplemental brief, Plaintiff filed the pending

6   fourth motion for default judgment and set it for hearing before the undersigned for

7   August 28, 2025. Pl. Fourth Mot. Defendant was served with the fourth motion for default

8   judgment on the same day. (ECF No. 42-6 at 2.) On July 10, 2025, the Court issued an

9   order denying Plaintiff's prior revised motion for default judgment as moot due to the

10  filing of Plaintiff's pending fourth motion for default judgment. 7/10/2025 Minute Order

11  (ECF No. 43).

12      Defendant did not respond to the fourth motion for default judgment. *See* Docket.

13  On July 23, 2025, the undersigned issued an order taking Plaintiff's fourth motion under

14  submission; vacating the hearing; ordering a written response from Defendant by August

15  6, 2025; and directing Plaintiff to serve Defendant with a copy of the order. 7/23/2025

16  Order (ECF No. 44). On July 28, 2025, Plaintiff filed a proof of service that Defendant

17  was served with a copy of the July 23, 2025 Order on July 28, 2025. (ECF No. 45.)

18  Defendant did not respond. *See* Docket.

19  **II.    LEGAL STANDARDS**

20      Under Federal Rule of Civil Procedure 55, default may be entered against a party

21  against whom a judgment for affirmative relief is sought who fails to plead or otherwise

22  defend against the action. *See* Fed. R. Civ. P. 55(a). However, this default does not

23  automatically entitle the plaintiff to a judgment. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.

24  Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citations omitted). The decision to grant or deny

25  the entry of default judgment is within the district court's discretion. *NewGen, LLC v.*

26  *Safe Cig, LLC,* 840 F.3d 606, 616 (9th Cir. 2016).

27      In determining whether to enter default judgment, courts consider the following

28  factors:

6

1      1.  the possibility of prejudice to the plaintiff;

2      2.  the merits of the substantive claim(s);

3      3.  the sufficiency of the complaint;

4      4.  the amount of money at stake in the lawsuit;

5      5.  whether there are any disputes of material fact;

6      6.  whether the defendant's default was due to excusable neglect; and

7      7.  the strong policy favoring decisions on the merits.

8  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Ninth Circuit has long

9  disfavored default judgments, counseling that cases be decided on the merits "whenever

10  reasonably possible." *Id*. at 1472.

11      Once a default is entered, all well-pled allegations in the complaint regarding

12  liability are deemed true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

13  2002). "On the other hand, a defendant is not held to admit facts that are not well-

14  pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at

15  *4 (N.D. Cal. Feb. 12, 2010) (citation omitted). "[I]t follows from this that facts which are

16  not established by the pleadings of the prevailing party, or claims which are not well-

17  pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d

18  1386, 1388 (9th Cir. 1978). Necessary facts not contained in the pleadings and claims

19  which are legally insufficient are not established by default. *DIRECTV, Inc. v. Hoa*

20  *Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, a plaintiff's allegations regarding

21  damages are not deemed true at default, and the plaintiff bears the burden to prove

22  damages with evidence. *See* Fed. R. Civ. P. 55(b)(2)(C); *Geddes v. United Fin. Grp.*,

23  559 F.2d 557, 560 (9th Cir. 1977).

24  **III.**    **DISCUSSION**

25      Plaintiff seeks judgment be entered in favor of it on its breach of contract claim for

26  $3,441,172.57, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a). Pl. Fourth

27  Mot. at 2. Plaintiff also seeks judgment be entered in favor of it for its writ of possession

28  claim as to the Missing Equipment and for immediate possession of the Missing

1    Equipment and for Defendant to surrender and deliver the Missing Equipment to Plaintiff.

2    *Id*. at 2, 18-19.

3         **A.    Jurisdiction and Service**

4         As a preliminary matter, a court considering whether to enter default judgment

5    must first determine whether it has jurisdiction over both the subject matter and the

6    parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

7         The Court has subject matter jurisdiction over this action pursuant to diversity

8    jurisdiction. 28 U.S.C. § 1332. Plaintiff is a Connecticut corporation with its principal

9    place of business located in Connecticut. Compl. ¶ 1. Defendant is a California

10   corporation with its principal place of business in California. *Id*. ¶ 2. The amount in

11   controversy, exclusive of interest and costs, exceeds $75,000. *Id*. ¶¶ 3, 24. In addition,

12   the Court has personal jurisdiction over Defendant, who is a California corporation. *See*

13   *AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("a corporation is typically

14   subject to general personal jurisdiction only in a forum where it is incorporated or where

15   it maintains its principal place of business") (citations omitted).

16        The Court also finds service was proper under Federal Rules of Civil Procedure

17   4(h)(1)(B). On September 19, 2023, the district judge granted Plaintiff's request to serve

18   Defendant through the California Secretary of State pursuant to California Corporations

19   Code § 1702(a) after finding Plaintiff was unable to effectuate service on Defendant

20   through other means. *See* 9/19/2023 Order. Pursuant to California Corporations Code

21   § 1702(a), "[s]ervice in this manner is deemed complete on the 10th day after delivery of

22   the process to the Secretary of State." Plaintiff effected service on September 21, 2023.

23   (ECF No. 10.)

24        **B.    *Eitel* Factors**

25        For the following reasons, the Court finds that the *Eitel* factors weigh in favor of

26   granting default judgment against Defendant.

27              1.    Factor One: The Possibility of Prejudice to the Plaintiff

28        The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default

8

1   judgment were not entered, and such potential prejudice to the plaintiff weighs in favor of

2   granting a default judgment. *See PepsiCo,* 238 F. Supp. 2d at 1177. Here, the Clerk of

3   the Court entered default against Defendant on October 27, 2023 (ECF No. 12), and

4   Defendant has not participated in the litigation despite being served with the Complaint,

5   multiple default judgment motions, and the Court's most recent July 23, 2025 order. *See*

6   Docket. Plaintiff would suffer prejudice if the Court did not enter a default judgment

7   because it would be without recourse for recovery. Accordingly, the first *Eitel* factor

8   favors the entry of default judgment.

9             2.    Factors Two and Three: The Merits of the Claims and the

10                  Sufficiency of the Complaint

11          The merits of Plaintiff's substantive claims and the sufficiency of the Complaint

12   are considered together due to the relatedness of the two inquiries. The Court must

13   consider whether the allegations in the Complaint are sufficient to state a claim that

14   supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp.

15   2d at 1175. Here, the merits of the claims and the sufficiency of the Complaint favor

16   entry of default judgment.

17          Before turning to the merits and sufficiency, the Court must first address choice of

18   law issues to determine which forum's law applies to Plaintiff's claims. Federal courts

19   sitting in diversity look to the law of the forum state—here, California—when making

20   choice of law determinations. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175

21   (9th Cir. 2014). Under California law, the choice of law provision in the parties'

22   agreement will govern so long as (1) the chosen state has a substantial relationship to

23   the parties or their transaction, and (2) there is any reasonable basis for the parties'

24   choice of law. *Gramercy Inv. Tr. v. Lakemont Homes Nevada, Inc.*, 198 Cal. App. 4th

25   903, 909 (2011).

26          Plaintiff moves for default judgment as to its writ of possession and breach of

27   contract claims pursuant to California and Connecticut law. Pl. Fourth Mot. at 11-14.

28   Plaintiff's breach of contract claim and writ of possession as to the Loan Agreement

1    specifies Connecticut Law governs. Compl., Exhs. A, B. Additionally, Connecticut has a

2    substantial relationship to the parties as it is where Plaintiff is incorporated and there is a

3    reasonable basis for the parties' choice of law considering Plaintiff resides in

4    Connecticut. *See Gramercy Inv. Tr.*, 198 Cal. App. 4th at 909.

5           Plaintiff's claims for writ of possession and breach of contract as to the EFA

6    Documents are governed by California law because these agreements specify that

7    California law governs. Compl., Exh. G. California has a substantial relationship to the

8    parties as it is where Defendant is incorporated. Further, there is a reasonable basis for

9    California law to apply to these agreements because there is a reasonable basis for the

10   parties' choice of California law where Defendant resides in California. *See Gramercy*

11   *Inv. Tr.*, 198 Cal. App. 4th at 909. Accordingly, the Court will apply Connecticut law as to

12   Plaintiff's writ of possession and breach of contract claims as it relates to the Loan

13   Agreement, and California law as to Plaintiff's writ of possession and breach of contract

14   claims as to the EFA Documents.

15                            a.      The Loan Agreement

16                                    i.      *Writ of Possession Claim Pursuant to Connecticut Law*

17          A writ of possession is also known as a replevin claim. In Connecticut, replevin

18   proceedings may be "maintained to recover any goods or chattels in which the plaintiff

19   has a general or special property interest with a right to immediate possession and which

20   are wrongfully detained from him in any manner, together with the damages for such

21   wrongful detention." Conn. Gen. Stat. § 52-515; *see also Cornelio v. Stamford Hosp*.,

22   246 Conn. 45, 49 (1998). To prevail on a claim of replevin under Connecticut Law, a

23   plaintiff must establish that "(1) the disputed item qualifies as 'goods or chattels' within

24   the meaning of [Connecticut General Statutes §] 52–515; (2) the plaintiff has a 'property

25   interest' in the goods or chattels; (3) the plaintiff has a 'right to immediate possession' of

26   the goods or chattels; and (4) the defendant has 'wrongfully detained' the goods or

27   chattels from him." *Richmond v. F-40 Restoration, LLC*, 467 F. Supp. 3d 20, 25 (D.

28   Conn. 2020) (citing Conn. Gen. Stat. § 52-515). Here, Plaintiff has sufficiently alleged a

1    claim for replevin under Connecticut Law. Under Section 15 of the Master Loan

2    Agreement, upon the event of default, Defendant is obligated to return the equipment to

3    Plaintiff. Compl. ¶ 37, Exh. A; Pl. Fourth Mot. ¶ 13. Based on the allegations of the

4    Complaint, Plaintiff has established that it has a right to possess the Missing Equipment

5    listed in the Loan Agreement, and that Defendant has wrongfully detained the Missing

6    Equipment. Compl. ¶¶ 36-39. Accordingly, Plaintiff has sufficiently pled a meritorious writ

7    of replevin claim as to the Loan Agreement pursuant to Connecticut law.

8                           ii.    *Breach of Contract Claim Pursuant to Connecticut Law*

9           To prevail on a claim for breach of contract under Connecticut law, a plaintiff must

10   establish "(1) the formation of an agreement, (2) performance by one party, (3) breach of

11   the agreement by the opposing party and (4) damages." *McCann Real Equities Series*

12   *XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503-04 (2006). Here,

13   Plaintiff has sufficiently alleged a claim for breach of contract under Connecticut law. The

14   Complaint sufficiently alleges that Plaintiff and Defendant entered into the Loan

15   Agreement. Compl., Exhs. A, B. Plaintiff alleges it performed all of its obligations under

16   the Loan Agreement and Defendant failed to pay the amount owed under the

17   agreement, thereby breaching the agreement and damaging Plaintiff. Compl. ¶¶ 25, 55-

18   60. Accordingly, Plaintiff has sufficiently pled a meritorious breach of contract claim as to

19   the Loan Agreement.

20                    b.    EFA Documents

21                           i.    *Writ of Possession Claim Pursuant to California Law*

22          To prevail on a claim for a writ of possession under California law, a plaintiff must

23   show that it "is entitled to possession of the property claims" and that "the property is

24   wrongfully detained by the defendant[.]" Cal. Civ. Proc. Code § 512.010(b); *see Waffer*

25   *Internat. Corp. v. Khorsandi*, 69 Cal. App. 4th 1261, 1271 (1999). Section 11 of the

26   Equipment Finance Agreements state that failure to make required payments is a default

27   that entitles Plaintiff to repossess the Loan Equipment and EFA Equipment. Compl. ¶ 37,

28   Exh. G; Pl. Fourth Mot. at 13. Based on the allegations of the Complaint, Plaintiff has

1   established that Plaintiff has a right to possess the Missing Equipment listed in the EFA

2   Documents, and that Defendant is in wrongful possession of this Loan Equipment and

3   EFA Equipment. Compl. ¶¶ 36-37. Accordingly, Plaintiff has sufficiently pled a

4   meritorious writ of possession claim as to the EFA Documents.

5                           ii.      *Breach of Contract Claim Pursuant to California Law*

6        To prevail on a breach of contract claim under California law, a plaintiff must

7   establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for

8   nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."

9   *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Here, Plaintiff has

10  sufficiently alleged a claim for breach of contract of the EFA Documents under California

11  law. The Complaint sufficiently alleges Plaintiff entered into valid Equipment Finance

12  Agreements with Defendant. Compl., Exh. G. Plaintiff alleges it performed all of its

13  obligations under the agreements and Defendant failed to pay the amount owed under

14  the agreements, thereby breaching the agreements and damaging Plaintiff. Compl.

15  ¶¶ 25, 55-60. Accordingly, Plaintiff has sufficiently pled a meritorious breach of contract

16  claim as to the EFA Documents.

17              3.      Factor Four: The Sum of Money at Stake in the Action

18       Under the fourth *Eitel* factor, the Court considers the amount of money at stake in

19  relation to the seriousness of Defendant's conduct. *PepsiCo,* 238 F. Supp. 2d at 1176.

20  The sum of money here is significant, though not unreasonable as it is directly

21  connected to the Loan Agreements, the EFA Documents and Defendant's respective

22  conduct. Accordingly, the fourth *Eitel* factor favors the entry of default judgment.

23              4.      Factor Five: The Possibility of Dispute Concerning Material Facts

24       The facts of this case are relatively straightforward, and Plaintiff has provided the

25  Court with well-pleaded allegations and documentation supporting its claims. *See*

26  *generally* Compl. Here, the Court may assume the truth of well-pleaded facts in the

27  complaint (except as to damages) following the clerk's entry of default, and thus, there is

28  no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't*

1    *Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations

2    in a well-pleaded complaint are taken as true after the court clerk enters default

3    judgment, there is no likelihood that any genuine issue of material fact exists."); *accord*

4    *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003);

5    *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the fifth *Eitel* factor favors the entry of

6    default judgment.

7                    5.       Factor Six: Whether Default was Due to Excusable Neglect

8              Upon review of the record before the Court, there is no indication that the default

9    was the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiff

10   served Defendant with the summons and the Complaint. (ECF No. 10.) Defendant has

11   also been served with multiple prior motions for default judgments. *See* Docket. Plaintiff

12   also served Defendant with notice of the pending fourth motion for default judgment and

13   with the Court's July 23, 2025 Order. (ECF Nos. 33-4, 35). Despite ample notice of this

14   lawsuit and Plaintiff's intention to seek a default judgment, Defendant has failed to

15   participate in this action or to defend itself. Accordingly, the sixth *Eitel* factor favors the

16   entry of default judgment.

17                   6.       Factor Seven: The Strong Policy Favoring Decisions on the Merits

18             "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

19   782 F.2d at 1472. Although the Court is cognizant of the policy favoring decisions on the

20   merits, that policy does not, by itself, preclude the entry of default judgment where a

21   defendant fails to appear or defend itself in an action. *See PepsiCo,* 238 F. Supp. 2d at

22   1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D.

23   Cal. 2010).

24                   7.       Double Recovery & Sufficient Evidentiary Support

25             On March 21, 2025, the Court denied Plaintiff's revised motion for default

26   judgment for failing to provide sufficient information as to the potential issue of double

27   recovery due to Plaintiff receiving a default judgment in *M&T Capital I* against the

28   individual guarantors Gorwara and Singh for defaulting on the same Loan Documents

that are the subject of this action. 3/21/2025 Order.

After Plaintiff filed its third motion for default judgment, the Court ordered Plaintiff to file a supplemental brief and evidentiary support for its damages request because the damages sought were not supported by the evidence Plaintiff submitted with its third motion. 6/12/2025 Order. After receiving an extension to file its supplemental brief, Plaintiff filed a fourth motion for default judgment. In its fourth motion, Plaintiff submitted a revised request for damages in the amount of $3,441,172.57, which is a significant decrease from the $4,524,119.29 sought in its third motion that lacked evidentiary support. The Court has reviewed the evidentiary support submitted with this fourth motion, and finds that it supports the requested damages.

In its fourth motion, Plaintiff argues the doctrine of double recovery does not prevent the entry of multiple judgments but only prevents the collection of the same amount under more than one judgment. Pl. Fourth Mot. at 17-18. To prevent double recovery after entry of multiple judgments, Plaintiff argues the Court may fashion a judgment that any payment on one judgment will be credited against the amount due under another. *Id*. at 18. Plaintiff provides a revised proposed order that states that any payment received by Plaintiff from the individual guarantors as to the *M&T Capital I* Judgment will be credited against the amounts owed by the Defendant here. *Id*. at 18; 42-1 at 2. Plaintiff further argues it does not seek to hold Defendant jointly liable for the *M&T Capital I* Judgment as Defendant was not a party in that action. *Id*. at 18.

The Court finds the requested terms of judgment are appropriate. The Court will recommend that any payment received with respect to this judgment be applied to the satisfaction of any then remaining balance of the *M&T Capital I* Judgment and that any payment under the *M&T Capital I* Judgment be credited against the amounts due from Defendant in this judgment. Therefore, there is no risk of double recovery to Plaintiff. *See Lehman Bros. Holdings Inc. v. Cafcalas*, 2018 WL 6074597, at *9 (C.D. Cal. Feb. 27, 2018) (holding no risk of double recovery by plaintiff where payment on a judgment will be credited against the amount due under a separate judgment).

14

1          8.    Conclusion

2          Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is

3   entitled to the entry of default judgment against Defendant as to its claims for writ of

4   possession and breach of contract. The Court next determines the terms of the

5   judgment.

6          **C.    Terms of Judgment**

7          Plaintiff seeks damages in the amount of $3,441,172.57 and immediate

8   possession of the Missing Equipment. Pl. Fourth Mot. at 2, 5, 18-19. The Court

9   addresses each in turn.

10              1.    Damages

11         To recover damages after securing a default judgment, a plaintiff must prove the

12  relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker*

13  *Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see*

14  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Here, Plaintiff seeks $3,441,172.57 in damages,

15  which represents the outstanding balance as of June 25, 2025, and includes default

16  interest, late fees, costs, expenses and attorneys' fees. Pl. Third Rev. Mot. at 14-16.

17  Plaintiff has submitted declarations and a true and correct copy of an Account Balance

18  Worksheet showing the following calculations to support its request:

19         Principal as of June 25, 2025          $3,180,660.35

20         Interest (10% per annum)               $    37,833.88

21         Late Fees                              $    88,823.64

22         Expenses                               $  116, 565.42

23         Legal Fees and Costs                   $    17,289.28

24         **Total amount due**                   **$3,441,172.57**

25  Van Tine Decl. ¶ 30, Exh J. The Court addresses each below.

26              a.    Principal

27         As to damages, the principal amount of damages corresponds to the agreements,

28  and so $3,180,660.35 is the appropriate amount of compensatory damages. Pl. Fourth

                                    15

Mot. at 7-8; Van Dine Decl. ¶¶ 9, 14; Compl. Exhs. A, B, G.

b.    <u>Prejudgment Interest</u>

Plaintiff seeks $37,833.88 in prejudgment interest at the rate of 10% per annum across all relevant agreements so as to be consistent with California law. Pl. Fourth Mot. Suppl. Brief at 3-4 (ECF No. 42-5). State law generally governs the award of prejudgment interest in diversity actions. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). Prejudgment interest is meant to compensate the plaintiff for the "accrual of wealth" that could have been produced during the period of loss. *Great W. Drywall, Inc. v. Roel Const. Co.*, 166 Cal. App. 4th 761, 767-68 (2008). Connecticut and California law provide for interest at a rate of 10% per annum in contract cases after a breach. *See* Cal. Civ. Code § 3289(b); Conn. Gen. Stat. Ann. § 37-3a(a). The Court finds Plaintiff's request for prejudgment interest is appropriate.

c.    <u>Late Fees</u>

Plaintiff seeks $88,823.64 in late fees. Pl. Fourth Mot. at 15; Van Dine Decl. ¶ 33. Plaintiff indicates it has calculated the requested late fees in accordance with the agreed upon provisions by the parties. *See* Van Dine Decl. ¶¶ 31 (Section 5 of the Master Loan Agreement provides if any installment payment is more than five (5) days late, Defendant may charge a late fee "equal to five (5) percent of such defaulted payments…"), 32 (Section 6 of the Equipment Finance Agreements provide that if any payment is late, Defendant may charge Plaintiff a late fee "equal to 15% of the delinquent payment…"); *see also* Compl. Exhs. A, G. The Court finds Plaintiff has adequately proved that it is entitled to $88,823.64 in late fees.

d.    <u>Expenses</u>

Plaintiff seeks $116,565.42 in expenses for appraisal fees, remarketing of the Loan Equipment and EFA Equipment after repossession, inspections, repairs to the Loan Equipment and EFA Equipment, and commissions for the Loan Equipment and EFA Equipment sales. Pl. Fourth Mot. at 15; Van Dine Decl., Exhs. J, K. Section 15 of the Master Loan Agreement provides in the event of a default, Plaintiff has the "right to

recover from [Defendant] any expenses paid or incurred by [Plaintiff] in connection with the enforcement of its rights under each Schedule and the repossession, transporting, holding, insuring, repairing, refurbishing, preparing for sale and subsequent sale, lease or other disposition of the Collateral…" Compl. Exh. A. Section 11 of the Equipment Finance Agreements also provides Defendant "will owe all costs and expenses…collection fees or commissions, travel, or any other cost [Plaintiff] incur enforcing [its] rights." Compl., Exh G. The Court finds Plaintiff has adequately proved that it is entitled to $116,565.42 in expenses.

e.    Legal Fees and Costs

Plaintiff seeks $17,289.28 in attorney fees and costs for local and out-of-state counsel. Van Tine Decl. ¶ 30, Exh J. The Court addresses each separately below.

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) (quoting *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-38 (9th Cir. 2001)). California Civil Code § 1717 governs attorney fees awards based on a contract and authorizes an award of attorney fees "in any action on a contract" to "the party prevailing on the contract if the contract provides an award of attorney fees and costs. Cal. Civ. Code § 1717(a); *see also Frog Creek Partners, LLC v. Vance Brown, Inc.*, 206 Cal. App. 4th 515, 523 (2012). Here, Section 15 of the Master Loan Agreement and Paragraphs 7 and 11 of the Equipment Finance Agreements provide for the recovery of attorney fees and costs. Compl. Exhs. A, G. Accordingly, the Court addresses next whether Plaintiff is entitled to reasonable attorney fees and costs.

The Ninth Circuit affords district courts broad discretion in determining the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). While the amount of a fee award is discretionary, the district court must "provide a concise but clear explanation of its reasons for the fee award." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014). The Ninth Circuit utilizes the "lodestar" method for

1    assessing reasonable attorney's fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196,

2    1202 (9th Cir. 2013). Under the "lodestar" method, the number of hours reasonably

3    expended is multiplied by a reasonable hourly rate. *Id*. Reasonable hourly rates are

4    determined by the "prevailing market rates in the relevant community." *Sorenson v. Mink*,

5    239 F.3d 1140, 1145 (9th Cir. 2001). "[T]he established standard when determining a

6    reasonable hourly rate is the 'rate prevailing in the community for similar work performed

7    by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport

8    Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502

9    (9th Cir. 1997)). Generally, "the relevant community is the forum in which the district

10    court sits." *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d at 500). Here, the

11    relevant community is Sacramento, California, which is where this district court is

12    located.

13          First, for local counsel, Plaintiff seeks $6,365 in attorney fees for W. Scott

14    Cameron, for 13.4 hours of legal services at a reduced hourly rate of $475. 5/7/2024 W.

15    Scott Cameron Declaration ¶¶ 5-7, Exh. A (ECF No. 42-4). Plaintiff provides billing

16    records from June 14, 2023 to March 28, 2024 for reviewing and editing the complaint,

17    communications with out-of-state counsel as to the status of the case, service, and

18    default, and reviewing and editing the motion for default judgment. Cameron Decl. Exh.

19    A.[4] Plaintiff also seeks costs in the amount of $1,502.53 for filing fees, research fees and

20    interests on costs. *Id*. The Court finds that 13.4 hours is a reasonable amount of time for

21    the work completed. Although Plaintiff does not provide the number of years of

22    experience Mr. Cameron has, the Court takes judicial notice of the California state bar

23    website indicating that Mr. Cameron has been admitted to California since January 2004

24    and therefore has over 21 years of legal experience. *See BMO Harris Bank N.A. v.

25    BKSG Transportation LLC*, 2018 WL 4297854, at *10 (E.D. Cal. Sept. 10, 2018) (taking

26

27    [4]   The Court notes that the fees requested appropriately do not include time for the
      subsequent revised motions for default judgment, which corrected errors or provided
28    clarification.

18

judicial notice of California State Bar website for purposes of determining attorney's experience). The Court finds the hourly rate of $475 for an attorney with more than 21 years of experience is reasonable, although it is a lower rate for attorneys with similar years of legal experience, the Court grants counsel's requested hourly rate. *See, e.g., Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $490 and $695 per hour for senior counsel and partners). The Court also finds the costs requested are compensable and should be awarded. Accordingly, the Court recommends that Plaintiff be awarded $6,365 in attorney fees for attorney W. Scott Cameron and $1,502.53 for costs.

Second, for out-of-state counsel, Plaintiff seeks $8,916.75 in attorney fees for associate attorney Olivia Benson and principal Evan S. Goldstein who practice at Updike, Kelly & Spellacy, P.C. in Harford, Connecticut. 4/30/2024 Evan Goldstein Declaration ¶¶ 14-15, Exh. A (ECF No. 42-2). Plaintiff also seeks $505 for costs incurred by out-of-state counsel. *Id*. Neither attorney Olivia Benson or attorney Evan Goldstein have filed notices of appearances in this action, or are barred in California, or are attorneys who have been admitted pro hac vice in this action. *See* Docket. The Ninth Circuit has held that when out-of-state counsel do not "properly and timely secure pro hac vice admission before the district court" in accordance with the district court's local rules, that failure is "sufficient reason to deny [an applicant's] application for attorneys' fees." *Idaho Sporting Congress, Inc. v. Alexander*, 23 Fed. Appx. 713, 714 (9th Cir. 2001) ("Failure ... to properly and timely secure pro hac vice admission before the district court was a sufficient reason to deny [plaintiffs'] application for attorney's fees."). However, the Ninth Circuit has also determined that out-of-state attorneys who have not applied to appear pro hac vice may recover fees in two circumstances: (1) if the attorney at issue "would have certainly been permitted to appear pro hac vice as a matter of course had he or she applied"; or (2) if the work of the attorney "did not rise to the level of 'appearing' before the district court." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822-23 (9th Cir. 2009). Here, none of the circumstances in *Winterrowd* are

present. First, Plaintiff has not addressed anywhere in their moving papers or supporting documents whether out-of-state attorneys meet the requirements for pro hac vice admission pursuant to E.D. Cal. Local Rule 180. *See generally* Pl. Fourth Mot. Second, Plaintiff has not shown that the work of out-of-state counsel "did not rise to the level of 'appearing' before the district court." *Winterrowd*, 556 F.3d at 822-23. Review of the billing statements show that the out-of-state attorneys communicated extensively with the client, whereas local counsel's billing statements do not show any contact with the client. *Compare* Goldstein Decl., Exh. A, *with* Cameron Decl., Exh. A; *see also Winterrowd*, 556 F.3d at 825 ("An out of state attorney must still apply for pro hac vice admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel."). Because Plaintiff is seeking to recover attorneys' fees for out-of-state counsel who have not been admitted pro hac vice and appear to have had exclusive contact with the client and therefore rose to the "level of 'appearing' before the district court," the Court recommends declining to grant Plaintiff's request for attorneys' fees and costs for out-of-state counsel. *Winterrowd*, 556 F.3d 822-23.

f.    <u>Post-Judgment Interest</u>

Plaintiff requests post-judgment interest pursuant to 28 U.S.C. § 1961(a). Pl. Fourth Mot. at 3, 18-19. "Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorney fees, and costs. *Air Separation, Inc.*, 45 F.3d at 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding...the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, Plaintiff shall be awarded post-judgment interest as set forth in 28 U.S.C. § 1961(c).

1                  2.      <u>Possession of the Missing Equipment</u>

2         Plaintiff also requests immediate possession of the Missing Equipment. Pl. Fourth

3 Mot. at 18-19. The Court finds immediate possession of the Missing Equipment as a

4 remedy for its claim for writ of possession is appropriate and should be entered as to the

5 specific property described below:

6                       a.      Seven (7) 2022 Peterbilt Model 579, Serial Nos.

7                                 1XPBD49X0ND782853, 1XPBD49X1ND782893,

8                                 1XPBD49XXND782861, 1XPBD49X5ND782864,

9                                 1XPBD49X0ND782819, 1XPBD49X0ND782822, and

10                                 1XPBD49X1ND782862;

11                       b.      Two (2) 2016 Kenworth T680, Serial Nos.

12                                 1NKYL49X0GJ117002 and 1NKYL49X2GJ117003; and

13                       c.      Six (6) 2018 Great Dane TRAI ESS-1114-11053, Serial Nos.

14                                 1GRAA0624JW103081, 1GRAA0620JW116104,

15                                 1GRAA0623JW116114, 1GRAA0627JW116102,

16                                 1GRAA0624JW116123, and 1GRAA062XJW120287.

17 **IV.**    **CONCLUSION**

18         For the reasons set forth above, it is HEREBY RECOMMENDED that:

19      1.      Plaintiff's fourth motion for default judgment (ECF No. 42) be GRANTED;

20      2.      The court enter judgment against Defendant on the action for recovery of

21               specific property with the remedy of writ of possession of the above

22               Missing Equipment as identified in Section III.C.2;

23      3.      Plaintiff be awarded $3,180,660.35 for its principal;

24      4.      Plaintiff be awarded $37,833.88 in prejudgment interest;

25      5.      Plaintiff be awarded $88,823.64 in late fees;

26      6.      Plaintiff be awarded $116,565.42 in expenses;

27      7.      Plaintiff be awarded $6,365 in attorney fees for local attorney W. Scott

28               Cameron and $1,502.53 for costs;

8.     Plaintiff's request to recover attorneys' fees and costs for out-of-state counsel who have not been admitted pro hac vice be denied;

9.     Plaintiff be awarded post-judgment interest as set forth in 28 U.S.C. § 1961(a), which shall accrue from the time of entry of judgment until the judgment is satisfied in full;

10.    To prevent double recovery, any payments received by Plaintiff on the Judgment entered into in *M&T Capital and Leasing Corporation v. Amarinder Singh Gorwara, Hardeep Singh, et al.*, No. 3:23-cv-00205-JAM, ECF No. 17 (D. Conn. Sept. 5, 2023) ("*M&T Capital I*") shall be credited against the amounts owed by the Defendant under this Judgment. Similarly, any payments received by the Plaintiff on this Judgment shall be credited against the amounts owed by the individual guarantors Amarinder S. Gorwara and Hardeep Singh on the Judgment in *M&T Capital I*, No. 3:23-cv-00205-JAM; and

11.    This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  September 30, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, m&t1171.23

22